**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Respondent-Plaintiff, | * | Orig. Crim. No. 5:02-CR-27-CAR |
| v. | * | |
| DWIGHT D. YORK, | * | |
| Petitioner-Defendant. | * | |

**MOTION TO VACATE, CORRECT, OR SET ASIDE**
**THE PETITIONER'S SENTENCE PURSUANT TO 28 U.S.C. § 2255**

COMES NOW, the Petitioner DWIGHT D. YORK, by and through undersigned counsel, and moves this Honorable Court to vacate the convictions and subsequent sentence heretofore imposed, based upon the denial of the rights to a fair jury trial, due process of law, and effective assistance of counsel as guaranteed by the Fifth and Sixth Amendments to the United States Constitution. At sentencing, counsel failed to properly preserve an argument based upon the decision issued in <u>Blakely v. Washington</u>. On appeal, counsel was ineffective in that, during oral arguments, counsel made false claims that the <u>Blakely</u>-<u>Booker</u> issue had been preserved at the lower level. In doing so, appellate counsel failed to argue that the standard of review utilized by the Court of Appeals was erroneous. Trial counsel was also ineffective at trial because he was unprepared to try this complex multi-count prosecution, ill-prepared to address the expert witnesses presented by the government, ill-equipped to provide legal representation in a matter of this magnitude, ineffective insofar as the directive and desires of the Petitioner were ignored, and because the post-trial counsel's actions were totally inconsistent with the wishes of the Petitioner, when he withdrew the Petitioner's motion for new trial despite the merits of the issues

raised therein and without advising the Petitioner that such action was being taken.  In addition, the Petitioner was deprived of effective legal representation when the Court, in violation of the 6th Amendment, forced the Petitioner to have counsel that had been fired to continue in a representative capacity.  Moreover, Petitioner was deprived of a fair trial as a result of the Court's clear bias as gleaned from its inappropriate visits to Internet Web sites for the purpose of conducting independent research regarding the Petitioner and his affiliations.

      Equally, significant is the fact that several witnesses of serious impact have now recanted their testimony and advised of serious prosecutorial misconduct calling the Petitioner's entire conviction into question particularly in light of the fact that trial counsel was both ill-prepared and ill-equipped at the time of trial to go forward and/or completely advance the Petitioner's interest.  Furthermore, the Court had no jurisdiction to convene or conduct a trial of the defendant due to his status as a Liberian diplomat.

Therefore, the Petitioner requests that his convictions and sentence be vacated.  In support hereof, the Petitioner states the following:

1.      On November 21, 2003, a superseding indictment was returned against the Petitioner by the Grand Jury for the Middle District of Georgia.  The indictment charged the Petitioner with: conspiracy to commit racketeering acts in violation of 18 U.S.C. § 1962(d)(Count One); racketeering violations in violation of 18 U.S.C. § 1962(c)(Count Two); conspiracy to transport minors in interstate commerce for unlawful sexual activity and conspiracy to structure cash transactions to evade currency reporting requirements in violation of 18 U.S.C. § 371(Count Three); transporting minors in interstate commerce for the purposes of unlawful sexual activity in violation of 18 U.S.C. §§ 3283, 2423(a) and 2(Counts Four thru Six and Eight); traveling in interstate commerce for the purpose of engaging in

unlawful sexual acts with a minor in violation of 18 U.S.C. §§ 3283 and 2423(b)(Count Seven); structuring transactions to evade reporting requirements in violation of 31 U.S.C. §§ 5324(a)(3) and 5313(a) and 18 U.S.C. § 2(Counts Nine thru Eleven); RICO forfeiture pursuant to 18 U.S.C. § 1963(Count Twelve); and criminal forfeiture in violation of exploitation of minors pursuant to 18 U.S.C. § 2253(Count Thirteen).

These charges arose out of an investigation conducted by Putnam County, Georgia law enforcement officials, the Federal Bureau of Investigation (FBI), and the Internal Revenue Service (IRS). The Petitioner was allegedly the leader of a religious organization, initially named the Nubian Islamic Hebrews, that was deemed a cult by the FBI, prompting the instant investigation. In 1998, law enforcement officials started receiving anonymous letters and e-mails stating that sexual misconduct was occurring on the Petitioner's property in Eatonton, Georgia. By 2001, local and federal law enforcement officials were receiving telephone calls alleging sexual misconduct on the Petitioner's property, including the sexual abuse and molestation of children.

