**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| **Respondent-Plaintiff,** | * | **Crim. No. 5:02-CR-27-CAR** |
| **v.** | * | |
| **DWIGHT D. YORK,** | * | |
| **Petitioner-Defendant.** | * | |

**AMENDED MOTION TO VACATE, CORRECT, OR SET ASIDE
THE PETITIONER'S SENTENCE PURSUANT TO 28 U.S.C. § 2255**

Comes now, the Petitioner Dwight D. York, by and through undersigned counsel, and hereby moves this Court to vacate the convictions and subsequent sentence heretofore imposed, based upon the denial of the rights to a fair jury trial, due process of law, and ineffective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution. Moreover, on appeal, counsel was ineffective in that, during oral arguments, counsel made false claims that the Blakely-Booker issue had been preserved at the lower level. In doing so, appellate counsel failed to argue that the standard of review utilized by the Court of Appeals was erroneous.

Trial counsel were also ineffective at trial because they were unprepared to try this complex multi-count prosecution, ill-prepared to address the expert witnesses presented by the government, ill-equipped to provide legal representation in a matter of this magnitude, ineffective insofar as the directives and desires of the Petitioner were ignored, and because post-trial counsel's actions were totally inconsistent with the wishes of the Petitioner, when he withdrew the Petitioner's motion for new trial despite the merits of the issues raised therein and without advising the Petitioner that such action was being taken. In addition, the Petitioner was deprived of effective legal representation when the Court, in violation of the 6th Amendment, forced the Petitioner to have counsel that had

been fired to continue in a representative capacity.  Moreover, Petitioner was deprived of a fair trial as a result of the Court's clear bias as gleaned from its inappropriate visits to Internet Web sites for the purpose of conducting independent research regarding the Petitioner and his affiliations.

Equally, significant is the fact that several witnesses of serious impact have now recanted their testimony and advised of serious prosecutorial misconduct calling the Petitioner's entire conviction into question particularly in light of the fact that trial counsel was both ill-prepared and ill-equipped at the time of trial to go forward and/or completely advance the Petitioner's interest. Furthermore, the Court had no jurisdiction to convene or conduct a trial of the defendant due to his status as a Liberian diplomat.

Therefore, the Petitioner requests that his convictions and sentence be vacated.  In support hereof, the Petitioner avers as follows:

1.  On November 21, 2003, a superseding indictment was returned against the Petitioner by the Grand Jury for the Middle District of Georgia.  The indictment charged the Petitioner with: conspiracy to commit racketeering acts in violation of 18 U.S.C. § 1962(d)(Count One); racketeering violations in violation of 18 U.S.C. § 1962(c)(Count Two); conspiracy to transport minors in interstate commerce for unlawful sexual activity and conspiracy to structure cash transactions to evade currency reporting requirements in violation of 18 U.S.C. § 371(Count Three); transporting minors in interstate commerce for the purposes of unlawful sexual activity in violation of 18 U.S.C. §§ 3283, 2423(a) and 2(Counts Four thru Six and Eight); traveling in interstate commerce for the purpose of engaging in unlawful sexual acts with a minor in violation of 18 U.S.C. §§ 3283 and 2423(b)(Count Seven); structuring transactions to evade reporting requirements in violation of 31 U.S.C. §§ 5324(a)(3) and 5313(a) and 18 U.S.C. § 2 (Counts Nine thru Eleven); RICO forfeiture pursuant to 18 U.S.C. § 1963(Count Twelve); and criminal forfeiture in violation of exploitation of

minors pursuant to 18 U.S.C. § 2253(Count Thirteen).

These charges arose out of an investigation conducted by Putnam County, Georgia law enforcement officials, the Federal Bureau of Investigation (FBI), and the Internal Revenue Service (IRS). The Petitioner was allegedly the leader of a religious organization, initially named the Nubian Islamic Hebrews, that was deemed a cult by the FBI, prompting the instant investigation.

