**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Respondent-Plaintiff, | * | |
| v. | * | Case No. 5:07-CV-90001-CAR |
| | | (Crim. No. 5:02-CR-27-CAR) |
| DWIGHT D. YORK, | * | |
| Petitioner-Defendant. | * | |

**REPLY OF THE PETITIONER TO THE GOVERNMENT'S OPPOSITION TO HIS AMENDED MOTION TO VACATE, CORRECT, OR SET ASIDE THE PETITIONER'S SENTENCE PURSUANT TO 28 U.S.C. § 2255**

Comes now, the Petitioner Dwight D. York, by and through undersigned counsel, and hereby submits his reply to the government's opposition to his motion to vacate the convictions and subsequent sentence heretofore imposed, based upon the denial of the rights to a fair jury trial, due process of law, and ineffective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution. In opposition to the subject pleading, the government addresses three points which it claims are without basis and requires that the Court deny Mr. York's petition without even convening an evidentiary hearing. Each of those points shall be addressed in the order raised by the government.

1. **Denial of Right to Counsel of Choice**

In his original petition, Mr. York noted the following:

The Court forced discharged counsel upon the Petitioner and that was a clear violation of his right to counsel of choice. Having forced counsel that Petitioner specifically had discharged for acting in a manner that he deemed adverse to his best interest, upon him, the Court violated his right to counsel of choice in violation of the 6th amendment, and that fact, in and of itself mandates that the Petitioner be granted a new trial.

Petition Memorandum at 4.

In response, the government posits that:

> The trial judge directed that Mr. Arora be present and make himself available to York's chosen defense team, as a trial resource. At no point did the trial judge mandate that York and his counsel actually utilize Mr. Arora's services at trial. The purpose of the trial judge's action was to protect York's right to effective representation, not to foist unwanted counsel on a criminal defendant.

Opposition at 16.

Factually speaking, this is a rather interesting spin on what occurred. However, no matter what the government would like the facts to be, what the Court actually said and did at the time is inconsistent with the representations of the government now:

> THE COURT: There's not anything in the world that keeps Mr. York from firing you if I continue this case. There's not anything that I can do to stop that to bring somebody else in, and it certainly is a situation where we can just find ourselves sort of with a perpetual continuance in this case.
>
> **Now, you have Mr. Arora here. He's very bright attorney. He's going to be with you and assisting you in the trial of this case, and I'm going to require you to be here until I tell you you can go. That is contrary to what I said on Friday, but I want you there to assist in this case.**

Transcript of January 4, 2004 at 10, 11.

Clearly, the Court did not indicate that Mr. Arora was to be some sort of trial resource, the Court specifically required that Mr. Arora assist in this case and that he do so until otherwise ordered by the Court not to. No matter the spin now being attempted with regard to the plain language of the Court's order, it is unequivocal that Mr. Arora was forced upon Mr. York in an attempt by the Court to minimize the fact that admittedly unprepared counsel was going to be representing Mr. York.

Equally disingenuous is the government's attempt to suggest that Mr. York had a legitimate

-2-

choice in whether or not to utilize the services of Mr. Arora. The choice that Mr. York was given was akin to a man dying of poison being given the choice of accepting an anecdote for that poison from a mortal enemy and hoping that it works or refusing that anecdote and facing certain death. In other words, his choice was not a choice. This fact is highlighted by the following colloquy:

> Mr. PATRICK: Well, Your Honor, a few things. One, as I picked up about 20 or so boxes of evidence, maybe about 25 of evidence from Mr. Garland's office, and I realized the need for - - one, a need for three other experts; one on DNA forensics to test some DNA that was found that was part of newly-discovered evidence; one was someone to counteract Kenneth Lanning's testimony; and one was for false accusations of child molestation. So that's three experts I identified after reading all of the evidence, and me being lead counsel, that I would need.
>
> In addition, there's a lot of new evidence, Your honor, that was turned over in the month of December that would need time to be processed, and actually, what I wanted to do is formalize my reasons in written fashion, as opposed to just saying them orally, that if we go forward with the case, that, Dr. York will have an inadequate defense because I'm not ready to proceed with the case, And I want to put that on the record that by going forward, that would create a prima facie case of ineffective assistance of counsel . . .
>
> \*          \*          \*          \*          \*
>
> Your Honor, primarily I just want to put in written form my oral motion and let the Court know that Mr. York will have an inadequate defense and that will create a prima facie of ineffective counsel. I wanted to put that on the record. I do need those other experts.

