IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

DWIGHT D. YORK,                     *

    Petitioner,                        *
                                                  CASE NO. 5:07-CV-90001 CAR
vs.                                 *            28 U.S.C. § 2255
                                                  CASE NO. 5:02-CR-27 CAR

UNITED STATES OF AMERICA,           *

    Respondent.                        *

### REPORT AND RECOMMENDATION

Petitioner's Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255 is before this court for preliminary consideration as required by Rule 4 of the Rules Governing Section 2255 Proceedings For The United States District Courts.

### Procedural History

By superseding indictment return in this court against Petitioner York, he was charged with involvement in a Racketeer Influenced And Corrupt Organizations (RICO) conspiracy in the commission of multiple acts of transporting minors in intestate commerce intending to engage the minors in unlawful sexual activity in violation of Georgia law and 18 U.S.C. § 2423(a), (b), and also structuring cash transactions to evade bank reporting requirements of FDIC insured banking institutions in violation of 18 U.S.C. § 5313(a) and 31 U.S.C. § 5324(a)(3). Specific substantive RICO offenses were charged in the Eleven Count Indictment. (Doc. 158). Petitioner York pled not guilty to all charges, and a jury trial was conducted, which resulted in his conviction on all Counts except Count 8 of the Eleven Count Indictment. (Doc. 234). York directly appealed his conviction and sentence to the United States Court of Appeals for the Eleventh Circuit, which entered a final judgment of conviction on January 6, 2006. (Doc. 372). York made application for *writ of certiorari,*

which the United States Supreme Court denied on June 26, 2006. *York v. United States,* 126 S.Ct. 2948.

On June 26, 2007, Petitioner York's Motion To Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, under review here, was filed in this court. (Doc. 382). York's Motion alleges "the denial of the right to a fair trial, due process of law, and effective assistance of counsel as guaranteed by the Fifth and Sixth Amendments to the United States Constitution." *Id.* at 1.   The Motion enumerates seven claims for relief under § 2255 as follows:

> 1) At sentencing, counsel failed to properly preserve an argument based upon the decision issued in *Blakely v. Washington.*[1]
> 2) On appeal, counsel was ineffective in that, during oral arguments, counsel made false claims that the *Blakey-Booker* issue had been preserved at the lower level.  In doing so, appellate counsel failed to argue that the standard of review utilized by the Court of Appeals was erroneous.
> 3) Trial counsel was also ineffective at trial because he was unprepared to try this complex multi-count prosecution, ill-prepared to address the expert witnesses presented by the government, ill-equipped to provide legal representation in a matter of this magnitude, ineffective insofar as the directive and desires of the Petitioner were ignored, and because the post-trial counsel's actions were totally inconsistent with the wishes of the Petitioner, when he withdrew the Petitioner's motion for new trial despite the merits of the issues raised therein and without advising the Petitioner that such action was being taken.
> 4) Petitioner was deprived of effective legal representation when the Court, in violation of the 6th Amendment, forced the Petitioner to have counsel that had been fired to continue in a representative capacity.
> 5) Petitioner was deprived of a fair trial as a result of the Court's clear bias as gleaned from its inappropriate visits to Internet Web sites for the purpose of conducting independent research regarding the Petitioner and his affiliations.
> 6) Several witnesses of serious impact have now recanted their

---

[1] *Blakely v. Washington,* 542 U.S. 296 , 124 S.Ct. 2531 (2004).   By Amended Motion To Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 filed on August 6, 2007 (Doc. 384), Petitioner abandoned this claim, probably because *Blakely* was not decided until June 24, 2004, after Petitioner's trial and April 22, 2004 sentencing.

>>testimony and advised of serious prosecutorial misconduct calling the Petitioner's entire conviction into question particularly in light of the fact that trial counsel was both ill-prepared and ill-equipped at the time of trial to go forward and/or completely advance the Petitioner's interest.
>>7) The Court had no jurisdiction to convene or conduct a trial of the defendant due to his status as a Liberian diplomat.

*Id.* at 1, 2.

### Petitioner's Claims

**I.** The first claim in Petitioner York's Amended Motion To Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 corresponds with Claim 4 from his initial Motion. However, in his Memorandum Brief attached to his Amended Motion, he jumps apparently to his original Claim 4 modified as follows:

>>A. The failure of the court to allow the petitioner his counsel of choice was a clear violation of the 6th Amendment and requires, in and of itself, that the court set aside his conviction.

