**EXHIBIT 15**

# JUDICIAL NOTICE OF MY PSYCHIATRIC EVALUATION

UNITED STATES DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS
METROPOLITAN CORRECTIONAL CENTER
NEW YORK, NEW YORK

COMPETENCY TO STAND TRIAL EVALUATION

NAME: DWIGHT YORK a/k/a MALACHI Z. YORK
REGISTRATION: 17911-054
DATE OF BIRTH: 6/26/45

CRIMINAL NO: 5:02-CR-27
DATE OF REPORT: 9/17/03

### IDENTIFICATION AND REASON FOR REFERRAL:

Mr. York is a 58-year-old African-America/Native-American male who was admitted to the Metropolitan Correctional Center (MCC), New York, New York on August 14, 2003. Mr. York was admitted to the custody of the Attorney General by the Honorable Hugh Lawson, United States District Judge, United States District Court for the Middle District of Georgia, Macon Division, for a psychological assessment to determine the defendant's competency to stand trial, pursuant to Title 18, U.S.C., Section 4241. Mr. York has been charged with two counts of transporting children in interstate commerce for purposes of unlawful sexual activity, in violation of Title 18, United States Code, Section 2423(a), and two counts of traveling in interstate commerce for the purposes of engaging in an unlawful act with a minor, in violation of Title 18, United States Code, Section 2423 (b).

### EVALUATION PROCEDURES

Mr. York was interviewed on several occasions, most recently on September 4, 2003, for a total of approximately two hours. Psychological testing included administration of the Minnesota Multiphasic Personality Inventory-2 (MMPI-2), a self-report, objective measure of personality characteristics, psychological adjustment and response bias.

Prior to the interviews and psychological testing, Mr. York was informed that Dr. William J. Ryan is a licensed psychologist, appointed by the Court, to perform an evaluation. He was further informed that Ms. Shannon Taylor is a graduate psychology extern with the Bureau of Prisons and that she would be assisting Dr. Ryan with the evaluation. Mr. York was informed of the purpose of the evaluation, that being to assist the Court with determining his competency to stand trial. Mr. York was informed that neither the interviews nor the results of psychological testing were confidential, and that anything he said could be reported to the Court in either written format or oral testimony. Mr. York was informed that he could consult his attorney prior to, or at any time during the evaluation. When asked to rephrase the above warning in his own words, Mr. York stated, "do I understand what I am being charged with, everything will be passed on to the judge and attorneys,

-1-

and if I require I can have my attorney present." It was the impression of the evaluator that Mr. York had a reasonable understanding and appreciation of the above warning. The interviews and psychological testing proceeded on that basis.

In addition to the interviews and psychological testing with Mr. York, collateral phone interviews were conducted with Frank Rubino, defense counsel. The following documents were also reviewed:

1. The Order for the Competency to Stand Trial signed by United States District Judge Hugh Lawson, dated July 14, 2003.

2. The Motion to withdraw previously filed motion for psychological or psychiatric evaluation signed by Frank A. Rubino, defense attorney, dated July 15, 2003..

3. The Certificate of Service signed by Frank A Rubino, defense attorney, dated July 15, 2003.

4. The Governments Response to Defendant York's Motion to Withdraw Order of Psychological or Psychiatric Evaluation signed by Richard S. Moultrie, Jr., Assistant United States Attorney, dated July 24, 2003.

5. The Certificate of Service signed by Richard S. Moultrie, Assistant United States Attorney, dated July 24, 2003.

6. The Order on Defendant's Motion to Withdraw Previously Filed Motion for Psychological or Psychiatric Evaluation signed by United States District Judge C. Ashley Royal, dated July 24, 2003.

7. The Neuropsychiatric Evaluation signed by Thomas H. Sachy, Neuropsychiatrist, Forensic Psychiatrist, dated July 13, 2003.

8. The Nuwaubian Moors News Letter published by Malachi Z. York, dated November 16, 1997.

9. The book, "Let's Set the Record Straight," authored by Malachi Z. York.

## CLINICAL AND SOCIAL HISTORY:

Mr. York's social history was gathered from his self-report, a review of the above-listed documents and the collateral phone interviews. Mr. York appeared to be a reliable historian and was cooperative throughout the interview process. He was able to provide specific dates, creating a time line of his clinical and social history. Mr. York is a 54-year-old separated, living with a common law wife, African American/Native American male born in Boston, Massachusetts moved to Brooklyn, New York for his early childhood, and raised in Teaneck, New Jersey for the remainder of his childhood and early youth. Mr. York lived in Teaneck, New Jersey with his biological parents

-2-

David and Mary C. York, his siblings, and his cousin Denise. He has two brothers (ages 61 and early 40's) and three sisters (ages 59, late 40's, and 30's). He stated that his mother was a seamstress while growing up, and before his father passed away in 1992, in his 80's, of a heart attack, he was a Merchant Seaman.