Allegedly, weekly income from the organization's sale of goods was prepared for deposit after the removal of large denomination bills, which were stored by the Petitioner in a suitcase in his bedroom. At the Petitioner's instruction, it was alleged, no more than $9,000 was to be deposited into any single account at a time. Paperwork was not to be filled out on any cash deposit. Several times, according to the allegations at trial, aa follower left the bank without making a deposit when instructed by the bank teller than a form would have to be completed. One bank with which the Petitioner had regular dealings filed several suspicious activity reports (SARs) and currency transaction reports (CTRs) regarding the Petitioner's financial dealings. The FBI obtained these reports,

learning that on 41 separate occasions, multiple deposits totaling more than $10,000 were made to one or more of the Petitioner's bank accounts. At trial, the government presented evidence designed to prove that deposits made on September 29 and 30, 1999; October 6 and 8, 1999; and April 5 and 11, 2000 were designed to evade currency reporting requirements.

Aside from the financial irregularities alleged to have occurred in this case, allegations of sexual abuse of minors by the Petitioner were also raised. Allegedly, previously molested younger children were employed to bring new children to the Petitioner once they had gotten older. Children refusing the Petitioner's advances were ignored, not fed well, and not allowed to go outside and play. It was also alleged that eventually, a family could be expelled from the compound following repeated refusals to join in sexual activity by children. The children were told that the sexual activity was instructional as well as part of an ancient Sudanese ritual, assisting in preparing the child for marriage. The women would then bring the child into the Petitioner's room, where they would watch pornographic movies. Presents were allegedly given to children who cooperated. Several of the children allegedly received sexually transmitted diseases from these encounters. Chlamydia Trachomatis, Herpes Simplex I, and herpes simplex II were detected in several of the children involved in the instant matter. No such diseases, however, were ever associated with the Petitioner.

The investigation of this matter revealed eleven alleged victims of sexual molestation that had crossed state lines. Habiybah Washington was allegedly first molested by the Petitioner when she was 13 years of age. Washington was also allegedly forced by the Petitioner to bring other minors to him for sexual purposes, including

      Amala Noel. When arriving from New York to the Eatonton compound, Washington was pregnant with the Petitioner's son. The Petitioner allegedly threatened Washington with physical violence when she informed him that she was leaving the compound in February, 2001. After the trial, Habiybah Washington, in a sworn affidavit, stated that her testimony at trial had been fabricated. Docket Entry 342. Washington stated that the allegations raised against the Petitioner were coerced from Jacob York, the Petitioner's son, who blamed the Petitioner for the premature death of his mother. Docket Entry 342.

2. The Petitioner entered an initial plea of not guilty to the aforementioned charges. Thereafter, the Petitioner filed a motion to sever pursuant to Fed.R.Crim.P. 8(a) and 14. The Petitioner also filed a motion to dismiss the indictment based upon the outrageous government conduct in this matter. A motion to dismiss the superseding indictment was also filed, based upon the Petitioner possessing head of state immunity as the leader of the Yamassee Indian tribe. Counsel also filed a motion to dismiss Counts Six and Two of the superseding indictment for failing to allege a violation of federal law. A motion was also filed to exclude the testimony of Kenneth Lanning. The court denied all of the aforementioned motions. Counsel went on to file several more motions prior to trial, including motions to suppress evidence of alleged victim's chastity pursuant to F.R.E. 412, for additional peremptory strikes, and for admission of motive evidence as an exception to the rape shield law. These motions were also denied. On December 12, 2004, Adrian L. Patrick entered his appearance as counsel for the Petitioner. Counsel filed a motion to continue the trial in the interest of justice for counsel to prepare for trial on January 2, 2004. That motion was denied by the Court on January 5, 2004, meaning that counsel had less than one month to prepare for the Petitioner's trial.

3.  Voir dire started in the instant matter on January 5, 2004 in the United States District Court for the Middle District of Georgia, Macon Division,[1] before the Honorable C. Ashley Royal. The trial lasted until January 23, 2004, at which point the jury returned a verdict of guilty as to all counts of the superseding indictment except for Counts Eight and Twelve, upon which the Petitioner was acquitted.

4.  On January 30, 2004, the Petitioner filed a motion for a new trial. On the same day, a motion for judgment of acquittal was also filed. The motion for new trial was based upon the recantation of witness Habiybah Washington. However, then counsel withdrew these motions without first discussing such actions with the Petitioner. Docket Entry 342.