Aside from the financial irregularities alleged to have occurred in this case, allegations of sexual abuse of minors by the Petitioner were also raised. Several of the children allegedly received sexually transmitted diseases from these encounters. Chlamydia Trachomatis, Herpes Simplex I, and herpes simplex II were detected in several of the children involved in the instant matter, however, there was no evidence presented indicating that the Petitioner actually had any of these diseases during the relevant periods.

The investigation of this matter revealed eleven alleged victims of sexual molestation that had crossed state lines. Habiybah Washington was allegedly first molested by the Petitioner when she was 13 years of age. Washington was also allegedly forced by the Petitioner to bring other minors to him for sexual purposes, including Amala Noel. When arriving from New York to the Eatonton compound, Washington was pregnant with the Petitioner's son. After the trial, Habiybah Washington, in a sworn affidavit, stated that her testimony at trial had been fabricated. Docket Entry 342. Washington stated that the allegations raised against the Petitioner were coerced from Jacob York, the Petitioner's son, who blamed the Petitioner for the premature death of his mother. Docket Entry 342.

2. The Petitioner entered an initial plea of not guilty to the aforementioned charges. Thereafter, the Petitioner filed a motion to sever pursuant to Fed.R.Crim.P. 8(a) and 14. The Petitioner also filed a motion to dismiss the indictment based upon the outrageous government

conduct in this matter.  A motion to dismiss the superseding indictment was also filed, based upon the Petitioner possessing head of state immunity as the leader of the Yamassee Indian tribe.  Counsel also filed a motion to dismiss Counts Six and Two of the superseding indictment for failing to allege a violation of federal law.  A motion was also filed to exclude the testimony of Kenneth Lanning.  The court denied all of the aforementioned motions.  Counsel went on to file several more motions prior to trial, including motions to suppress evidence of the alleged victim's chastity pursuant to F.R.E. 412, for additional peremptory strikes, and for admission of motive evidence as an exception to the rape shield law.  These motions were also denied.  On December 12, 2003, Adrian L. Patrick entered his appearance as counsel for the Petitioner.  Counsel filed a motion to continue the trial in the interest of justice for counsel to prepare for trial on January 4, 2004.  That motion was denied by the Court on January 5, 2004, meaning that counsel had less than one month to prepare for the Petitioner's trial.

3.      Voir dire started in the instant matter on January 5, 2004 in the United States District Court for the Middle District of Georgia, Macon Division, before the Honorable C. Ashley Royal.  The trial lasted until January 23, 2004, at which point the jury returned a verdict of guilty as to all counts of the superseding indictment except for Counts Eight and Twelve, upon which the Petitioner was acquitted.

4.      On January 30, 2004, the Petitioner filed a motion for a new trial.  On the same day, a motion for judgment of acquittal was also filed.  The motion for new trial was based upon several alleged errors on the part of the Court including its insistence that the Petitioner proceed to trial.  However, then counsel withdrew these motions without first discussing such actions with the Petitioner.  Docket Entry 342.

5.      Prior to sentencing, a Pre-sentence Investigation Report was prepared.  As several

counts of conviction consisted of numerous criminal acts, each act was identified and grouped with other acts that exhibited a common criminal objective, pursuant to U.S.S.G. § 3D1.2. Twelve groups were created. Count Groups IV, V, and VI all involved the interstate transport of minors for unlawful sexual activity as the common criminal objective. These three groups had the highest total offense level. A base offense level of 27 was received in these groups for criminal sexual abuse, pursuant to U.S.S.G. § 2A3.1(a). A four level enhancement was issued pursuant to U.S.S.G. § 2A3.1(b)(2)(A) as the victims had not reached the age of twelve. Two levels were added to the base offense level pursuant to U.S.S.G. § 2A3.1(b)(3)(A) as the victim was under the care and supervisory control of the Petitioner. A four level leadership enhancement was issued. A further two level enhancement was issued pursuant to U.S.S.G. § 3B1.4 as a person under the age of 18 was used to aid in committing the offenses at issue. The total offense level was therefore determined to be 39. Count Groups II and III, also based upon the interstate transport of minors for unlawful sexual activity, resulted in the calculation of a base offense level of 35.