Jan. 5, 2004, Transcript at 5, 9.

Mr. Patrick was not prepared to go forward with the representation of Mr. York nor should he have been expected to be. First of all, he did not get involved in the case until December, 2003 and more importantly, Mr. York was not arraigned on the third superseding indictment until December 16, 2003. What possible choice did Mr. York have in this case. Proceed to trial with counsel that you believe has betrayed your trust, Mr. Garland - - proceed to trial with counsel that you feel you can trust but who has had no time to prepare, Mr. Patrick - - or proceed to trial with

your chosen unprepared lawyer and the associate of the lawyer that you have discharged because you can't trust him to act in your best interest, Mr. Arora, who is ordered to be at your side by the presiding judge who clearly has a bias against you. With choices like these, a trial was unnecessary.

As a final point, the contention by the government that the "The purpose of the trial judge's action was to protect York's right to effective representation," is entirely refuted by the facts. In rejecting the plea of Mr. Patrick for adequate time to prepare, the Court not only ignored those pleas, it went on to blame Mr. York for a scheduling conflict of then counsel and even determined that because it could not be assured that Mr. York would not fire Mr. Patrick in order to further postpone his trial, it would not continue the trial date:

>   THE COURT: I'm not going to continue this case - -
>
>   MR. PATRICK: Right.
>
>   THE COURT: - - for all of the reasons which I said on Friday, none of which in my mind have changed. I do remember something though that happened that I had forgotten about that is important to me, and that is that when I took over this case sometime in July, not too long after, that we had a conference in the case, and Mr. Rubino was there and Mr. Arora was there and Mr. Garland was there, and I wanted to try this case in October and Mr. Rubino said, "Judge, I can't be available then because I have a trial down in Florida that's scheduled in federal court," and so for the benefit of Mr. Rubino and his schedule, the case was not tried then, and it was placed down for January. So we were in a situation of where I wanted to try the case in October - -
>
>   MR. PATRICK: Right.
>
>   THE COURT: - - and then the counsel for defendant said he couldn't try it, so we took it off.
>
>   MR. PATRICK: Right
>
>   THE COURT: And so, now, he's not even in the case any more.
>
>   MR. PATRICK: Right.
>
>   THE COURT: He's gone out of the case and you are the new counsel.

>MR. PATRICK:    Right.
>
>THE COURT: You're come into the case recently.
>
>MR. PATRICK:    Right.
>
>THE COURT: I understand that.
>
>Mr. PATRICK:    Right.
>
>THE COURT: There's not anything in the world that keeps Mr. York from firing you if I continue this case.  There's not anything that I can do to stop that to bring somebody else in, and it certainly is a situation where we can just find ourselves sort of with a perpetual continuance in this case.

Transcript of January 4, 2004 at 10, 11.

To be sure, had the Court wished to assure that Mr. York receive effective representation, it merely could have provided Mr. Patrick the time to prepare that he requested.  Forcing Mr. York to trial with counsel that candidly informed the Court that he was unprepared seems to contradict a desire to assure that Mr. York have effective representation.  Forcing Mr. York to trial with counsel that Mr. York has discharged but who the Court believes is a "very bright attorney" does not indicate that the Court was at all interested in Mr. York having effective representation.  The Court was certainly interested in getting the trial of Mr. York started and completed, but that in no way equates with an interest in assuring that Mr. York have effective representation.  Mr. York did not have effective representation nor could he have, given the time that his chosen counsel was given to prepare and given the fact that counsel that he specifically did not want was forced upon him by the Court to assist his unprepared counsel.

The Supreme Court has made clear that

>Where the right to be assisted by counsel of one's choice is wrongly denied . . . it is unnecessary to conduct an ineffective or prejudice inquiry to establish a Sixth Amendment violation.  Deprivation of the right is "complete" when the defendant

>is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received.