(Doc. 384 at 11).  As to this claim, Petitioner sets forth, without any reference to the record, the argument that his trial date on a Superseding Indictment upon which he was arraigned on December 16, 2003, had been set to commence on January 5, 2004; that prior to the trial date he had "specifically discharged" his retained Attorneys Garland and Arora, and informed the court of his desire to be represented by newly retained Attorney Adrian L. Patrick, who had filed an entry of appearance 23 days prior to the trial date. (Transcript, Doc. 402 at 2).  Petitioner York concludes, "In an apparent attempt to minimize the prejudice that Petitioner would obviously suffer if forced to go forward, the Court disregarded the wishes of the Petitioner and incredulously unilaterally determined that Mr. Arora would be required to remain as Petitioner's counsel, ... The Court forced discharged counsel upon the Petitioner and that was a clear violation of his right to counsel of

3

choice." (Doc. 384 at 11, 12). Relying on *United States v. Gonzalez-Lopez,* 126 S.Ct. 2557 (2006), Petitioner York concludes that the district court committed a violation of Petitioner's Sixth Amendment right to counsel of choice, mandating that York be granted a new trial. *Id.* at 12. The record reveals a legal conclusion contrary to that which York argues.

Attorney Leroy R. Johnson originally appeared as retained counsel for Petitioner York at his initial appearance hearing on May 9, 2002. (Transcript, Doc. 61 at 2). At that time, Attorney Johnson introduced to the court his associate Attorney Hines who was also to represent Petitioner York. *Id.* On May 13, 2002, at a hearing on the Government's Motion for Pre-Trial Detention, Attorney Ed Garland appeared as co- counsel in York's case. *Id.* at 12, 13. On January 23, 2003, at a guilty plea hearing, which ultimately failed, Petitioner York advised the court that he was represented by Attorney Garland, that he had had sufficient time to consult with Attorney Garland, and that he was satisfied with his services. (Transcript, Doc. 118 at 6). At that time, Attorney Garland introduced Attorney [Manny] Arora of his law firm, who was also to represent York, stating that he and Attorney Arora had both been "over every element and every fact that we know of [in] this case. It has been thoroughly investigated, witnesses have been interviewed, all of the discovery, both state and federal, has been reviewed, all of that has been reviewed with the defendant, as well as defenses, cross examination and legal issues, and I'm satisfied that he understands this case fully and is knowingly and intelligently entering his plea." *Id.* at 6, 7.

On June 30, 2003, as indicated, through plea colloquy between Judge Lawson and Petitioner York, it was determined that Petitioner's guilty plea would not be accepted, but that Petitioner York would be allowed to withdraw his guilty plea. (Transcript, Doc. 115). At that hearing, Attorney Arora successfully argued a Motion to Change Venue, which he had filed. He also filed a Motion to

Suppress evidence on York's behalf. *Id.*

At a pretrial motions hearing held on December 16, 2003, Petitioner York had additional counsel, Attorneys Ben Davis and Adrian Patrick, enter the case representing him. (Transcript, Doc. 402 at 2, 3). Mr. Arora argued a Motion To Dismiss the Indictment for failure to allege a violation of federal law at that time, as well as other pre-trial motions. (Transcript, Doc. 402).

At the December 16, 2003, pre-trial motions hearing, Judge Royal advised all of the Attorneys as follows:

> This case has been around for a long time, and you've had ample opportunity to know what your case is about and get prepared for it. ... I will tell you, and I note specifically for this case, is we've just had two new attorneys come into the case, and that's fine. I don't have a problem with that. But you told me, Mr. Garland, that you're going to have a meeting this afternoon and decide who is going to be lead counsel. And what I will tell you is simply this, I'm not going to continue this case because there are two new lawyers in the case, and I'm not going to let anybody out of [the] case, including Mr. Rubino, if it's going to cause this case to be delayed or cause problems in the trial of this case. So we're moving forward with this case on January the 5th.

(Transcript, Doc. 402-2 at 8, 9). On December 30, 2003, at an in camera hearing attended by Defendant York, the U.S. Attorneys, Defense Attorneys Patrick, Davis, and Arora, Mr. Arora announced to the court that:

> I got a letter from our client last night over at our office from a courier, and I spoke to Dr. York this morning about it. He signed the letter. He wants us terminated from the case. He also wants a continuance, which I've explained you previously stated there wouldn't be one. And I think the letter sort of speaks for itself pretty much ... I believe Mr. Patrick also wanted to address the issue as well.