Mr. York stated that his childhood was normal, with little league, Boy Scouts, track and baseball. He stated his father punished for fighting, and if he was bad enough he was beaten with a belt on the lower back. Mr. York further denied being a victim of sexual abuse. Mr. York moved in with his Great Aunt, Diane Fletcher, in his early teens because his mother wanted a new environment for him.

Educationally, Mr. York reported that he enjoyed school, especially science, and received mostly C's. He stated he never repeated a grade nor was she in special education classes, nor was he suspended. Mr. York began his schooling in Brooklyn, New York, and soon after moved to Teaneck, New Jersey where he continued until graduation in the early 1960's. Following graduation Mr. York enlisted in the service but had a health rejection for Angio Edema.

With regards to employment, Mr. York reported that he worked making pocketbooks in a factory, and eventually began working temporary jobs as a bank clerk through a temporary agency. In 1970, after saving enough money, Mr. York opened a record and African periphenalia store in Brooklyn, New York, and began writing books about African culture. He eventually closed his store in 1974, and began teaching history, language, religious instructions and culture at Ansarulah School. Mr. York reported that he enjoys reading and producing music in his free time.

Mr. York reported that he was legally married once to Fatima Senosi, age 47, from Sudan. They have two children, and have been separated for 14 years following her inability to return to the United States. Mr. York has a common law wife, Kathy York, age 32. They have two children, an 11 year old son, and a 13 year old daughter. Mr. York stated he has about 11 to 12 other children, most of them grown.

## ARREST HISTORY

Mr. York stated that he was arrested four times. His first arrest occurred at age 17, in 1962, for "breaking and entering." Mr. York received a suspended sentence. In that same year Mr. York reported that he was arrested for fighting, received a misdemeanor Assault III, and was placed in the Woodburn Correctional Center for three years. Mr. York further stated that, at 17, he was also arrested for statutory rape after his 16 year old girlfriend became pregnant. This charge was eventually thrown out. His forth arrest is the instant offense.

## SUBSTANCE ABUSE HISTORY

Mr. York reported that rarely drinks, and he does not drink to get intoxicated. He also stated that he has never used illicit drug

-3-

## PSYCHIATRIC HISTORY

Mr. York reported he has never received treatment in a mental health context, and his only exposure to a mental health clinician has been for the purposes of his trial. Mr. York denied ever attempting suicide.

## MEDICAL HISTORY

Mr. York suffers from genetic Angio Edema. He denied having any other major health concerns.

## BEHAVIORAL OBSERVATIONS:

During his time at the MCC-NY, Mr. York resided on a typical housing unit. Mr. York was not a management problem and staff reported that he was cooperative. He did not receive any disciplinary actions nor was he cited in any incident reports. He was capable of managing his personal care needs.

## RESULTS OF PSYCHOLOGICAL ASSESSMENT:

Mr. York was administered the Minnesota Multiphasic Personality Inventory-2 (MMPI-2), a self-report measure of personality characteristics, psychological adjustment, and response bias, he produced a valid profile. Mr. York's Variable Response Inconsistency Scale (T=42) and True Response Inconsistency Scale (T=57F) scores indicate that he responded in a consistent manner to the test items. Mr. York's scores on the F(T=51) and F(b) (T=51) are indicative of an individual who may have endorsed items relevant to a particular problem area or typically function adequately in most aspects of their life situations. Mr. York's protocol produced three elevated Clinical Scales with the highest elevations on Scale 3 (Hysteria, T=71), Scale 4 (Psychopathic Deviate, T=79), and Scale 6 (Paranoia, T=72). Mr. York also produced a slight elevation on Scale 1 (Hypochondriasis, T=66). Mr. York's scores on Scale 1 and Scale 3 are consistent with an individual who reacts to stress and avoids responsibility by developing physical symptoms. Extremely high scores on Scale 4 tend to be associated with difficulty in incorporating the standards of society, and these individuals often engage in asocial, antisocial, and criminal behaviors. Individuals who have an elevated score on Scale 6 may be exhibiting frankly psychotic behavior, have disturbed thinking, delusions of persecution or grandeur, feel mistreated or angry, harbor grudges, and may utilize projection as a defense mechanism. Mr. York has stated that specific individuals have been "out to get him," due to his beliefs and writings; his elevated Scale 6 score is possibly a result of this.

-4-

## CURRENT MENTAL STATUS:

Mr. York is a 58-year-old, African American/Native American male. He is of average height and weight with black hair. Mr. York arrived at the interviews escorted, fairly groomed and dressed adequately in institutional attire. Mr. York was cooperative throughout the interview process, responding to all questions posed to him. Mr. York expressed he has had "ups and downs" lately. He stated he is not depressed, just upset, due to his inability to see his pastor. Mr. York further stated that he has met some nice people at MCC-NY, and that he enjoys answering all the mail he receives. He denied appetite and sleeping problems. He denied any suicidal ideation or attempts. Mr. York contracted for safety by agreeing to speak with someone in the Psychology Department if suicidal thoughts occur.