5.  Prior to sentencing, a Pre-sentence Investigation Report was prepared. As several counts of conviction consisted of numerous criminal acts, each act was identified and grouped with other acts that exhibited a common criminal objective, pursuant to U.S.S.G. § 3D1.2. Twelve groups were created. Count Groups IV, V, and VI all involved the interstate transport of minors for unlawful sexual activity as the common criminal objective. These three groups had the highest total offense level. A base offense level of 27 was received in these groups for criminal sexual abuse, pursuant to U.S.S.G. § 2A3.1(a). A four level enhancement was issued pursuant to U.S.S.G. § 2A3.1(b)(2)(A) as the victims had not reached the age of twelve. Two levels were added to the base offense level pursuant to U.S.S.G. § 2A3.1(b)(3)(A) as the victim was under the care and supervisory control of the Petitioner. A four level leadership enhancement was issued. A further two level enhancement was issued pursuant to U.S.S.G. § 3B1.4 as a person under

---

[1] / The actual trial itself was moved to Brunswick, Georgia due to pretrial publicity which made it all but impossible for the defendant to obtain a fair trial.

the age of 18 was used to aid in committing the offenses at issue. The total offense level was therefore determined to be 39. Count Groups II and III, also based upon the interstate transport of minors for unlawful sexual activity, resulted in the calculation of a base offense level of 35. Unlike Count Groups IV thru VI, the Petitioner did not receive a two level enhancement for using an individual under the age of 18 in committing the offenses and the age of the victim was between 12 and 16, necessitating a two level enhancement instead of a four level enhancement, pursuant to U.S.S.G. § 2A3.1(b)(2)(B). Taking the greatest adjusted total offense level value, 39, and adding the appropriate number of 'units' as determined by U.S.S.G. § 3D1.4, which was calculated to be 4, the combined total offense level in this matter was determined to be 43.

The Petitioner received one criminal history point pursuant to U.S.S.G. § 4A1.1(c) for a 1987 conviction for possession of false identification with intent to defraud the United States. With only one criminal history point, the Petitioner's criminal history category was determined to be I. Based upon an offense level of 43 and a criminal history category of I, the Guideline range of imprisonment was determined to be life. Pursuant to U.S.S.G. § 5G1.2(d), because the count carrying the highest statutory maximum was less than the Guideline range of imprisonment, sentences imposed on other counts shall run consecutively in order to produce a combined sentence equal to the Guideline range of imprisonment.

6. Objections were filed by the Petitioner to the Pre-sentence Investigation Report (PSR). The Petitioner argued that the 1993 version of the Sentencing Guidelines should have been utilized in this matter instead of the 2000 Guidelines, in order to avoid an *ex post facto* violation. The Petitioner also moved for a downward departure based upon his

worsening mental state as well as the possibility that he will be victimized in prison due to the nature of his case. Counsel also objected to the application of a leadership enhancement and a 'care and supervisory' enhancement pursuant to U.S.S.G. § 2A3.1(b)(3)(A).

7. On April 22, 2004, the Petitioner appeared for sentencing. The Petitioner's objections were denied. The Petitioner was sentenced to a term of incarceration of 1,620 months. Judgment was entered against the Petitioner on May 7, 2004.

8. The Petitioner thereafter filed a timely notice of appeal. On appeal to the United States Court of Appeals for the Eleventh Circuit it was argued that: (1) the indictment misjoined the sexual abuse charges with the financial structuring charges, and the district court erred in failing to sever those charges; (2) the district court erred in refusing to dismiss the RICO counts because the United Nation of Nuwaubian Moors is not an "enterprise" under RICO and because there is insufficient connection between the Petitioner's alleged acts and the Nuwaubian organization; (3) the district court erred in refusing to dismiss the indictment as the indictment was improperly returned by a grand jury tainted by pre-trial publicity; (4) the district court erred in allowing the government to call a rebuttal witness and disallowing the Petitioner to do the same; (5) there was insufficient evidence to convict the Petitioner of the charges that he transported minors in interstate commerce with the intent that the minors would engage in unlawful sexual activity or that the underlying sexual activity undertaken by the Petitioner was unlawful; (6) the district court erred in denying the Petitioner's motion to dismiss two counts of the indictment because the minor victim was over the age of consent at the time the sexual act took place; (7) the district court erred in denying the Petitioner a continuance when the Petitioner retained new counsel prior to trial thereby creating a prima facie case of ineffective assistance of

counsel; (8) the Petitioner's sentence was issued in violation of the Sixth Amendment under United States v. Booker because the district court enhanced the sentence based upon facts not reflected in the jury's verdict and issued a sentence under a mandatory Guideline scheme; (9) the petitioner's sentence was issued in violation of the *ex post facto* clause of the United States Constitution because the Petitioner was sentenced under the November 2000 edition of the Guidelines rather than the November 1993 edition of the Guidelines; and (10) counsel was ineffective in withdrawing motions for judgment of acquittal and for a new trial without the Petitioner's consent.