Unlike Count Groups IV thru VI, the Petitioner did not receive a two level enhancement for using an individual under the age of 18 in committing the offenses and the age of the victim was between 12 and 16, necessitating a two level enhancement instead of a four level enhancement, pursuant to U.S.S.G. § 2A3.1(b)(2)(B). Taking the greatest adjusted total offense level value, 39, and adding the appropriate number of 'units' as determined by U.S.S.G. § 3D1.4, which was calculated to be 4, the combined total offense level in this matter was determined to be 43.

The Petitioner received one criminal history point pursuant to U.S.S.G. § 4A1.1(c) for a 1987 conviction for possession of false identification with intent to defraud the United States. With only one criminal history point, the Petitioner's criminal history category was determined to be I. Based upon an offense level of 43 and a criminal history category of I, the Guideline range of

imprisonment was determined to be life. Pursuant to U.S.S.G. § 5G1.2(d), because the count carrying the highest statutory maximum was less than the Guideline range of imprisonment, sentences imposed on other counts shall run consecutively in order to produce a combined sentence equal to the Guideline range of imprisonment.

6.    Objections were filed by the Petitioner to the Pre-sentence Investigation Report (PSR). The Petitioner argued that the 1993 version of the Sentencing Guidelines should have been utilized in this matter instead of the 2000 Guidelines, in order to avoid an *ex post facto* violation. The Petitioner also moved for a downward departure based upon his worsening mental state as well as the possibility that he will be victimized in prison due to the nature of his case. Counsel also objected to the application of a leadership enhancement and a 'care and supervisory' enhancement pursuant to U.S.S.G. § 2A3.1(b)(3)(A).

7.    On April 22, 2004, the Petitioner appeared for sentencing. The Petitioner's objections were denied. The Petitioner was sentenced to a term of incarceration of 1,620 months. Judgment was entered against the Petitioner on May 7, 2004.

8.    The Petitioner thereafter filed a timely notice of appeal. On appeal to the United States Court of Appeals for the Eleventh Circuit it was argued that: (1) the indictment misjoined the sexual abuse charges with the financial structuring charges, and the district court erred in failing to sever those charges; (2) the district court erred in refusing to dismiss the RICO counts because the United Nation of Nuwaubian Moors is not an "enterprise" under RICO and because there is insufficient connection between the Petitioner's alleged acts and the Nuwaubian organization; (3) the district court erred in refusing to dismiss the indictment as the indictment was improperly returned by a grand jury tainted by pre-trial publicity; (4) the district court erred in allowing the government to call a rebuttal witness and disallowing the Petitioner to do the same; (5) there was

insufficient evidence to convict the Petitioner of the charges that he transported minors in interstate commerce with the intent that the minors would engage in unlawful sexual activity or that the underlying sexual activity undertaken by the Petitioner was unlawful; (6) the district court erred in denying the Petitioner's motion to dismiss two counts of the indictment because the minor victim was over the age of consent at the time the sexual act took place; (7) the district court erred in denying the Petitioner a continuance when the Petitioner retained new counsel prior to trial thereby creating a prima facie case of ineffective assistance of counsel; (8) the Petitioner's sentence was issued in violation of the Sixth Amendment under United States v. Booker because the district court enhanced the sentence based upon facts not reflected in the jury's verdict and issued a sentence under a mandatory Guideline scheme; (9) the petitioner's sentence was issued in violation of the *ex post facto* clause of the United States Constitution because the Petitioner was sentenced under the November 2000 edition of the Guidelines rather than the November 1993 edition of the Guidelines; and (10) counsel was ineffective in withdrawing motions for judgment of acquittal and for a new trial without the Petitioner's consent.