*United States v. Gonzalez-Lopez*, 126 S.Ct. 2557, 2563 (2006). Indeed, it has been held that "A choice-of-counsel violation occurs whenever the defendant's choice is wrongly denied." *Id*. When the Court forced Mr. Arora upon Mr. York, his choice of counsel was unequivocally wrongly denied. Indeed, the action of the Court is far more egregious because the reason that it forced Mr. Arora upon Mr. York was because it recognized that Mr. Patrick was ill-prepared to proceed without assistance and the Court wanted Mr. York to proceed to trial irrespective of that fact. Thus, not only was Mr. York being forced to trial by a Court motivated by unfounded perceptions and assumptions, with counsel that he did not want and could not trust, but his only other resource was counsel who was not prepared.

### 2. The Court's Refusal to Grant a Continuance

The government contends that "on direct appeal, York's counsel argued that the trial judge abused his discretion when he denied the continuance, and the Court of Appeals rejected that argument, without separate discussion." Petition Opp. at 16. This representation misstates the facts. While it is true that the issue of failure to grant a continuance was raised on appeal, it was not addressed by the 11th Circuit insofar as it related to the ineffective assistance of counsel argument of Mr. York. The 11th Circuit made this point very clear:

>We conclude that York's ineffective assistance of counsel claim is not properly before us at this time because the record below is not sufficiently developed to adequately address the merits of York's argument . . . As such, we do not reach this claim.

*U.S. v. York*, 428 F.3d 1325, 1329 n. 5 (11th Cir. 2005). Even so, the government's contention that there is legal precedent supporting its position that

>Given that the trial judge did not abuse his discretion when he denied the

> continuance, the refusal of the continuance did not impair York's Sixth Amendment right to counsel of his choice.

Petition Opp. at 17, is in error. *Morris v. Slappy*, 466 U.S. 1 (1983), the first case relied upon by the government is totally distinguishable in that the attorney for the defendant in that case informed the court, notwithstanding the representations of the defendant that:

> I feel that I am prepared. My own feeling is that a further continuance would not benefit me in presenting this case.

*Id.* at 461 U.S. 6. In stark contrast to the situation here, Mr. Patrick was adamant that he was not prepared to go forward and that he needed more time.

The next case relied upon by the government in this regard, *U.S. v. Koblitz*, 803 F.2d 1523 (11th Cir. 1986), involved a finding of civil contempt against two lawyers who failed to appear for trial because they were in another trial. Obviously, the facts of that case in no way resemble Mr. York's situation. However, there is language in *Koblitz* that is particularly relevant here

> the Constitution requires that a criminal defendant have a "fair or reasonable opportunity to obtain particular counsel and [suffer from] no arbitrary action prohibiting the effective use of such counsel." [citations omitted].

*Id.* at 1528.

The *Koblitz* Court further admonished that

> A trial judge must be mindful that "acting in the name of calendar control, [he] cannot arbitrary and unreasonably interfere with a client's right to be represented by the attorney (the Client) has selected." [citations omitted].

*Id.* Yet, that is exactly what this Court did. Mr. York had not previously sought a continuance of the trial date and still this Court, reasoned without basis, that Mr. York would seek another continuance if one were granted. The Court ignored the fact that the government kept filing superseding indictments and that Mr. York had a constitutional right to the counsel of his choice.

Equally without merit is the government's contention that *Thomas v. Waininght*, 676 F.2d

738 (11th Cir. 1985), which stands for the proposition that

> an indigent defendant has an absolute right to be represented by counsel but he does not have a right to have a particular lawyer represent him not to demand a different appointed layer except for good cause.

*Id.* at 742, is in any way applicable to Mr. York's situation. Mr. York was not an indigent defendant and he did have the constitutional right to the counsel of his choice. Constitutionally speaking, the refusal of the Court to grant Mr. York a continuance of his trial led to a violation of Mr. York's Sixth Amendment right to the effective assistance of counsel at trial. Consequently, Mr. York was denied the fundamental right to a fair trial that the Due Process Clause of the United States Constitution guarantees every criminal defendant in every case, no matter the accusation.