(Transcript, Doc. 403 at 4). Attorney Patrick then addressed the court, stating that:

> Your Honor, in light of, obviously, Dr. York has a right to choose counsel or fire counsel, or whatever he would like. However, that

5

> puts me in a position of just being recently retained on the case. I was under the expectation that Mr. Garland's firm would still be involved with the case, and we actually split up trial responsibilities, and so forth and so on. And we're five days before trial at this point, so that puts me in a very, I guess, unfair position or a position where I can't effectively represent Dr. York, because I guess Mr. Garland's firm has been involved in this case, what, 19 months. I've been on it a few weeks. And I'm compelled to, you know, demand a continuance – request a continuance from the Court in order to properly prepare because I didn't know that was going to happen.

*Id.* at 4, 5.  The Court responded, "Well, the only evidence in the record that I have of the reason that Mr. York wants to fire Mr. Garland and Mr. Arora is this letter of December 29, 2003. ... Is there any other reason, other that what is stated here in this letter,[2] for why Mr. York is terminating his attorney-client relationship with Mr. Garland and Mr. Arora?"  *Id.* at 5, 6.  At that point, Petitioner York spoke as follows:

> My name is Chief Black Thunderbird of the Yamassee Native American Moors – – The Yamassee Native American Moors of the Creek Nation, Registry Number 208/1999, Non-National Number 700R. The attorneys that self-appointed themselves – and I've made that clear – in June of 30 (sic) were not representing me. They did not visit me. I had no access to a law library, which I know is my constitutional right. I was cut off from telephone communication with my family. I was transferred from venue to venue. So, in all light, I had no way of actually being prepared. And then my evaluation was established in order to say that I was not prepared to cooperate with my attorneys, or wasn't willing to, in actuality. I had no knowledge of what was going on around me at all. I had, like I said, no visitations, no briefings. Just boxes of information and boxes of information called disclosures. The attorneys did not work on my behalf. They were not trying to put forth my motions. ... Everything about this case has been one-sided. My side of the story has not been heard. My attorneys, as they were being called at the time, did not do anything in my defense. None of the motions was re-addressed, many

---

[2] Judge Royal stated shortly hereafter, "One thing I might point out related to this record is what's in this letter is something that happened back in July – June or July of this year, when Judge Lawson was in this case. Mr. York has known about this for months now. So this is not something that should have spurred him on the eve of trial to terminate his relationship with his attorneys." (Transcript, Doc. 403 at 19).

6

>> motions; for instance, my jurisdiction, my sovereignty, was mentioned. It was never re-addressed.

*Id.* at 6, 7.   York continued:

>> I'm not even familiar with what I'm doing. It's like – – it's like all my constitutional right is just being striped away from me. And I have a right to say that I don't feel Mr. Garland is working on my behalf, I believe, or Mr. Arora, because they're a team. And, therefore, I did not bring on the counsel to be an assistant; I brought him on to be a replacement. There's a difference. And as a replacement, they need time for us to work out this case so we can go in there and aptly defend myself against these accusations  ... all I'm asking, is that I get enough time to, you know, to confer with my counsel and we prepare ourselves so I can be trained and ready for trial. They had over a year.

*Id.* at 6, 7, 8.   Observing that it was clear to him that Attorneys Garland and Arora had actively represented Petitioner York, Judge Royal inquired if it was York's intention to have Attorneys Patrick and Davis represent him in the trial of the case. York answered that it was. *Id.* at 10. The court also observed that:

>> I think this is just an effort to move the trial back. I have no confidence whatsoever that if I move this trial to sometime in the spring, that the same thing won't happen again, that Mr. York will come in and fire y'all and then we're back in the same situation. ... Now, I'll give you the opportunity to re-think whether you want to keep Mr. Arora and Mr. Garland in the case in light of what I just said, but I'm not taking the case off the calendar.