Mr. York showed no signs of expressive or receptive speech difficulties. His speech was logical, coherent, and relevant, and he spoke at a normal rate and volume. His thinking appeared organized, and did not appear to be tangential or circumstantial. Their was no apparent loosening of associations. No delusions were elicited at this time. Auditory, visual, tactile, and olfactory hallucinations were denied, and none were suspected. Mr. York's mood was appropriate for the context with a wide range of appropriate affect.

Mr. York was fully oriented to time, place, person, and circumstance. He exhibited some trouble with attention and concentration. He recalled the three words he had repeated five minutes earlier at the request of this evaluator, but only after being given a hint. Additionally, Mr. York had trouble counting backwards from 100 by seven. He made use of his fingers, counting by eights on two occasions. His intellectual abilities are estimated to be in the average range based upon his education history, interactions with the evaluator, and reported vocational history. Mr. York's insight and judgment are in the appropriate range.

## DIAGNOSIS:

AXIS I: 799.9 Deferred

AXIS II: 799.9 Deferred

AXIS III: None

AXIS IV: Current Psychological Stressors: Recent History of Arrest and Incarceration

AXIS V: Current Global Assessment of Functioning = 80

## CLINICAL OBSERVATIONS RELEVANT TO COMPETENCY TO STAND TRIAL:

Regarding Mr. York's understanding of the charges and proceedings against him, the following appears noteworthy. Mr. York said he was charged with "transporting a minor across state lines for the purpose of sexual involvement." Mr. York stated these were serious charges, involving incarceration for up to 180 months. Mr. York reported the available pleas as "guilty and not guilty," and gave accurate definitions of each. Mr. York described an oath as a "declaration of commitment...swear to the tell the truth the whole truth so help you God." He stated that perjury means "lying...person is on the stand tells an untruth." Mr. York stated a witness is "someone who has seen something and is testifying to it." When posed with a hypothetical murder case, Mr. York stated that "the gun or person in possession of the gun" would be considered evidence. Mr. York said a verdict is "the decision that is come upon after testimony, of guilty or not guilty." He defined a sentence as "the time the guilty would have to spend incarcerated." Mr. York said a plea agreement is when "the prosecutor and attorney decide on an alternative other than jail...possibly less time in exchange for a plea of guilty."

Mr. York described the judge as someone who is there "as an impartial mediator...he is the head officer of the court." He stated that the prosecutor "works for the state or government and prosecutes the accused." Mr. York stated the defense attorney "defends the client, and tries to prove the innocence of the client." Mr. York has an understanding of the adversarial nature of courtroom proceedings. Mr. York stated the jury has to "listen to evidence and determine if you are guilty or not guilty."

Regarding Mr. York's ability to assist counsel, the following appears noteworthy. There are currently no delusions, hallucinations or other serious psychiatric symptoms that would impair his ability to form a trusting, consultative relationship with his attorney. He is currently capable of maintaining proper courtroom behavior. He can appropriately attend to and participate in courtroom proceedings. Currently, Mr. York is fully oriented and in good contact with reality. He is currently capable of comprehending the seriousness of his case and the recommendations of defense counsel. He is capable of communicating with counsel. Mr. York is currently capable of weighing the merits of various defenses and making decisions regarding numerous constitutional protections such as his right to trial, his right to an attorney, his right to enter into a plea, to call witnesses, etc. He is currently capable of testifying in his own defense or speaking during sentencing proceedings should it be necessary. He is capable of maintaining appropriate behavior during proceedings. It is the opinion of this evaluator, that Mr. York has a rational and factual understanding of the proceedings against him. He is capable of assisting counsel with defense. It is therefore the opinion of this evaluator that Mr. York is currently Competent to Stand Trial.

## CLINICAL IMPRESSIONS, OPINIONS, AND RECOMMENDATIONS:

This evaluator's clinical impression of Mr. York is that of a 58-year-old separated, African American/Native American male, living with common law wife. In childhood, Mr. York was a victim of excessive corporal punishment at the hands of his father. He was married once with two children, but separated when his Sudanian wife could not return to the United States. Mr. York now lives in a common law marriage, with two other children. Mr. York has no known record of psychiatric treatment or suicidality. Mr. York has adjusted well to his stay at MCC-NY.

Given the above observations, this evaluator offers the following opinions and recommendations with a reasonable degree of psychological certainty.

1. Regarding the issue of Mental Disease or Defect, it is the opinion of this evaluator that Mr. York currently does not present with a Mental Disease or Mental Defect under the law.

2. Regarding the issue of Competency to Stand Trial, it is the opinion of this evaluator that Mr. York currently possesses a rational and factual understanding of the proceedings against him, has the capacity to assist legal counsel in his defense, and can rationally make decisions regarding legal strategy. Therefore, it is the opinion of this evaluator Mr. York is Competent to Stand Trial.

Respectfully Submitted,

Shannon Taylor
Psychology Extern

William J. Ryan, Ph.D.
Psychologist
New York License No: 09238

-7-