      At oral argument, counsel for the Petitioner argued that the Booker argument had been preserved in the district court, even though it clearly had not been preserved. In doing so, counsel failed to address the error of the appellate court's posture that the plain error standard did not serve to warrant remand in this case, despite the statutory error in applying the Guidelines in a mandatory fashion.

      On October 27, 2005, the appellate court affirmed the Petitioner's conviction and sentence. The 11th Circuit opined that most of the issues raised on appeal "lacked merit," and only the pre-trial publicity and severance claims were worthy of any further discussion. The 11th Circuit further opined that the issue of ineffective assistance of counsel was not properly before it because the record below was not sufficiently developed. U.S. v. York, 428 F.3d 1325, 1330 (11th Cir. 2005). The Petitioner thereafter filed a timely petition for writ of certiorari with the United States Supreme Court, raising those issues that were raised on appeal. The petition was denied by the Supreme Court on June 26, 2006. 126 S.Ct. 2948 (2006).

9.    The Petitioner has taken no further legal action in this case.

10. During pre-trial proceedings, the Petitioner was represented by Edward T.M. Garland, Esq. 3151 Maple Drive, N.E., Atlanta, Georgia 30305; Frank Rubino, Esq., 2601 South Bayshore Drive, Suite 1400, Coconut Grove, Florida 33133; Harry Jean Charles, Esq., P.O. Box 95, Jonesboro, Georgia 30237; Leroy R. Johnson, Esq., 3915 Cascade Road, S.W., Promenade Park, Suite 260, Atlanta, Georgia 30331; and Manubir S. Arora, Esq, 3151 Maple Drive, N.E., Atlanta, Georgia 30305.  At trial, sentencing, and on appeal, the Petitioner was represented by Adrian L. Patrick, Esq., 1044 Baxter Street, Athens, Georgia 30601; and Benjamin A. Davis, II, Esq., 1201 Peachtree Street, 400 Colony Square, Suite 200, Atlanta, Georgia 30361.  Jonathan Marks, Esq., 220 Fifth Avenue, 3rd Floor, New York, New York 10001.  The Petitioner submits that his detention is unlawful, and refers the Court to the Memorandum of Points and Authorities in further support thereof which shall be filed as a supplement to this pleading forthwith.

11. The Petitioner is currently in the custody of the Federal Corrections Institution in Florence, Colorado.  The Petitioner's inmate registration number is 17911-054.

WHEREFORE, in consideration of the foregoing as well as arguments of law contained in the forthcoming Memorandum of Points and Authorities, the Petitioner respectfully prays that this Court issue an Order vacating the convictions and sentence imposed in this case based upon the challenges to the existence of due process during the trial itself, the ineffective assistance of counsel throughout the proceedings before the Courts, and the ineffective assistance of counsel throughout the proceedings before the Courts, and the lack of proper jurisdiction of the Court in this matter.  In the absence of the issuance of such an order, the Petitioner requests that at a minimum the Court is obligated to convene an evidentiary hearing on these issues.

Respectfully submitted,

Reginald A. Greene, Esquire
675 West Peachtree Street, N.W.
Suite 4300
Atlanta, Georgia  30375
(404) 335-0761 voice
(404) 614-4054 fax

Malik Shabazz
1250 Connecticut avenue, N.W.
Washington, D.C.   20036
(202) 408-7021

Gregory L. Lattimer
Law Offices of Gregory L. Lattimer
1100 H Street, N.W.
Suite 920
Washington, D.C.  20005
(202) 638-0095
(202) 638-0091 (Fax)
lattlaw@aol.com

## VERIFICATION

The Petitioner herein, Dwight York, hereby declares, verifies and states under penalty of perjury that the facts stated in the foregoing motion and memorandum of law are true and correct to the best of his knowledge and belief.

Executed on ___6/26/07___, pursuant to 28 U.S.C. § 1746.

I am the biological sister of Dwight D. York. I have been involved in my brother's life since birth. I have fully discussed this pleading with my brother and verify that I have authority to act in his behalf insofar as this motion is concern as a result of his incarceration in Florence, Colorado.

Dale York BROWN

12