At oral argument, counsel for the Petitioner argued that the Booker argument had been preserved in the district court, even though it clearly had not been preserved.  In doing so, counsel failed to address the error of the appellate court's posture that the plain error standard did not serve to warrant remand in this case, despite the statutory error in applying the Guidelines in a mandatory fashion.

On October 27, 2005, the appellate court affirmed the Petitioner's conviction and sentence. The 11th Circuit opined that most of the issues raised on appeal "lacked merit," and only the pre-trial publicity and severance claims were worthy of any further discussion.  The 11th Circuit further opined that the issue of ineffective assistance of counsel was not properly before it because the

record below was not sufficiently developed.  U.S. v. York, 428 F.3d 1325, 1330 (11th Cir. 2005).

The Petitioner thereafter filed a timely petition for writ of certiorari with the United States Supreme

Court, raising those issues that were raised on appeal.  The petition was denied by the Supreme

Court on June 26, 2006.  126 S.Ct. 2948 (2006).

9.     The Petitioner has taken no further legal action in this case.

10.     During pre-trial proceedings, the Petitioner was represented by Edward T.M.

Garland, Esq. 3151 Maple Drive, N.E., Atlanta, Georgia 30305; Frank Rubino, Esq., 2601 South

Bayshore Drive, Suite 1400, Coconut Grove, Florida 33133; Harry Jean Charles, Esq., P.O. Box 95,

Jonesboro, Georgia 30237; Leroy R. Johnson, Esq., 3915 Cascade Road, S.W., Promenade Park,

Suite 260, Atlanta, Georgia 30331; and Manubir S. Arora, Esq, 3151 Maple Drive, N.E., Atlanta,

Georgia 30305.  At trial, and on appeal, the Petitioner was represented by Adrian L. Patrick, Esq.,

1044 Baxter Street, Athens, Georgia 30601; and Benjamin A. Davis, II, Esq., 1201 Peachtree Street,

400 Colony Square, Suite 200, Atlanta, Georgia 30361.   At sentencing, the Petitioner was

represented by Jonathan Marks, Esq., 220 Fifth Avenue, 3rd Floor, New York, New York 10001.

The Petitioner submits that his detention is unlawful, and refers the Court to the Memorandum of

Points and Authorities which addresses selected issues in further support of this motion.

11.     The Petitioner is currently in the custody of the Federal Corrections Institution in

Florence, Colorado.  The Petitioner's inmate registration number is 17911-054.

WHEREFORE, in consideration of the foregoing as well as arguments of law contained in

the Memorandum of Points and Authorities, the Petitioner respectfully prays that this Court issue

an Order vacating the convictions and sentence imposed in this case based upon the challenges to

the existence of due process during the trial itself, the ineffective assistance of counsel throughout

the proceedings before the Court, and the lack of proper jurisdiction of the Court in this matter.  In

-8-

the absence of the issuance of such an order, the Petitioner requests that at a minimum the Court is

obligated to convene an evidentiary hearing on these issues.

Respectfully submitted,

Reginald A. Greene, Esquire
675 West Peachtree Street, N.W.
Suite 4300
Atlanta, Georgia  30375
(404) 335-0761 (Voice)
(404) 614-4054 (Fax)

Gregory L. Lattimer
Law Offices of Gregory L. Lattimer
1100 H Street, N.W.
Suite 920
Washington, D.C.  20005
(202) 638-0095
(202) 638-0091 (Fax)

Malik Shabazz
1250 Connecticut avenue, N.W.
Washington, D.C.   20036
(202) 408-7021

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

UNITED STATES OF AMERICA,      *

    Respondent-Plaintiff,      *      **Crim. No. 5:02-CR-27-CAR**

v.      *

DWIGHT D. YORK,      *

    Petitioner-Defendant.      *

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO VACATE, CORRECT, OR SET ASIDE SENTENCE PURSUANT TO 28 U.S.C. § 2255**

Having set forth the basis for the relief requested herein in the foregoing motion, the Petitioner now undertakes to establish the specifics of his motion and the legal support therefor.