### C. Ineffective Assistance of Counsel

The government chastises Mr. York for an alleged lack of specificity when he asserts in his original submission that:

> the defense put forth was unfocused, ill-conceived and outright incompetent. There was not a single cross-examination done by the defense that was even slightly successful. The defense had no theme nor apparent goal. The cross-examination of Habibyah Washington was particularly woeful. The government's case was not put to the test in any respect. From jury selection to closing argument, the Petitioner was ill-served by seemingly unprepared and overmatched defense counsel. In sum, the Petitioner had ineffective legal representation and his defense was severely prejudiced by that ineffective legal representation.

Petition at 9-10. In chastising Mr.York for an alleged lack of specificity regarding his claim of ineffective assistance of counsel, there seems to be an attempt to ignore the fact that the 11th Circuit specifically noted:

> York also asserts that his post-trial counsel was ineffective in that, without York's express consent, he withdrew a motion for judgment of acquittal and a motion for new trial, both of which were initially filed by York's trial counsel.

*York*, *supra*. at n. 5. In addition to the above noted instances of ineffective assistance of counsel,

jury selection and the cross-examination of Habibyah Washington were specifically identified as having been particularly woeful at trial.

Further still, the government acknowledges "York achieves some degree of specificity when he refers to the testimonies of Mr. Kenneth Lanning and Dr. Frederick Bright." Petition Opp. at 17. Having acknowledged at least some degree of specificity with regard to Mr. Lanning and Dr. Bright, the government nonetheless exhibits a profound misunderstanding of Mr. York's position relative to these two (2) witnesses.

### 1. Mr. Lanning

The government contends that because the Court allowed Mr. Lanning to testify after a pretrial hearing was conducted regarding his testimony, any problem that Mr. York now alleges exists regarding his testimony is without basis. The government, however, has it all wrong. Just because the Court allowed Mr. Lanning to testify, it does not follow that defense counsel had no further obligation to object. In *United States v. Romero*, 189 F.3d 576 (7th Cir. 1999), while it is true that Mr. Lanning was allowed to testify, as the government noted, the 7th Circuit pointed out the very problem that exists here:

> The defense does raise a couple of legitimate concerns, however, about the scope of Agent Lanning's testimony. First, Romero argues that some of Lanning's testimony violated Federal Rule of Evidence 704(b) because he indirectly opined that Romero intended to molest Erich. The defense also argues that some of Agent Lanning's testimony constituted "group character evidence" in violation of Rule 404. One problem with both of these argument is that throughout Lanning's long direct and redirect testimony the defense never objected to any question or answer. Not once. And this despite the district judge's specific invitation during pretrial proceedings to deal with objections to Lanning's testimony on a question-by-question basis. The judge had even noted at the pretrial proceeding his concern that some of Lanning's testimony might be improper. Because the defense never objected, claims regarding specific questions and answers during Lanning's testimony have not been preserved for appeal, and we will reverse the district court only on a finding of clear error.

*Id.* at 585. After having testified as follows:

> Q. So, over the last hour and a-half, all the information you have given us is just a generic overview of what you think or what you're found over the years that's been published, as you've said?
>
> A. Right. There are the - -
>
> Q. Nothing particular to this case?
>
> A. Yes. Nothing particular to this case.

Transcript of January 7, 2004 at 774. No motion to strike the testimony of Mr. Lanning was made.

> Under the second prong of Daubert, the relevance requirement, the court must "ensure that the proposed expert testimony is 'relevant to the task at hand,' . . . i.e., that it logically advances a material aspect of the proposed party's case." Thus, the evidence must have a scientific connection to the disputed facts in the case. [citations omitted]

*Allison v. McGlan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999). Moreover, Counsel for the Petitioner failed to object to Mr. Lanning's personal opinion being offered without sufficient foundation and more egregiously, failed to move to strike his testimony once the shortcomings became apparent. This egregious error was further compounded when appellate counsel failed to raise this issue on appeal. The testimony of Mr. Lanning was extremely prejudicial to Mr. York and more importantly, it was not put to the test, or otherwise challenged in any way. No defense expert was called to contest this testimony, no objections were made to assure that it did not cross the line between acceptable and unacceptable testimony, and it did not cross that line, and when those facts are compounded by the fact that no appellate review was sought on this issue, trial counsel's shortcomings regarding Mr. Lanning's testimony is but one of the many areas of ineffectiveness attributable to trial counsel.