*Id.* at 12, 13.   After being extended the opportunity to re-think his position, Mr. York "officially fired" Mr. Garland and Mr. Arora, "for the record." *Id.* at 17, 18.  However, the court advised Mr. Arora that he was not released, but would remain in the hearing to advise Mr. Patrick, if Mr. Patrick needed advice. *Id.* at 18.  As the in camera hearing continued, Attorney Patrick addressed the court, stating as follows:

>> Your Honor, first of all, per my advice, Mr. Arora will be handling a

7

>few of the legal arguments related to opening the courtroom. I will
>make a few statements, but per my advice, Dr. York as agreed to that.

(Transcript, Doc. 404 at 3).    The court reconvened at 12:30 on December 30, 2003, for further consideration of the trial status of Attorney Arora, and the following colloquy occurred:

>**MR. ARORA**:   Judge, Mr. Patrick has spoken with Dr. York, and he wants us not to be affiliated in the case, "us" meaning Mr. Garland and myself. ... I've offered, because it's sort of late, since the trial's coming down, to come down, not as standby counsel or what-have-you, but just to come down and assist Mr. Patrick, because obviously we have a wealth of knowledge of the case [that] Mr. Patrick hasn't been up-to-speed on because I was handling certain things. ... I'll just come down for however long Mr. Patrick needs me, and either sit at the table but not speak, or sit in the gallery or something. ... I want to make sure that's acceptable to Dr. York. I just proposed that out there, because I offered that to him. I got the impression that he was okay with it, but I wanted to make sure he's okay with it on the record, so it's recorded.
>
>**MR. PATRICK**:   I think, Your Honor, from me speaking with Dr. York, he wanted to stand by what was in the letter, all the issues in the letter, and that he didn't want any participation by Mr. Garland to affect – – or his firm, Manny [Arora], or whatever, – – to affect the issues raised in the letter, so however that pans out. If I could have assistance, Your Honor, that's going to be – – I mean, I can't get a continuance. That's been denied. So, I mean, it's going to be needed.
>
>**THE COURT**:   Well, you're saying that you want to accept Mr. Arora's offer; is that what you're saying?
>
>**MR. PATRICK**:   Well, it's actually up to Dr. York. I'm saying it would be – – you know, if he's there to assist, that would be needed, but that's up to Dr. York. ... I think, basically, the defendant is just saying that as long as all the issues in the letter are preserved, that he has no problem with Mr. Arora assisting.
>...
>
>**THE DEFENDANT**:   On behalf of the letter, the letter clearly states that I intend to file charges against Mr. Garland and Mr. Arora's firm for ineffective assistance of counsel, and I want that – – I don't want it to be passed off as a ploy when it's a fact based on situations that led to me putting it in at this late date, being as I was deprived under

8

>duress of access to any public media, library, computer, or whatever. So I just want to make that clear, that if Mr. Arora would like to assist unofficially in the case with Mr. Patrick, that's fine, but as long as – – for the record, it's clear that the letter still stands, that that's my position in the letter, that it goes forward.

(Transcript, Doc. 405 at 2, 3, 4, 5, 6).

The foregoing record illustrates that Petitioner York's claim that "the court forced discharged counsel upon him, resulting in a clear violation of his right to counsel of choice" (Doc. 384 at 11, 12), is factually unsupported. York's reliance upon *United States v. Gonzalez-Lopez,* 126 S.Ct. 2557 (2006), likewise, is not supported by the facts of this case. In *Gonzalez-Lopez,* the defendant's counsel of choice was not allowed to participate in the defense of the case in *pro hac vice* status. York's claim is that discharged counsel was allowed to participate in assistance to his counsel of choice, but the above record also shows that York agreed to that arrangement.

**II.** Petitioner York's second claim in his Amended Motion To Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 284 at 13) is stated as follows:

>The Court's refusal to grant a continuance of the January 2004 trial date caused the Petitioner to have ineffective assistance of counsel.

York, here, re-argues his claim that the trial court's denial of his eleventh hour motion for continuance was error, through a claim of ineffective assistance of counsel. This claim of error was resolved against York by the United States Court of Appeals for the Eleventh Circuit on direct appeal and cannot be reviewed here. The Court found, after full review of the voluminous record, plus briefs and arguments of counsel, that this claim had no merit. (Doc. 372). The Eleventh Circuit Court of Appeals held in *United States v. Nyhuis,* 211 F.3d 1340, 1343(11th Cir. 2000):

>"[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." *United States v Natelli,* 553 F.2d 5, 7 (2nd Cir. 1997).