### 1. Standard of Review

Relief under 28 U.S.C. § 2255 is generally reserved for transgressions of constitutional rights and for a specific range of injuries that could not have been raised on direct appeal. *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995). Such relief is available for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice. *Rosario Dominquez v. United States*, 353 F.Supp. 2d 500, 507 (S.D.N.Y.), quoting *Graziano v. United States*, 83 F.3d 587, 590 (2nd Cir 1996)(per curiam).

> Normally, where serious and fundamental rights are involved . . . the district court must base its decision on facts developed at an evidentary hearing.

*Coco v. United States*, 569 F.2d 367, 370 (5th Cir. 1978); *McKnight v. United States*, 507 F.2d 1034, 1036 (5th Cir. 1975).

It is particularly noteworthly that while

A district court's calculation under or application of the sentencing guidelines standing along is not the type of error cognizable under section 2255 . . . a defendant's claim of ineffective assistance of counsel does give rise to a constitutional issue.

*United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995).  The District Court must grant a motion to vacate, set aside or correct a federal prison sentence when or if the sentence that was imposed was done so as a result of a conviction had in violation of the constitution or laws of the United States. 28 U.S.C. § 2255.

> **A.    The Failure Of The Court To Allow The Petitioner His Counsel Of Choice Was A Clear Violation Of The 6th Amendment And Requires, In And Of Itself, That The Court Set Aside His Conviction**

The trial of the Petitioner was commenced on January 5, 2004.  Prior to that date, the Petitioner informed the Court that he no longer wished to be represented by Edward. Garland.[1]  Mr. Garland was replaced by Adrian L. Patrick who entered an appearance on December 12, 2003. Significantly, Mr. Patrick informed the Court that he needed additional time to prepare for trial given his appearance only 23 days prior to the trial date and because he only became aware that he was to be lead counsel upon the withdrawal of Mr. Garland as counsel of record only five (5) days prior to trial, the approaching holidays, and the fact that the Petitioner was not arraigned on the third superseding indictment until December 16, 2003.     In an apparent attempt to minimize the prejudice that Petitioner would obviously suffer if forced to go forward, the Court disregarded the wishes of the Petitioner and incredulously unilaterally determined that Mr. Arora would be required to remain

---

1/ Mr. Garland entered his appearance for Dwight D. York on May 20, 2002.  Manubier A. Arora, an associate of Mr. Garland, never formally entered an appearance on behalf of the Petitioner that is documented on the docket sheet.

as Petitioner's counsel, even though the Petitioner had specifically discharged Mr. Garland and Mr.

Arora and had informed the Court of his desire to be represented at trial by Mr. Patrick.

> The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of counsel for his defense." We have previously held that an element of this right of a defendant who does not require appointed counsel to choose who will represent him.

*United States v. Gonzalez-Lopez*, 126 S.Ct. 2557, 2561 (2006), quoting *Wheat v. United States*, 486

U.S. 153, 159 (1988).

> the Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds.

*Coplin & Drysdale, Chartered v. United States*, 491 U.S. 624-25 (1989). Without equivocation, the

Supreme Court has made clear that

> Where the right to be assisted by counsel of one's choice is wrongly denied . . . it is unnecessary to conduct an ineffective or prejudice inquiry to establish a Sixth Amendment violation. Deprivation of the right is "complete" when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received.

*Gonzalez-Lopez*, supra at 2563. Indeed, it has been held that "A choice-of-counsel violation occurs

whenever the defendant's choice is wrongly denied." *Id.* Not unlike the situation here

> However broad a court's discretion may be . . . the District Court here erred when it denied respondent his choice of counsel. Accepting that premise, we hold that the error violated respondent's Sixth Amendment right to counsel of choice and that this violation is not subject to harmless-error analysis.

*Id.* at 2566.