### 2. The Testimony of Dr. Bright

In calling one of Mr. York's followers, as an expert witness, trial counsel all but assured that

Mr. York would be convicted. Dr. Bright could not have been a better witness for the prosecution. Having confirmed that it is important that an expert witness remain objective, Dr. Bright admitted a long-term relationship with Mr. York; admitted being in a medical association with Mr. York; and admitted that Mr. York was his teacher. *January 19, 2004, Tr.* at 2968-69. Dr. Bright further admitted that instead of being an objective witness he was there to testify in support of "The defendant who I have learned things from, yes." *Id.* at 2968. Dr. Bright also informed the jury that "Tama Re" was the property owned by Mr. York and that he lived there for a couple of years. *Id.* at 2977. Dr. Bright told the jury that he referred to Mr. York as the Master Teacher, Supreme Grand Master and Dr. York, even though he is not a doctor nor does he have a degree in any doctorate program. *Id.* at 2984-85. And if this were not enough, Dr. Bright, who was supposed to be testifying as an expert witness on behalf of Mr. York, admitted to the jury that he took an oath of silence "not to disclose the teachings" of Mr. York's organization to non-members. *Id.* at 2985-86. Dr. Bright also admitted that his resume was not accurate. *Id.* at 2963-65.

Putting Dr. Bright on the witness stand as an alleged expert witness was without a doubt one of the greatest legal blunders that can be imagined. With one witness, the government was able to call into question everything that Mr. York and his organization stood for. There is no imaginable legal strategy that would justify trial counsel calling this witness as an alleged expert. Ineffective assistance of counsel only begins to describe how utterly incompetent it was to present this witness, in this case, under these circumstances.

In sum, Mr. York had ineffective legal representation and his defense was severely prejudiced by that ineffective legal representation

### Conclusion

Because Mr. York had unwanted counsel forced upon him by the Court, his 6th Amendment

rights were violated mandating a new trial. As a result of the Court's failure and/or refusal to continue the trial date, thereby preventing Mr. York's new chosen counsel from being able to properly prepare for trial, Mr. York's 6th Amendment right to counsel was violated and this too mandates a new trial. In addition, trial counsel were positively ineffective and that ineffectiveness prejudiced Mr. York's defense in several respects mandating a new trial. And as to the suggestion by the government that no hearing is warranted in this case, the 11th Circuit has already opined that with respect to Mr. York's ineffective assistance of counsel argument, the record before this Court must be fully developed. The only way to fully develop the record in this case, is for the Court to convene a hearing to address all of the issues raised, and not just the three that the government chose to address in its opposition.

              Respectfully submitted,

               /s/ Reginald A. Green
              Reginald A. Greene, Esquire
              675 West Peachtree Street, N.W.
              Suite 4300
              Atlanta, Georgia  30375
              (404) 335-0761 (Voice)
              (404) 614-4054 (Fax)

               /s/ Greogry L. Lattimer
              Gregory L. Lattimer
              Law Offices of Gregory L. Lattimer
              1100 H Street, N.W.
              Suite 920
              Washington, D.C.  20005
              (202) 638-0095
              (202) 638-0091 (Fax)


               /s/   Malik Shabazz
              Malik Shabazz
              1250 Connecticut avenue, N.W.
              Washington, D.C.   20036
              (202) 408-7021

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 25th day of March, 2008, a copy of the foregoing was served electronically on Dean S. Daskal, Assistant U.S. Attorney, P.O. Box 2568, Columbus, Georgia 31902.

I also certify that I have mailed by the United States Postal Service the document to the following non-CM/ECF participants in a properly addressed and stamped envelopes as follows: none.

/s/ Gregory L. Lattimer
Gregory L. Lattimer