The record reflects that Petitioner York, despite his belated firing of counsel who had prepared motions and defenses for him for almost two years, retained the benefit of the knowledge of the case gained by Attorney Arora in an on-call basis for the benefit of the Attorneys he had hired at the eleventh hour before trial. York cannot have the legal conundrum, which he created, both ways. He has not shown ineffective assistance of counsel cause by his failure to get a continuance on the basis that alleged inexperience of new counsel hired after firing his counsel of more than a year. Moreover, he cannot show that the outcome of his case would have been different had his counsel conducted themselves differently.

To prevail on a claim of ineffective assistance of counsel, a movant bears the burden of establishing by a preponderance of the evidence that his attorney's performance was deficient and that he was prejudiced by the inadequate performance. *Strickland v. Washington*, 466 U.S. 668 (1984); *Chandler v. United States*, 218 F.3d 1305 (11th Cir. 2000). To establish deficient performance, a defendant must prove that his counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. There is a strong presumption that the challenged action constituted sound trial strategy. *Chatelain v. Singletary*, 89 F.3d 749 (11th Cir. 1996). To satisfy the prejudice prong, a petitioner must show that there is a reasonable probability that, but for counsel's inadequate representation, the proceedings would have been different. *Mills v. Singletary*, 63 F.3d 999 (11th Cir. 1995); *see also Meeks v. Moore*, 216 F.3d 951 (11th Cir. 2000). If a defendant fails to establish that he suffered prejudice as a consequence of the alleged ineffective assistance, a court need not address the performance prong of the Strickland test. *Holiday v. Haley*, 209 F.3d 1243 (11th Cir. 2000). Petitioner York is less than specific in his claims of ineffective assistance of counsel and merely concludes from the result of his trial that his counsel was ineffective.

The observance of Petitioner's Sixth Amendment rights does not require acquittal.

**III.** In the third and final ground for relief claimed in his Amended Motion To Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 384), Petitioner York makes sweeping claims of ineffective assistance of counsel**,** most of which are mere conclusions without specificity. For example, York alleges:

> Petitioner was also ill-served by traditional ineffective assistance of counsel .

(Doc. 384 at 16). He also alleges:

> [T]he defense put forth was unfocused, ill-conceived and outright incompent. There was not a single cross-examination done by the defense that was even slightly successful. The defense had no theme nor apparent goal.

*Id.* at 18. York adds:

> The government's case was not put to the test in any respect. From jury selection to closing argument, the Petitioner was ill-served by seemingly unprepared and overmatched defense counsel. In sum, the Petitioner had ineffective legal representative and his defense was severely prejudiced by that legal representation.

*Id.* at 19. These allegations lack specificity and are therefore conclusory. "Conclusory allegations of ineffective assistance are insufficient. *United States v. Lawson,* 947 F.2d 849, 853 (7th Cir. 1991)." *Wilson v. United States,* 962 F.2d 996 (11th Cir. 1992). These claims therefore do not merit consideration.

Petitioner York becomes more specific in regard to the following claim:

> At the trial of this matter, there were critical errors that occurred with experts. First, the testimony of Kenneth Lanning should have been struck by the Court for several reasons. For starters, Mr. Lanning testified as an expert in the "sexual victimization of children" and specifically testified about particular characatics associated with individuals who committed sexual offenses against minors. Transcript

> of January 7, 2004 at 718.  However, Mr. Lanning's testimony was devoid of any scientific support. ... Mr. Laning's testimony fails to meet the reliability prong of *Daubert v. Merrill Dow Phrm., Inc.,* 509 U.S. 579, 593-94 (1993). ...
>
>   Notwithstanding the blatant shortcomings and reliability of Mr. Lanning's testimony, counsel for the Petitioner failed to object to his opinion being offered without sufficient foundation and more egregiously, failed to move to strike his testimony once the shortcomings became apparent.  This egregious error was further compounded when appellate counsel failed to raise this issue on appeal.
>   Equally if not more shocking, defense counsel called Dr. Frederick O. Bright as an expert witness.  Dr. Bright, who was one of the Petitioner's followers was thoroughly impeached, as should have been expected, and thus, nullified any chance the defense had of countering the medical findings of the government's medical expert.