The Court forced discharged counsel upon the Petitioner and that was a clear violation of his

right to counsel of choice. Having forced counsel that Petitioner specifically had discharged for

acting in a manner that he deemed adverse to his best interest, upon him, the Court violated his right

to counsel of choice in violation of the 6th amendment, and that fact, in and of itself mandates that

the Petitioner be granted a new trial. *Id.*

### B.    The Court's Refusal To Grant A Continuance Of The January 2004 Trial Date Caused The Petitioner To Have Ineffective Assistance of Counsel At Trial

In addition to forcing the Petitioner to be represented by counsel whom he did not wish to have in the form of Mr. Arora, the Court further compounded matters by refusing to continue the trial to allow Adrian Patrick, Petitioner's new counsel, to properly prepare for trial. Significantly, Mr. Patrick was arraigned on the **third superseding indictment** on December 16, 2003. There is no question that the Court's refusal to continue the trial caused Petitioner to proceed with ineffective legal representation - - the following colloquy firmly establishes that fact:

> Mr. PATRICK: Well, Your Honor, a few things. One, as I picked up about 20 or so boxes of evidence, maybe about 25 of evidence from Mr. Garland's office, and I realized the need for - - one, a need for three other experts; one on DNA forensics to test some DNA that was found that was part of newly-discovered evidence; one was someone to counteract Kenneth Lanning's testimony; and one was for false accusations of child molestation. So that's three experts I identified after reading all of the evidence, and me being lead counsel, that I would need.
>
> In addition, there's a lot of new evidence, Your honor, that was turned over in the month of December that would need time to be processed, and actually, what I wanted to do is formalize my reasons in written fashion, as opposed to just saying them orally, that if we go forward with the case, that, Dr. York will have an inadequate defense because I'm not ready to proceed with the case, And I want to put that on the record that by going forward, that would create a prima facie case of ineffective assistance of counsel . . .
>
> *           *           *           *           *
>
> Your Honor, primarily I just want to put in written form my oral motion and let the Court know that Mr. York will have an inadequate defense and that will create a prima facie of ineffective counsel. I wanted to put that on the record. I do need those other experts.

Jan. 5, 2004, Transcript at 5, 9.

Mr. Patrick was indeed emphatic that he was not ready for trial and that forcing him to trial

under such circumstances was tantamount to prosecuting the Petitioner without a lawyer.

In seeking to justify its determination to force the Petitioner to trial with counsel who repeatedly informed the Court of his inability to be properly prepared in the time allowed, the Court opined thusly:

THE COURT: I'm not going to continue this case - -

MR. PATRICK:        Right.

THE COURT: - - for all of the reasons which I said on Friday, none of which in my mind have changed. I do remember something though that happened that I had forgotten about that is important to me, and that is that when I took over this case sometime in July, not too long after, that we had a conference in the case, and Mr. Rubino was there and Mr. Arora was there and Mr. Garland was there, and I wanted to try this case in October and Mr. Rubino said, "Judge, I can't be available then because I have a trial down in Florida that's scheduled in federal court," and so for the benefit of Mr. Rubino and his schedule, the case was not tried then, and it was placed down for January. So we were in a situation of where I wanted to try the case in October - -

MR. PATRICK:        Right.

THE COURT: - - and then the counsel for defendant said he couldn't try it, so we took it off.

MR. PATRICK:        Right

THE COURT: And so, now, he's not even in the case any more.

MR. PATRICK:        Right.

THE COURT: He's gone out of the case and you are the new counsel.

MR. PATRICK:        Right.

THE COURT: You're come into the case recently.

MR. PATRICK:        Right.

THE COURT: I understand that.

Mr. PATRICK:        Right.

THE COURT: There's not anything in the world that keeps Mr. York from firing you if I continue this case. There's not anything that I can do to stop that to bring somebody else in, and it certainly is a situation where we can just find ourselves sort of with a perpetual continuance in this case.