*Id.* at 17, 18.  Taking the last claim first, it is unthinkable that Petitioner York, who micro-managed his defense by hiring and firing in order several attorneys in his case, did not have the greater part of input in calling his follower, Dr. Bright, to testify for the defense.  But that is speculation.  Counsel is not ineffective for failing to prevent the impeachment of an impeachable witness.  Nor is counsel ineffective for being overmatched.  Moreover, Petitioner York does not suggest that the outcome of his trial would have been different had Dr. Bright not been called to testify for the defense at all.  A review of the record reveals that there was substantial evidence in support of the charges against Petitioner York, without reference to the testimony of Mr. Lanning or Dr. Bright.

Regarding the failure of counsel to object to the testimony of Mr. Lanning during the trial, the district court heard defense objections and concerns as to the admission of Mr. Lanning's testimony at a pre-trial hearing on December 16, 2003.  (Transcript, 402-2 at 97, 98, 99). Petitioner's counsel first stated:

> We think the Government should be required to proffer some substance to put this in context what they intend to ask. ... So that we can make decisions about, do we cross or what do we cross. ... I'm

12

>>trying to find out what they are going to do.

In response to counsel's concerns as well as the court's questions, Mr. Lanning stated:

>>It is my understanding that I'm not going to offer any opinions. What I'm going to do is to educate the jury concerning certain patterns of behavior that I have become aware of as a result of my training, education, and experience. ... I actually know very little about this case. I'm not going to talk about this case. I'm going to talk about different patterns of behavior that I've seen with different kinds of sex offenders against children and different patterns that I've seen in children who have been victimized. ... I don't know if the pattern is going to fit in this case. When I've testified in this way as an education witness, what the courts have said is I provide the educational material. Then it is up to the jury to decide, am I a credible witness, is the dynamics that I describe, do they seem to fit the evidence in this case. That decision is left for the jury.

*Id.* Thereafter, Petitioner's counsel subjected Mr. Lanning to a thorough and sifting cross-examination and determined what he could expect from Lanning's testimony, i.e., no opinion whatsoever about Petitioner's case. *Id.* at 119-138. After the parties had opportunity to brief the question as to the admissibility of Lanning's testimony, the court ruled it admissible, noting that Lanning's testimony based upon his experience, had been allowed in the case of *United States v. Romero,* 189 F.3d 576 (7th Cir. 1999), *cert. denied,* 529 U.S.1011, 120 S.Ct. 1286 (2000). At trial on January 7, 2004, Mr. Lanning testified at length. (Transcript 3 at 709-799). Attorney Arora, acting as counsel for York, apparently with Petitioner's consent, cross-examined Lanning. After voir dire, the Government moved the court for the admission of Mr. Lanning's testimony as "an expert witness in the sexual victimization of children." *Id.* at 717. At that time, Attorney Arora reminded the court of the defense objections to Lanning's testimony. *Id.* Moreover, in his cross-examination, Attorney Arora very successfully established that Mr. Lanning knew almost nothing about the case at hand; was not rendering any opinion whatsoever about Petitioner's case; held no

13

medical, psychological or social behavior degrees; and could only testify as to his observations and experiences as to prior cases both civil and criminal, in which children who disclosed sexual abuse may have been lying, children who did not disclose sexual abuse may have been lying, and either one could have been telling the truth. Attorney Arora essentially nullified the import of Mr. Lanning's testimony altogether. He made it appear a complete waste of the jury's time. Attorney Arora established very clearly that Mr. Lanning could give no opinion at all in Petitioner's case.

Petitioner York cannot overcome the obvious legal conclusion from the record that it cannot be determined whether Mr. Lanning's testimony had any effect on the outcome of Petitioner's case one way or the other. Petitioner York cannot show that his case would have had a different result had Lanning's impotent testimony been disallowed. Nor can Petitioner York show that the outcome of his case would have been different had his counsel's conduct regarding Mr. Lanning and his testimony been different. York cannot show that his counsel's conduct was professionally unreasonable. The record indicates that Attorney Arora obliterated Mr. Lanning's *evidence*.

**IV.** The remainder of Petitioner's claims are manifestly lacking in legal merit. His claim in his Motion To Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 that this court has no jurisdiction over him, because he is a Nigerian Diplomat with corresponding diplomatic immunity is particularly frivolous in view of his adamant manifestations, quoted above, that he was at all time relevant to this action Chief Black Thunderbird of the Yamassee Native American Moors – – The Yamassee Native American Moors of the Creek Indian Nation. Moreover, the United States Court of Appeals for the Eleventh Circuit, in its decision of Petitioner's direct appeal, *United States v. York,* 428 F.3d 1325, 1331 (2005), at FN 7, stated that:

> York's appeal, however, properly comes to this Court from United
> States District Court for the Middle District of Georgia (Macon

> Division), where the Nuwabians' Eatonton, Georgia compound is located and the Indictment was returned.