Now, you have Mr. Arora here. He's very bright attorney. He's going to be with you and assisting you in the trial of this case, and I'm going to require you to be here until I tell you you can go. That is contrary to what I said on Friday, but I want you there to assist in this case.

Transcript of January 4, 2004 at 10, 11.

By allowing retained counsel, Edward Garland, to withdraw his appearance, thereby forcing Adrian Patrick into the position of lead counsel and thereafter denying a continuance to the defendant in order for new counsel to become as prepared as counsel that the Court allowed to withdraw, the Court

abused his discretion to control the trial and a manifest injustice resulted when he refused either to grant the motion for a reasonable continuance in order that the Petitioner have the assistance at trial of counsel who he had chosen and retained or in some other manner assure the continued attendance of Petitioner's retained counsel, who announced an intention to abandon the Petitioner, and later did so.

*Grandy v. State of Alabama*, 569 F.2d 1319, 1326 (5th Cir. 1978).

Significantly, the Supreme Court has held that

if counsel entirely fails to subject the prosecution's case to meaningful adversarial testimony, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable.

*United States v. Cronic*, 466 U.S. 648, 668 (1984). In the case at bar, the superseding indictment alone was 48 pages, Adrian Patrick did not become lead counsel until December 30, 2003, when the court decided to permit Edward Garland, who had been lead counsel for the defense of the Petitioner for the entire preceding 20 months to withdraw his appearance. As a consequence of that action, Mr. Patrick became lead counsel a mere five (5) days before the Petitioner's trial was scheduled to

-6-

begin.  The 11th Circuit has held that six (6) times that much time in cases where the government has had years to investigate is insufficient.

> We find that the 34 days failed to provide defense counsel with sufficient time to defend against a case which the government spent years investigating.

*United States v. Verderme*, 51 F.3d 249, 252 (11th Cir., 1995).  In explaining why the administrative burden of the district court should not be viewed to outweigh the constitutional rights of a criminal defendant, the 11th Circuit stated as follows:

> While we appreciate the heavy case loads which the district courts are presently operating and understand their interest in expediting trials, we feel compelled to caution against the potential dangers of haste, and to reiterate that an insistence upon expeditiousness in some cases renders the right to defend with counsel an empty formality.  In our system of justice, the Sixth Amendment's guarantee to assistance of counsel is paramount, insuring the fundamental human rights of life and liberty. "The <u>Sixth Amendment</u> stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not still be done." *Gideon v. Wainwright*, 372 U.S. 335, 343, 83 S.Ct. 792, 796, 9 L.Ed. 799 (1963)(citation and quotations omitted).

*Id*.

The situation here is not unlike the situation in *Grandy*, it "could have been avoided by either the grant of the continuance or the denial of the continuance with measures taken to assure" then current counsel's continued appearance.  *Id*.  In any event, Petitioner was denied the effective assistance of counsel due to the Court's failure to grant a continuance and that constitutes a violation of the 6th Amendment to the U.S. Constitution which renders his conviction fundamentally unfair. *Id.* at 1323.

**4.**      **The Representation Afforded The Petitioner At Trial Was At Best Ineffective**

In addition to having to proceed to trial with unwanted counsel forced upon him by the Court, being refused a continuance to allow counsel of choice to adequately prepare for trial, the Petitioner was also ill-served by traditional ineffective assistance of counsel.  The Supreme Court

has long recognized that "the right to counsel is the right to effective assistance of counsel."

*McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970).

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having to produced a just result.

*Strickland v. Washington*, 466 U.S. 668, 686 (1984).

Admittedly, mere errors are not enough to justify a determination of ineffective assistance of counsel. There must also be a showing of prejudice.

> A court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffectiveness assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case.