It necessarily follows that if the appeal from the Middle District of Georgia is "properly" before the United States Court of Appeals for the Eleventh Circuit, there can be no meritorious dispute of this court's jurisdiction at this late date.

York's Amended Motion To Vacate and his attached Memorandum of law fail to argue any of his other originally stated claims. In particular, Petitioner's claim that, on appeal, his counsel was ineffective for failing to argue that the standard of review utilized by the Court of Appeals was erroneous under *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738 (2005), was not re-addressed here. However, the record reflects that counsel fully argued the district court's sentencing rational to both the United States Court of Appeals for the Eleventh Circuit and to the United States Supreme Court on in his application for *certiorari* which was denied on January 26, 2006. *See United States v. York,* 428 F.3d 1325, 1336 (11th Cir. 2005)(defendant failed to establish that *Booker* error in sentencing affected his substantial rights); *York v. United States,* 126 S.Ct. 2948 (2006)(petition for writ of certiorari to the United States Court of Appeals for the Eleventh Circuit denied). The Circuit Court's position remains undisturbed through this date.

To prevail on a claim of ineffective assistance of counsel, a movant bears the burden of establishing by a preponderance of the evidence that his attorney's performance was deficient and that he was prejudiced by the inadequate performance. *Strickland v. Washington*, 466 U.S. 668 (1984); *Chandler v. United States*, 218 F.3d 1305 (11th Cir. 2000). Counsel cannot be considered ineffective for failing to raise claims that lack merit. *See Alvord v. Wainright,* 725 F.2d 1282, 1291 (11th Cir. 1984). The Eleventh Circuit Court of Appeals stated in *Rogers v. Zant,* 13 F.3d 384, 386 (1994):

> The cases in which habeas petitioners can properly prevail on the

15

> ground of ineffective assistance of counsel are few and far between. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064 (1984). To establish prejudice, the Petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694..... When reviewing whether an attorney is ineffective, courts "should always presume strongly that counsel's performance was reasonable and adequate." *Atkins v. Singletary*, 965 F. 2d 952, 958 (11th Cir. 1992). And, "a court should be highly deferential to those choices ... that are arguably dictated by a reasonable trial strategy." *Devier v. Zant*, 3 F.3d 1445, 1450 (11th Cir. 1993). Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so. This burden, which is petitioner's to bear, is and is supposed to be a heavy one.

Petitioner's Motion To Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 does not raise issues that are not overcome by the record in this action, as shown above. A petitioner is not entitled to an evidentiary hearing when the files and records make manifest the lack of merit of a Section 2255 claim. *United States v. Lagrone,* 727 F.2d 1037 (11th Cir. 1984). A hearing is not required on barred or patently frivolous claims. *McCleskey v. Zant,* 499 U. S. 467, 494 (1991); *Holmes v. United States,* 876 F.2d 1545, 1553 (11th Cir. 1989). A hearing is not required when the allegations of fact supporting petitioner's claims are conclusory and not supported by the record, demonstrably without merit, that is "affirmatively contradicted" by the files and record, or wholly incredible. See, *Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977); *United States v. Laetividal-Gonzalez,* 939 F.2d 1455, 1465 (11th Cir. 1991), *cert. denied,* 503 U.S. 912 (1992); *Humphrey v. United States,* 888 F.2d 1546 (11th Cir. 1989). Petitioner has not alleged facts or issues that are not resolved adversely to him from an examination of the record. An evidentiary hearing is, therefore,

16

not required or warranted.

**WHEREFORE, IT IS RECOMMENDED** that Petitioner York's Motion To Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 be DENIED. Pursuant to 28 U.S.C. § 636 (b)(1), Petitioner and/or the Government may serve and file written objections to this Recommendation with the UNITED STATES DISTRICT JUDGE, WITHIN TEN (10) DAYS after being served with a copy hereof.

**SO RECOMMENDED** this 18th day of February 2009.

        **S/ G. MALLON FAIRCLOTH**
        **UNITED STATES MAGISTRATE JUDGE**