*Id.* at 690. At the trial of this matter, there were critical errors that occurred with experts. First, the testimony of Kenneth Lanning should have been struck by the Court for several reasons. For starters, Mr.Lanning testified as an expert in the "sexual victimization of children" and specifically testified about **particular characteristics associated with individuals who commit sexual offenses against minors.** Transcript of January 7, 2004 at 718. However, Mr. Lanning's testimony was devoid of any scientific support. In fact, Mr. Lanning was clear in that regard when asked about the validity of his research:

> so its validity, in my opinion comes from the fact that it's been utilized and it seems to work for a lot of people . . . Well, the follow-up issue in the sense is not necessarily - - I don't know how you can scientifically prove it.

Transcript of January 7, 2004 at 772. Clearly, Mr. Lanning's testimony fails to meet the reliability

-8-

prong of *Daubert v. Merrell Dow Pharm., Inc.,*, 509 U.S. 579, 593-94 (1993).

Mr. Lanning's testimony also failed to meet the relevance prong of *Daubert* as well:

> Q.    So, over the last hour and a-half, all the information you have given us is just a generic overview of what you think or what you're found over the years that's been published, as you've said?
>
> A.    Right. There are the - -
>
> Q.    Nothing particular to this case?
>
> A.    Yes.  Nothing particular to this case.

Transcript of January 7, 2004 at 774.

> Under the second prong of Daubert, the relevance requirement, the court must "ensure that the proposed expert testimony is 'relevant to the task at hand,' . . .i.e., that it logically advances a material aspect of the proposed party's case."  Thus, the evidence must have a scientific connection to the disputed facts in the case. [citations omitted]

*Allison v. McGlan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999).  Notwithstanding the blatant shortcomings and unreliability of Mr. Lanning's testimony, counsel for the Petitioner failed to object to his opinion being offered without sufficient foundation and more egregiously, failed to move to strike his testimony once the shortcomings became apparent.  This egregious error was further compounded when appellate counsel fail to raise this issue on appeal.

Equally if not more shockingly, defense counsel called Dr. Frederick O. Bright as an expert witness.  Dr. Bright, who was one of the Petitioner's followers was thoroughly impeached, as should have been expected, and thus, nullified any chance the defense had of countering the medical findings of the government's medical expert.

Not surprisingly, the defense put forth was unfocused, ill-conceived and outright incompetent.  There was not a single cross-examination done by the defense that was even slightly successful.  The defense had no theme nor apparent goal.  The cross-examination of Habibyah

Washington was particularly woeful. The government's case was not put to the test in any respect. From jury selection to closing argument, the Petitioner was ill-served by seemingly unprepared and overmatched defense counsel. In sum, the Petitioner had ineffective legal representation and his defense was severely prejudiced by that ineffective legal representation.

## Conclusion

As a consequence of having unwanted counsel forced upon him by the Court, the Petitioner's 6th Amendment rights were violated mandating a new trial. As a result of the Court's failure and/or refusal to continue the trial date after allowing then counsel of record to withdraw his appearance, thereby preventing new counsel from being able to properly prepare for trial, the Petitioner's 6th Amendment right to counsel was entirely violated and this too mandates a new trial. In addition, trial counsel were positively ineffective and that ineffectiveness prejudiced the Petitioner's defense in several respects mandating a new trial.

## VERIFICATION

The Petitioner herein, Dwight York, hereby declares, verifies and states under penalty of perjury that the facts stated in the foregoing motion and memorandum of law are true and correct to the best of his knowledge and belief.

Executed on ___7/26/07___, 2007, pursuant to 28 U.S.C. § 1746.

Dwight D. York

-10-

Respectfully submitted,

Reginald A. Greene, Esquire
675 West Peachtree Street, N.W.
Suite 4300
Atlanta, Georgia  30375
(404) 335-0761 voice
(404) 614-4054 fax

Gregory L. Lattimer
Law Offices of Gregory L. Lattimer
1100 H Street, N.W.
Suite 920
Washington, D.C.  20005
(202) 638-0095
(202) 638-0091 (Fax)
lattlaw@aol.com

Malik Shabazz
1250 Connecticut avenue, N.W.
Washington, D.C.   20036
(202) 408-7021