RECEIVED
CLERK'S OFFICE

2009 JUL -7  AM 8:39

U.S. DISTRICT COURT
MIDDLE DIST. OF GEORGIA
MACON, GA

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA-MACON DIVISION**

**MALACHI YORK-EL©™,**
misnomer **DWIGHT YORK©™,**

**CASE NO. 5:07-CV-90001-CAR
Article 1 Section 9
Constitutional Habeas Corpus
CASE NO. 5:02-CR-27-CAR**

Noble: Malachi York El:©™

    **Plaintiff**

**V.**

UNITED STATES OF AMERICA, AGENTS/HEIRS,
FEDERAL BUREAU OF PRISONS, U.S. DEPARTMENT OF JUSTICE,
CHARLES ASHLEY ROYAL, EDWARD NOTTINGHAM,
MARCY E. COOK, RON WILEY, CHRIS SYNSVOLL,
KRISTEN MIX, HOWARD RICHARD SILLS, TROY EID,
MICHAEL MUKASEY, JOHN SUTHERS, DAVE GOUETTE,
FREDRICK BRIGHT, RICHARD MOULTRIE, JALAINE WARD,
TRACEY BRADFORD, SALLY HEINTZYSH, MARY MANGRUM,
LISA SPEAKER, JOAN CROANIER, FBI AGENT SAVAGE,
TOM CODY, BOYD N. BOLAND,  AND ZITA L. WEINSHIENK

    **Defendants**



FILED
U.S. DISTRICT COURT
MIDDLE GEORGIA
2009 JUL -7  AM 8:43
DEPUTY CLERK

---

### MOTION TO VACATE SENTENCE DUE TO PROSECUTORIAL MISCONDUCT

---

    Comes now is I, **Malachi York El:**©™ , **A/K/A** H.E. Dr Malachi Z. York-EL©™,

A/K/A Issa Al haadi Al Mahdi, A/K/A Dr. Malachi Kobina York, misnomered DWIGHT D.

YORK et, al.; **All rights reserved**, in honor Secured Party, Liberian Diplomat D/P #003828-04,

Owner in fact, Holder in due course (*Pro Per*) pursuant to *your* **28 USC § 2255** and this

associated Constitutional Habeas Corpus due hereby admit this **Motion To Vacate Sentence** due

to **Prosecutorial Misconduct;**

1

## BACKGROUND

I, Malachi Kobina York, born in Takoradi, Ghana, Liberian Diplomat D/P #003828-04, owner in fact, Holder in due course, **All rights reserved**, Secured Party, was kidnapped and unlawfully detained on the 8th of May, 2002 by officers of the Federal Bureau of Investigations as well as Baldwin County Sheriffs Department Officers, who stormed my vehicle, breaking all the windows in the car, to abduct me violently though there is no information whatsoever to show that I was armed or dangerous; My Maranda rights were never read to me by the "arresting" officers, I was then tortured within the Jones County Jail, in which I was forced to sleep on the floor with rats with no access to my attorney or a Law Library; I then was arraigned and detained and denied bail based on the fact I was a flight risk to my country of Citizenship the Liberian Republic;

For an entire year prior to the start of trial I had no access to my attorneys, no visits with the exception for the one time I was visited in reference to payment by the Garland Firm, a firm that I never hired in the first place; I, then was unlawfully tried and convicted by a jury that was not of **my peers** in violation of **Amendment IV of the United States Constitution**;

## PROSECUTORIAL MISCONDUCT BY COERSION AND THREATS OF GOVERNMENT WITNESSES

I, Malachi Kobina York:©™ due hereby move the court for my **immediate discharge** in the acknowledgement of the violation curtailed against the 4th and 5th Amendment of the United States Constitution in which I have been deprived of life, liberty, and property without due

2

process of law; Whereas the following statements presented by key witnesses of the government explaining in detail the **threats** and **coercion** that forced them to make the statements they made against me; Whereas, I admit the following affidavits (**See Exhibits 13A-H Judicial Notice of Affidavits showing Prosecutorial Misconduct**) as **Adjudicative Facts pursuant to Federal Rules of Evidence Rule 201(b)** as statements and testimonies taken in front of a notary;

In Taariq "David" Noel's, Affidavit of Recantation admitted on and for the Record, pursuant to the Federal Rules of Evidence Rule 201 (b) *and taken under penalties of perjury by a Notary Public within the State of Georgia*, he explains of being threatened by FBI agents- **Joan Cronier, and Richard Moultrie** to perjure himself by making false statements against me, which is found consistent with **8** other testimonies of witnesses under oath.  In David "Taariq" Noels Affidavit, Taariq Noel states the following on his Affidavit;

**(See Exhibit 13A Affidavit of Taariq Noel)**

> "I testified falsely against Malachi York, Kathy Johnson, Chandra Lampkin "Najilaa" and Khadijah Merritt "Mucullah" for several reasons.  The main reason was the threats made against me by FBI agent Joan Croanier and FBI agent Richard Moultrie.  I was told by Joan Croanier that if I denied the allegations that my mother would be incarcerated for fraud."

*Taariq Noel goes on to say....*

> "I didn't know my legal rights and I was told that several individuals involved my name falsely in these allegations.  At that age you don't know that you can disagree with the FBI."

> "The specifics of my testimony come from stories forced on me by FBI agents Joan Croanier and Richard Moultrie.  I felt trapped to go along with the allegations in order to protect my family including my mother Barbara Noel, and my sisters Nicole Lopez and Amanda Noel from threats of being incarcerated."

Taariq Noel also received a letter from Richard Moultrie Jr., Assistant United States Attorney for the Middle District Georgia (**Please See Exhibit 13-B, letter from the United States Attorneys**

office), now admitted as evidence pursuant to the Federal Rules of Evidence 902(1), who has been accused of coercing and threatening several witnesses that testified against me inclusive of Taariq Noel, in which the letter states:

> "Do not show these questions to anyone.  It maybe necessary for you to recommend that some of the questions be changed to  better fit with the facts as you recall them, and that is not a problem.  Before you review the questions, please carefully re-read the statements that you gave to the FBI, and your testimony before the Federal Grand Jury-both of which are also included."

Whereas, the abovementioned  letter shows the intent of the prosecution to construct answers during trial that were centered around manufactured statements by the prosecution that forced Taariq Noel and others to lie on the stand;

In accordance to these facts, in **Hanaan Meritt's** Affidavit of Recantation (**See Exhibit 13-C, Affidavit of Hanaan Meritt**) admitted on and for the Record pursuant to the Federal Rules of Evidence, Rule 201 (b), and taken under penalty of perjury by Notary Public within the State of Georgia, she explains of being threatened by FBI agents to perjure herself by making false statements against, she explains as follows:

> "I, Hanaan Merrit am stating for the record that Dr. Malachi Z. York never molested, raped, or sexually abused me in any way nor did I witness Dr. Malachi Z. York molest, rape or perform sexual activity with anyone."

*She goes onto say ....*

> "I am also affirming that on May 8, 2002, after being interviewed I was stripped away from my family.  Selha Eddington, Husna Evans, Hesna Evans, Issa Johnson, and my self (all minors) were taken by strangers to a small house in Milledgeville, GA without our parents consent"

> " I being intimidated, scared and threatened was interrogated by Federal Agents being told by them that they know I was molested although I denied the allegations, they continued to badger me.  They repeatedly told me that I was molested and covering up for Mr. York alleging that he claimed that he was going to kill me."

In accordance, **Sakinah Woods, (See Exhibit 13-D Affidavit of Sakinah Woods)** also named as an alleged victim on the indictment, affirms and testifies under oath and penalty of perjury on her Affidavit of being threatened by **FBI** agents Jalaine Ward, Sally Heintzysh, and Tracey Bradford to perjure herself by making false statements against me, where she states the following;

> "I, Sakinah Wood did reside on the property at 404 Shadydale Rd. from 1994 til 2004. I have known Dr. Malachi Z. York for most of my life and I am stating for the record that Dr. Malachi Z. York never molested, raped, inappropriately touched me, or abused me sexually in anyway nor did I See nor witness Dr. Malachi Z. York molest, rape or perform any sexual activity with any minors or persons."

> "I am hereby affirming that I was interviewed by FBI agent Jalaine Ward, on May 8, 2002 and also two other agents were present FBI agent Sally Heintzysh, and FBI agent Tracy Bedford."

*She continues as follows....*

> "Jalaine Ward then told me and I quote, "Well Sakinah, you know, you're not saying this now, but sooner or later, it will come out, because Mr. York is never coming out!" Meanwhile, the other agents Sally Heintzysh and Tracey Bradford had their guns in my face."

Whereas, **Samaiyah Jamiylah Ellis (See Exhibit 13-E, Affidavit of Samaiyah Jamiyah Ellis)**, affirms and testifies on and for the Record by way of affidavit that she was removed from school by FBI agents and was threatened to perjure herself by making false statements against me; She states on her affidavit the following;

> "It was May 16, I was at school at my last period and I was called to go to counselling office about an hour before it was time to leave school. I wen to this counselling office to a room with three other people and they stated that they wanted to talk to me. I didn't know what it was about and I went in the room and they told me, this is between them and me, not anybody else and don't tell my mother and anybody else. It's just between us, and they were asking me questions about Dr. York. They asked me if I was ever molested by Dr. York. I told them no. Then one of the females told me they were having papers sent to me in regards if I had said anything to help the situation, what to tell them,

what happened and what they think happened.  I told them it didn't happen and they kept forcing me by saying that if I don't say this then they'll probably put me in jail or they would file a whole bunch of papers against me."

"I affirm that the reason I testified falsely against Malachi York and others aforementioned is because I was told that I had to go along with the stories as everyone else did.  FBI Jalaine Ward told me and I quote, "Other people already came forth and we already know what happened and it's best that you do the same!"

Whereas, this Affidavit is admitted on and for the Record pursuant to Federal Rules of Evidence 201 (b), as **Adjudicative Facts** taken under Oath in the presence of a **Notary Public** in Clayton County Georgia;

In accordance with **Amendments I and IV** of the United States Constitution, these facts constitute new evidence as the prosecutions witnesses recanting their statements and providing further evidence of prosecutorial misconduct in violation of your **18 USC § 371** and **Amendment V** of the United States Constitution, 'Bill of Rights.'

Whereas **Issa Michael Johnson** also named as an alleged victim, who was found to have never been molested, after he and 5 other children were taken from Our Church land on 404 Shady Dale Rd, **which can also be researched under State of Georgia case file #9808708 currently sealed** *(Please See Motion for Mandatory Judicial Notice of New Evidence Pt.1 for futher acknowledgement)*; Whereby,  Issa Michael Johnson was initially a witness on behalf of the United States Government, who actually testified on my behalf, after being threatened and coerced to make false statements against me; Richard Moultrie the United States Assistant Attorney and agent for the Federal Government told him if he made these statements, Richard Moultrie would be able to get Kathy Johnson, his mother, out of prison;  He, *Issa Michael Johnson,* goes onto to state in his Affidavit as follows (**See Exhibit 13-F, Affidavit of Issa Michael Johnson**):

" I , Issa Michael Johnson am stating for the record that Dr. Malachi Z. York never molested, raped, inappropriately touched me, or abused me sexually in any way nor did I see nor witness Dr. Malachi Z. York molest, rape or perform any sexual activity with any minors or persons in Upstate New York, also called Nubia."

"I, Issa Michael Johnson am stating for the record that Dr. Malachi Z. York never molested, raped, inappropriately touched me, or abused me sexually in anyway nor did I see nor witness Dr. Malachi Z. York molest, rape or perform any sexual activity with any minors in Georgia particularly 404 Shady Dale Rd. Eatonton, GA and Athens, Georgia."

*He continued as follows:*

"FBI agent Richard Moultrie then reminded me that my mother Kathy Johnson was incarcerated and if I cooperated and made certain statements and accusations that he could get my mother out of prison and not mention her name in trial.  Richard Moultrie wanted me to exchange false statements for this favor."

*He further states..*

"There were several alleged victims namely Krystal Harden "Beluwra" and Amala Noel sent by Federal agents to get me to falsley testify against Malachi Z. York and Kathy Johnson.  Krystal told me that she couldn't wait to get her money from this trial."
"The day of the trial prior to my testimony FBI agent Jalaine Ward reminded me, and several others of what we needed to say."

*And he continued*

"When I didn't keep up with my end of the deal at the trial of Malachi Z. York and testified honestly, FBI agent Richard Moultrie mentioned my mother's name anyway in his last question to me during trial."

Further, **Radeya Muhammad** who was also named on the indictment as an alleged victim also testified on her Affidavit of Recantation that her statements made to FBI agents were based on the fact she felt under pressure and that she was being coerced by FBI agents to make false statements against me (**See Exhibit 13-G Judicial Notice of Affidavits of Recantation and Witnesses, Radeya Muhammad)**  She states in her affidavit the following;

"I personally feel that the statements attributed to me in the FBI interview of March 25[th], 2002 are not my own words.  There are many, many, inaccuracies.  My relationship with Mr. York was like a father-step daughter relationship."

7

*She went on to say..*

> "They told me that others mentioned my name as being molested by Malachi.  They (FBI) gave me details of what others allegedly said and I was told by everyone to admit to it and go along."

> "I felt pressured and coerced into cooperating with the F.B.I. I figured that if I didn't cooperate, that I would be going to jail."

Let the courts take **Judicial Notice**, this is further evidence of misconduct by the Department of Justice in this case that should be recognized and submitted under contract law;

In accordance, Let the courts take Judicial Notice of the below listed facts, as follows;

**Abdus Salaam Laroche "Shelomoh Eddington"**, referred to as **"Shilamoh"** on pg 1317

**(See Exhibit 13-H Affidavit of Abdus Salaam Laroche "Shilamoh")** of Transcripts C who also testified on his Affidavit of Recantation, on and for the Record, that he was coerced by Jalaine Ward in his affidavit, taken under oath and penalty of perjury, to perjure himself by making false statements against me, as he states the following:

> "I affirm that the reason I testified falsely against Malachi York and others aforementioned is because I was told that I had to go along with the stories as everyone else did.  FBI Jalaine Ward told me and I quote, "Other people already came forth and we already know what happened and it's best that you do the same!"

## MISLEADING AND FALSE TESTIMONY OF FBI LEAD INVESTIGATOR JALAINE WARD

There was never any proof of any pornographic tapes of me having sex with any minors which was alleged to have been evidenced against me, the prosecution used these allegations without any tangible proof to further taint the jury; Whereas Attorney Adrian Patrick questioned

FBI Agent Jalaine Ward in reference to these alleged tapes on pg. 2421 of the Transcripts line 12 which states:

> "**Adrian Patrick:** Do you recall stating I your affidavit that there were several pornographic tapes, some involving children and adults having sex?
>
> **Jalaine Ward:** That I said –
>
> **Mr. Wood:** Your Honor –
>
> **Mr. Patrick:** I said "did she recall making that statement."
>
> **Jalaine Ward:** Did I say that?
>
> **Mr. Patrick:** Yes
>
> **Jalaine Ward:** No.  I mean there was probable cause to believe that there may be child pornography on the land in York's possession, but, you know, I don't know that it had any – **I didn't have any, you know, evidence of that at the time, any specifics that it was there.**
>
> **Mr. Patrick:** So you didn't have any evidence that there was child pornography on the land?
>
> **Jalaine Ward:** We had probable cause that there may be child pornography on he land.
>
> **Mr. Patrick:**  You also had evidence that at times children had pictures taken of them with the defendant, by themselves, nude, things like that; correct?
>
> **Jalaine Ward:** No.

## PROSECUTIONS USAGE OF IMPROPER TECHNIQUES TO GENERATE FALSE AND UNRELIABLE TESTIMONIES

As evidence of the fact that these witnesses for the United States of America were threatened and coerced, none of the interviews of any of the witnesses, minors, or adults were recorded or videotaped, as not to show the tactics used to convince these witnesses to perjure themselves in court, by falsely testifying against me. This was recorded in the Transcripts on pg. 2423 line 7 as follows"

Mr. Patrick: You did not videotape or audiotape any interview, correct;

Jalaine Ward: No, I did not

Under the first count of the United States of America's superseding indictment it states:

"From in or about January 1988, and continuing through May 8[th], in the Middle District of Georgia and elsewhere within the jurisdiction of this court, the Defendant DWIGHT D. YORK, a/k/a DR. MALACHI Z. YORK, a/k/a ISA MUHAMMAD, a/k/a ISA AL HAADI AL MAHDI and a/k/a "BABA" (hereinafter referred in as "DWIGHT YORK") being a person employed by and associated with an enterprise described in Paragraph A below, which was engaged, in and the activities of which affected, interstate commerce, did knowingly and willfully combine, conspire, confederate and agree, and have tacit understanding with unindicted co-conspirators and others, known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of affairs of the enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and (5)

(1) Transporting minors in interstate commerce for purposes of engaging in unlawful sexual activity, which is indictable under Title 18 United States Code, Section 2423 (a), and which is defined as knowingly transporting and causing to be transported individuals who had not attained the age of eighteen years, in interstate commerce, with the intent that such minors engage in unlawful sexual activity for which a person can be charged with a criminal offense, including, but not limited to, violations of Georgia Code Sections 16-6-4 and 16-6-5, the individuals not having yet reached the age of twenty five years in accordance with Title 18, United States Code, Section 3283,"

There is no evidence, either by video or audio surveillance that I have ever been involved in a act, or acts that violate Title 18 United States Code, Section 1962 (c), or Title 18 United States Code, Section 2423 (a),  within the alleged 14 years that I was under surveillance by the Federal Bureau of Investigations, also in Jalaine Wards testimony under oath and penalty of perjury in the Arraignment and Detention hearing, Jalaine Ward testifies that she had no evidence whatsoever to say that I had committed the alleged acts, nor did she have any witnesses in which Jalaine Ward was asked specifically by Attorney Adrian Patrick in the Transcripts on Pg. 2425 Line 12:

"**Mr. Patrick**: I'm just asking, do you know how long he was under surveillance?

Jalaine Ward: Approximately a month prior to the search.

**Mr. Patrick**: And there were no sex acts with minors recorded during surveillance; correct?

**Jalaine Ward:** No.

**Mr. Patrick:** Now, the defendant has been charged with transporting minors in interstate commerce for sexual purposes; correct?

**Jalaine Ward:** Yes

Mr. Patrick: And that's in several counts of the indictment; correct?

**Jalaine Ward:** Yes, it is.

**Mr. Patrick:** And, basically, he's charged with transporting minors with the intent to have sex with them; correct?

**Jalaine Ward:** Yes.

Attorney Adrian Patrick goes onto to have Jalaine Ward read from her May 9th, 2002 testimony under oath at the Arraignment and Detention hearing further showing that they did not at the onset of this investigation have corroborating victims or witnesses until they subjected the alleged victims and witnesses to threats, and suggestive and coercive interviewing techniques.

"**Mr. Patrick:** Read from "all right" down for us.  Okay?

**Jalaine Ward:** "Now in connection with the travel for the purpose of having sex with a minor, do you have a witness who says that the purpose in the travel was to have the children have sex?

The witness -- my answer is, "The witness that says that?"

And the question, "Yes."

And then my answer is, "No."

"You have no witnesses that says that?"

"Not that says that, no."

So, right.

**Mr. Patrick:** Alright.  And you didn't say anything about Habiybah Washington at that time; correct?

**Jalaine Ward:** No.

**Mr. Patrick:** All right.  And this is a sworn --

Jalaine Ward: She would be the witness that comes to mind.

**Mr. Patrick:** And this is sworn testimony May 9th, 2002; correct? Correct?

**Jalaine Ward:** Yes. Yes.

**Mr. Patrick:** Okay

Agent Jalaine Ward also acted negligently without regard to required State Model Child Abuse Protocol **pursuant to Georgia Code Section 19-15-2**.  The following testimony in the Arraignment and Detention hearing that took place·on the 9th of May 2002, Agent Jalaine Ward acted in her own best interest and not that of the alleged victims. Agent Ward failed to utilize video/audio devices while interviewing multiple alleged sex crime victims and witnesses . Agent Jalaine Ward neglected to preserve the integrity and credibilty of the alleged victim's statements by means of proper video/audio recordings, Agent Jaliane Ward was made to recall information from over what was claimed to be 30-35 alleged victims and witnesses' statements that she allegedly personally interviewed.  During the arraignment hearing that took place on May 9th, 2002 & May 13-14, 2002 in the United States District Court for the Middle District of Georgia (Macon Division) Jalaine Ward was questioned by Attorney Ed Garland as follows Transcripts Pg 64 Line 23:

"**Q.** You indicated in your direct examination that you had information about 30 to 35 victims; is this correct?

**A.**  Yes "

There is no evidence that supports Jalaine Ward statements, they should have been available to testify at trial and be confronted by myself pursuant to Amendment IV of the United States Constitution. (SEE *Crawford v. Washington) (Woodard v. State, 269 Ga. 317, 496 S.E.2d 896 (1998). (6th Amendment Right to confront your accuser.).* Jailaine Ward was further questioned by Ed Garland as follows:

   **"Q.** And how many victims have been interviewed by law enforcement?

   **A.** Approximately 16 to 18. "

In this statement Agent Jalaine Ward said "16-18 victims were interviewed by local law enforcement", but were not interviewed by FBI investigators. However none of the interviews were recorded so this would mean that the alleged victim's statements would have to be relayed by word of mouth or the children would have to be re-interviewed, which traumatized the children and compromised the integrity and credibility of their statements in violation of O.C.G.A. §24-3-16, 24-9-5. The interview of Jalaine Ward by Attorney Ed Garland continues as follows:

   **"Q.** How many have you interviewed?

   **A.** Most of them."

Agent Jalaine Ward does not give an exact number of how many alleged victims she interviewed, my Due Process was not ensured, there is no evidence that all the interviews were conducted in accordance with State and Federal guidelines. The interview of Jalaine Ward by Attorney Ed Garland continues as follows:

   **"Q.** All right. Now, what training have you had in dealing with molestation victims yourself, what personal training have you had?

   **A.** I've had in-service training through the FBI and have worked several cases involving

children."

FBI training includes proper protocol on interviewing child abuse victims. Kenneth Lanning former FBI Agent and expert witness in the my case offered valuable information pertaining to child abuse investigations in a document entitled (Child Sexual Exploitation: Improving Investigations and Protecting Victims), A Blueprint for Action, Education Development Center, Inc. Massachusetts Child Exploitation Network. January, 1995. Cooperative Agreement No. 93-MU-K005 states "the importance of conducting proper interviews, protecting the victim, and preserving the integrity of the interview and investigation". A multidisciplinary approach to child sexual abuse has been adopted in communities nationwide, and in fact is statutorily mandated or authorized in 31 States. Agent Jalaine Ward states "she worked several cases involving children" in the above document it suggest that the investigator should be experienced with a certain degree of expertise in reference to child abuse investigations, clearly Agent Ward lacks the experience and expertise as evidenced by her response of having investigated <u>only several cases involving children.</u> **Definition of SEVERAL according to Merriam-Webster's Online Dictionary:** an indefinite number more than two and fewer than many. Attorney Ed Garland continues his interview with Jalaine Ward as follows:

> **"Q.** Now, what steps did you take to ensure that the interview process with the people you interviewed had not been influenced by suggestive processes?
>
> **A.** Just conducted a good interview and let them tell their story.

There is no audio/video evidence of the alleged victims to avoid the Court from having knowledge of the coercive tactics, threats, and promised concessions for the witnesses cooperation in the investigation as outlined in the countless Affidavits done by Government witnesses entered in and on this motion for the Record. Agent Jalaine Ward did not follow

15

proper protocol which renders her actions negligent and criminal pursuant to Title 18 of the

United States Codes Sections 4, and 371, and Title 42 of the United States Codes Section 1986.

"**Q.** Now, at the time you conducted the interview, did you tape the interview?

**A.** No, Sir."

Agent Jalaine Ward admits on record that she did not utilize the protocols as outlined in her

training.  Agent Jalaine Ward's blatant disregard for proper procedures further substantiates my

claim of misconduct by the investigators and prosecution and also confirms the Affidavits done

by the Government Witnesses entered on and for the Record in this motion.  In Jalaine Ward's

testimony she stated "that she interviewed most of the alleged victims", which would have been

in the figure of 14-17 since she stated "there was 30-35 victims", of which 16-18 were

interviewed by local law enforcement. If in fact Agent Ward forgot to utilize recording devices

to conduct the interviews she had 14-17 times to correct her mistakes, but she insisted on

interviewing alleged sex crime victims without the use of such devices.  Jalaine Ward continues

to be interviewed by Attorney Ed Garland as follows Transcripts Pg 65 Line 18:

"**Q.** At the time you conducted the interviews, did you do so alone or in the presence of --

did you do so in the presence of another FBI agent?

**A.** Yes

Agent Jalaine Ward states 'that she did conduct the interviews in the presence of another

FBI Agent here and then goes on to say on Pg 66 Line 2:

"**Q.** So you interviewed them alone?

**A.** Yes."

Agent Jalaine Ward has just lied in her testimony first saying she conducted her interviews in the

presence of another FBI Agent, and then saying she conducted her interviews alone further

proving her unreliability as an Investigator and her relentlessness to violate her oath of office and

Amendment IV and V of the United States Constitution   Furthermore Jalaine Wards

inconsistencies in her testimony and blatant disregard for the law in this manner further

substantiates the facts presented by the Government Witness Affidavits admitted in this motion

explaining the threats and coercions on the part of Agent Jalaine Ward.  The interview of Jalaine

Ward by Attorney Ed Garland continues as follows:

> **"Q.** Now, have you had any training in the child abuse protocols being utilized
> throughout the State of Georgia by the Department of Family and Children Services as a
> prerequisite to ensuring accuracy and uninfluenced interviews of child abuse victims? Do
> you have knowledge of those protocols?
> **A.** I'm aware of those protocols.

Agent Jalaine Ward admits that she is aware of The Georgia Child Abuse Protocols and admits

her negligence in violation of Title 42 of the United States Codes Section 1986.

The interview with Jalaine Ward by Attorney Ed Garland continues as follows:

> **"Q.** Have you read them?
>
> **A.** I'm aware of them. I don't know that I've read specific protocols, but I am aware of
> them."
>
> **Q.** You're aware how?
>
> **A.** From reading material
>
> **Q.** Well, how are you aware of them?
>
> **A.** Because I have a lot of material in my possession about child abuse investigations in
> general. I'm not familiar with necessarily a Georgia protocol versus a Florida protocol,
> etcetera, but I am familiar with an interview, forensic interview specialist protocol of
> videotaping the interview."

As you can see from Agent Jalaine Ward's testimony there is no major difference in child abuse

protocols utilized from state to state in its relation to forensic interviewing, therefore she

blatantly violated the law, and protocol.  The interview with Jalaine Ward by Attorney Ed

Garland continues as follows:

> **"Q.** What caution or care do you take in connection with the interview of a child abuse victim and in particular a minor child? What cautionary steps are you to take under any of the protocols that you say you are aware of?
>
> **A.** Well, the -- to make sure that the child is, you know not traumatized, or not , you know, family traumatized at the time, and to let the child tell their story and not ask leading questions, and, you know, I mean, I don't know the specific elements that you're asking of. I'm just familiar with that protocol that they videotape the interview.

Agent Jalaine Ward again admits to her negligence in being very specific about the protocol, but

neglecting to utilize them. Agent Ward clearly and concisely admits her knowledge of the

protocol pertaining to videotaping interviews that she knowingly violated. The interview with

Jalaine Ward by Attorney Ed Garland continues as follows:

> **"Q.** Can you recall anything else that an interviewing person should do or any care that should be taken to ensure that the report has been free from outside influence? Can you recall any other procedures that are represented by child--?
>
> **A.** If you're asking if they recommended that they video tape them or whatever, I'm familiar with that, and there's as many cons to that policy as there are pros, and in this situation the interview was conducted very professionally as any other interview that I try to participate in"

It is evident that Agent Ward is can in no way justify her actions by not videotaping the

interviews  Agent Jalaine Ward references the pros and cons of videotaping interviews, but

offers no valid information or references as to why she elected not to record the interviews.

Agent Jalaine Ward further goes on to say the interviews were conducted professionally, the lack

of the utilization of recording devices further substantiates the testimony made by the

Government Witnesses by Affidavit that have been entered in with this motion as evidence.  The

interview with Jalaine Ward by Attorney Ed Garland continues as follows:

> **"Q.** So you made a determination not to tape these interviews?

A. That's right."

Agent Ward is unable to provide an adequate reason as to why she did not record the interviews.

The interview with Jalaine Ward by Attorney Ed Garland continues as follows:

"Q. After evaluating the pro and cons?

A. That's correct"

Agent Jalaine Ward speculates with no factual basis, that after evaluating the pros and cons it

was her professional determination to dismiss the utilization of recording devices.

"Q. And are you familiar with that there's a large body of knowledge that recommends

such interviews be taped?

A. Actually there's just as large a body of knowledge that is opposed to it, and some of

the experts that I was trained by are opposed to it.

Agent Jalaine Ward attempts to discredit the utilization of recording interviews without any

justifiable alternative to the forensic process. In a complex case such as this one with multiple

victims and witnesses it would factually be to the benefit of the investigator to record the

interviews.  Her actions also violated Amendment V of the United States Constitution by not

preserving the integrity of the interview and further proving the Affidavits made by the

Government Witnesses' Testimony, admitted as evidence with this motion, to be fact.

In an article in the Michigan Bar Journal October 2008 titled (Interviewing Children) by

Terence W. Campbell it states "In 1998, the Governor's Task Force on Children's Justice and the

Family Independence Agency published its ''Forensic Interviewing Protocol.'' The protocols

introduction states, ''In recent years, there has been increasing criticism directed at the type of

interviews conducted by professionals involved in the investigation of child physical abuse and

child sexual abuse. The criticism hinges on the use of poor interviewing techniques that could be

cause for implanting memories in a child or result in adults not listening to or learning the child's disclosure of actual abuse." This protocol, however, does not mandate videotaping investigative interviews in cases of alleged abuse. As a result, the professionals who interview children frequently offer hearsay testimony regarding a child's statements".

A 1999 study conducted by A. R. and C. E. Woodall, published in *Psychology, Public Policy and Law,* examined how accurately 27 experienced interviewers recalled details obtained from interviewing children between the ages of three and five. These interviewers had accumulated an average of 10.9 years experience in forensic and child protection work. More than half of them had earned masters degrees, 30 percent held bachelor's degrees, and one had a doctoral degree. The interviewers undertook videotaped interviews of children who had witnessed two events one month earlier: a magic show and a "silly doctor" visit. The interviewers received one of the following cue questions for beginning their interviews: "I understand that a magician came to visit your school. Tell me what the magician did." or "Tell me about the time you went with Traci to play silly doctor." After the interviewers conducted their videotaped questioning of the children, the researcher's audio taped debriefing sessions with the interviewers. The researchers found that compared to videotaped interviews, the hearsay reports the interviewers consistently involved information loss. Warren and Woodall wrote: "We asked interviewers if they recalled anything the children said in the child's exact words.' Very few were able to give even a 2- or 3-word phrase using the child's exact words." They summarized their findings, stating: "in summary, our results suggest that hearsay testimony of children's interviewers is degraded. Even immediately after an interview, important content was omitted by hearsay accounts, and the majority of the verbatim (specific wording and content questions and answers) was lost. Our results also suggest that interviewers are unlikely be able to

accurately reconstruct verbatim information later.'' The interview by Ed Garland of Jalaine

Ward continued as follows:

> **Q.** All right, now, prior to these interviews, had these children been interviewed by other people about the alleged sexual abuse?
>
> **A.** When you say other people, are you -- law enforcement? I mean, I think they disclosed to family members and somewhat to each other. Or I don't know even know if they did to each other, but to family members. But they were first interviewed by us."

Agent Jalaine Ward further solidifies the Video Recorded Recantation of Habiba Washington in

which Habiba Washington testifies on how she was told to corroborate her stories with the other

Government witnesses and FBI agents had the alleged victims rehearsing their stories until their

stories matched. The interview by Ed Garland of Jalaine Ward continued as follows:

> **Q.** Not by local law enforcement -- when you say "us" you're talking about FBI?
>
> **A.** I'm sorry. FBI, and there was a state investigator involved in some of the interviews, but typically it was with an FBI agent."

> **Q.** All right, and who was the state investigator?
>
> **A.** Tracey Bowen"

Tracey Bowen is the investigator who is responsible for utilizing the Georgia Child Abuse

Protocols, in fact she is the one designated and trained in child abuse investigations in Putnam

County Georgia, Tracey Bowen it is clearly evident that both agencies neglected to use valuable

tools that would have aided in the integrity and credibility of the interviews as well as avoided

the tactics of Coercion and threats to get the manufactured testimony to unlwafully indict,

convict, and sentence me. The interview by Ed Garland of Jalaine Ward continued as follows:

> **Q.** And what agency is she a member of?
>
> **A.** Putnam County Sheriff's Department."

Putnam County is aware of the protocols, they have annual meeting to go over updates and revisions, therefore Tracey Bowen violated **pursuant to Georgia Code Section 19-15-2**.

"**Q.** All right. Was there anyone from DFACS?

**A.** No, sir. No, sir"

DFACS should have been a part of this investigation to determine if probable cause existed pursuant to Amendment IV and Amendment V of the United States Constitution, by virtue the fact that DFACS was excluded from the investigation the welfare of the children was compromised, further substantiating the testimonies made in the Affidavits of Recantation of the Prosecutions witnesses.  The interview continued as follows:

"**Q.** Were the children taken to DFACS?

**A.** No, sir"

These children were also allowed to stay in a dangerous situation without anyone advocating for their well being.

Based on the above testimony in reference to Jalaine Ward's initial testimony, Jalaine Ward admits that she conducted most of the interviews without the assistance of recording devices, she would in fact have to write the alleged victims statement and then have to re-interview the subject several times to make sure information was correct, she violated standard protocol, and did not involve DFACS in the investigation, and in doing so she subjected the alleged victims to unnecessary trauma.  Initially Jalaine Ward relied on notes and statements that she wrote for the alleged victims after many highly suggestive and coercive interviews making her reports and testimony inaccurate, incomplete, and inadmissible as stated in the Affidavits admitted in this Motion To Vacate Sentence Due To Prosecutorial Misconduct.

Thus, the reports and testimony provided at trial made it very clear that the prosecution not only relentlessly pursued the alleged victims until they echoed what the interviewers wanted to hear, but that the interviewers falsely attributed to the alleged victims spontaneous statements that could only have been the result of insistent direction. The result was the generation of accusations against Petitioner that was manufacturd and false. Whereas, the prosecution had no witnesses or evidence to these alleged acts, until as stated in the Affidavits admitted into this Court, these witnesses were threatened and coerced to make these statements, Whereas in the on start of this case Jalaine Ward had no evidence or witnesses to corroborate her claims, Whereas based on the law she did not have probable cause in violation of Amendment IV of the United States Constitution as well as Title 18 of the United States Codes Section 4, Misprision of a Felony, Whereas through the prosecutions tacit agreement and understanding by their non-response to my initial response to the Magistrate Judge G. Mallon Faircloth's Report and Recommendation the Prosecution has admitted to these acts, which would include, Jalaine Ward, Robert Moultrie, Stephanie Thacker, Sheriff Howard Richard Sills, Maxwell Wood, Sally Heintzysh, Tracey Bradford and Joan Cronier are guilty of Violating the United States Constitution and their Oath of Office to uphold the same.  They have in essence agreed through their tacit agreement and understanding of conspiring against me in violation of Title 18 of the United States Codes Section 371 and Title 42 of the United States Codes Sections 1985, and 1986.

Whereas, these Affidavits admitted pursuant to the Federal Rules of Evidence 201(b) as Adjudicative Facts, backing this Constitutional Habeas Corpus, with NEW EVIDENCE that I am being held unlawfully pursuant to the Amendment VI and Amendment V of the United States Constitution;

Whereas, I quest the court to rectify the prejudiced sentencing, pursuant to your Oath of Office, and Bond, which I have Accepted for Value on and for the Record, to correct any further contraversion of the facts which cannot be tried pursuant to **Amendment VII** of the Constitution which states:

> "and no fact tried by a jury, shall be otherwise reexamined in any court of the United States, than according to the rules of the common law."

Whereas, the court's performance of prosecutorial misconduct has violated the **Amendment V** of the United States Constitution 'Bill of Rights' and has and continues in its attempts to deprive me of life, liberty, and property without due process. Equality under the law is mandatory and Paramount.

## RELIEF REQUESTED

**WHEREFORE**, I pray this Honorable Court:

1. Grant this Motion for Relief pursuant to **28 U.S.C. § 2255**, and order that my sentence be Vacated based on the **New Evidence** admitted into this Court;

2. Grant an Evidentiary Hearing based on the Recantations admitted in this Motion for furtherance in knowledge of the charges being invalid against me for my immediate discharge;

   **Respectfully,**

Malachi York

Authorized Representative

Nonresident/ Non-Domestic

First Class, Delivery

c/o P.O. Box 181398

Denver, Colorado

Near  [80218]

c/o: Public Officers Union
P.O. Box 391182
Snellville, Georgia
Near [30039]

# JUDICIAL NOTICE OF OF LETTER FROM UNITED STATES ATTORNEY ROBERT MOULTRIE JR.

# EXHIBITS
# 13-A



# AFFIDAVIT OF SAMAIYAH JAMIYLAH ELLIS

STATE OF GEORGIA
COUNTY OF CLARKE

SAMAIYAH JAMIYLAH ELLIS, duly sworn, deposes and says:

1.     My name is Samaiyah Jamiylah Ellis. I am 18 years of age and reside in Athens, Georgia. I make this affidavit of my own free will. No one has threatened or coerced me to make it. Nor have I been offered anything of value in return for making this affidavit. I am prepared to make this affidavit in order to tell the truth and let it be known.

2.     It was May 16, I was at school at my last period and I was called to go to counseling office about an hour before it was time to leave school. I went to the counseling office to a room with three other people and they stated that they wanted to talk to me. I didn't know what it was about and I went in the room and they told me, this is between them and me, not anybody else and don't tell my mother and anybody else. It's just between us, and they were asking me questions about Dr. York. They asked me if I was ever molested by Dr. York. I told them no. Then one of the females told me they were having papers sent to me in regards if I had said anything to help the situation, what to tell them, what happened and what they think happened. I told them it didn't happen and they kept forcing me by saying that if I don't say this then they'll probably put me in jail or they would file a whole bunch of papers against me.

3.     So they kept me in the room for too long and I wanted to leave because I was scared. I told them what they wanted to hear because I was very afraid of the part when the lady was telling me about going to jail. So I told them what they wanted to hear because I felt that I would go to jail if I didn't go along with what they were saying. I missed my bus ride home, so they told me that they could drop me off. Then they said they really couldn't do that so they would drop me off somewhere close to my house because they couldn't be seen with me.

4.     I came home and I told my mother they put fear in me and I told them what they wanted to hear. I was afraid and I wanted to hurry up and get out of there and the next day I felt bad about it and I called Ms. Franklin and I told her it's a conspiracy, that none of this happened then I felt bad and I told her he didn't deserve none of this because Dr. Malachi, he's a good person and he didn't do anything to me, nothing happened to anybody and he has love for everybody, and he's a good man. So I felt bad that's why I called her.

5.     I received constant phone calls and visits from many of them who had been angry with Dr. York for having all of us leave the land for many mischievous things we did. I didn't know that the conversations with Habiba Washington, Safa'a LaRoche, Krystal Harden, etc. would lead up to the arrest of Dr. York.

6.      I understand that I am named as an alleged victim and witness in several counts of the State and Federal Cases against Dr. York.

7.      I was never called by the prosecution to testify in court against Dr. York. I was never given a subpoena to come to court to testify against Dr. York.

8.      I want to state again that I was never molested by Malachi York.  I never witnessed Malachi York molesting anyone.  I do not know of anyone he has ever molested.  I do not know of any children he has ever had sex with.  This includes Krystal ~~Hasson, Amata Noel, Radeya Herbert, Qofe's LaRoche, Salha Eddington, Huena and~~ Hasna Evans.  I do not believe that Malachi York should be in prison for crimes he did not commit.  I want the truth to be known.


Sworn before me
~~April 23, 2004~~ April 25 2004

_Samaiyah Ellis_
Samaiyah Jamiylah Ellis

NOTARY PUBLIC

Notary Public, Barrow County, Georgia
My Commission Expires Oct 2 2005

2

# EXHIBITS
# 13-F

## AFFIDAVIT OF ISSA MICHAEL JOHNSON

FULTON COUNTY

I, ISSA MICHAEL JOHNSON, being first duly sworn and being competent to testify and having personal knowledge of the facts herein, states as following:

1. My name is Issa Michael Johnson. I was born September 11, 1988. I make this affidavit of my own free will. No one has threatened or coerced me to make it. Nor have I been offered anything of value in return for making this affidavit. I am prepared to make this affidavit in order to tell the truth and let it be known.

2. I, Issa Michael Johnson am stating for the record that Dr. Malachi Z. York never molested, raped, inappropriately touched me, or abused me sexually in any way nor did I see nor witness Dr. Malachi Z. York molest, rape or perform any sexual activity with any minors or persons in Upstate New York, also called Nubia.

3. I, Issa Michael Johnson am stating for the record that Dr. Malachi Z. York never molested, raped, inappropriately touched me, or abused me sexually in any way nor did I see nor witness Dr. Malachi Z. York molest, rape or perform any sexual activity with any minors or persons in Georgia particularly 404 Shady Dale Rd. Eatonton, GA and Athens, Georgia.

4. I am affirming that in June of 2003, I was in the custody of DEFACS (Department of Family and Children Services) under the care of Ms. Eileen Burke. I was picked up from school by Jana Wydell and I asked where we were going and she replied, "You have a visit with Richard Moultrie." I told her repeatedly that I did not want to see him. I was told that it's not up to me.

5. I told FBI agent Richard Moultrie that I did not want to talk to him. That I was not molested by Mr. York or anyone else. He said that I need to make these statements.

6. FBI agent Richard Moultrie then reminded me that my mother Kathy Johnson was incarcerated and if I cooperated and made certain statements and accusations that he could get my mother out of prison and not mention her name in trial. Richard Moultrie wanted me to exchange false statements for this favor.

7. I considered lying and telling them what they wanted to hear to help my mother. Even though I felt compelled to go along with the stories I repeatedly said I was never molested.

8. There were several alleged victims namely Krystal Harden "Beluwra" and Amala Noel sent by Federal agents to get me to falsely testify against Malachi Z. York and Kathy Johnson. Krystal told me that she couldn't wait to get her money from this trial.

9. The day of the trial prior to my testimony FBI agent Jalaine Ward reminded me and several others of what we needed to say. Jalaine Ward told us not to mention the previous guilty plea taken by Malachi Z. York. She made sure that we remembered all the stories given to us by the Federal agents.

10. When I didn't keep up with my end of the deal at the trial of Malachi Z. York and testified honestly, FBI agent Richard Moultrie mentioned my mother's name anyway in his last question to me during trial. He asked, "Your mother is Kathy Johnson, right? No further questions your honor."

11. After the trial the government punished me in various ways. They locked me down in a DEFACs facility and took away all privileges including phone, visits with friends and after school activities. Staff members became upset with me and treated me harshly.

12. The reason that I make this affidavit is because I know that it was not right for the Federal agents to coerce, threaten, intimidate or exchange favors for false testimony against any individual who by right should have a fair trial.


Signed _____Michael Johnson_____

Print _____Michael Johnson_____


I HEREBY CERTIFY that on this 12ᵗʰ day of June , 2007, before me, the subscriber, a Notary Public in and for the State and County aforesaid, personally appeared

_____Michael Johnson_____ , known to me, or satisfactorily proven, to be the person whose name is subscribe to the within instrument and did acknowledge that executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and seal the day and year aforesaid.


Notary Public


My Commission Expires:
ELAINE A. BOLSTON
NOTARY PUBLIC, CLAYTON COUNTY, GEORGIA
MY COMMISSION EXPIRES SEPT. 30, 2007

# EXHIBITS
# 13-G

## AFFIDAVIT OF RADEYA MUHAMMAD

STATE OF GEORGIA
COUNTY OF FULTON

I, RADEYA MUHAMMAD, being first duly sworn and being competent to testify and having personal knowledge of the facts herein, states as follows:

1.    My name is Radeya Muhammad. I am 22 years of age and reside in Orlando Florida. I make this affidavit of my own free will. No one has threatened or coerced me to make it. Nor have I been offered anything of value in return for making this affidavit. I am prepared to make this affidavit in order to tell the truth and let it be known.

2.    On March 25, 2002 I was taken by my father to the FBI Office in Orlando, Florida and was questioned by FBI agent Savage. My father, Hamdha A. Muhammad was present and did most of the initial talking. I was 17 years old at the time.

3.    Prior to meeting with the F.B.I. my father had been in contact with Sheriff Sills for years in relationship to his visitation efforts to see me. It is alleged that my father could not enter the land. My father did not agree with me and my mother moving in and living on the land (404 Shady Dale Road, Eatonton GA). The dispute between my mother, Haroline Herbert and my father was the reason my father was not allowed to visit.

4.    I was told that I was important to the case against Malachi York because Habibah Washington had told the FBI about me. I was asked questions about Malachi York and my involvement with Nuwaubians.

5.    My father, Hamdha A. Muhammad filed a Civil Suit in Clark County Georgia against Malachi Z. York one month after the arrest of Mr. York. This civil suit has since been dismissed.

6.    I was told by the agent that they knew what had happened on the land and what happened to me. They lied to me and told me that Malachi York was already arrested and my statements would not make a difference and I was scared so I went along to just get it over with.

7.    I personally feel that statements attributed to me in the F.B.I interview of March 25, 2002 are not my words. There are many, many, inaccuracies. My relationship with Mr. York was like a father- step daughter relationship.

1

8.   They told me that others mentioned my name as being molested by Malachi. They (FBI) gave me details of what others allegedly said and I was told by everyone to admit to it and go along.

9.   I felt pressured and coerced into cooperating with the F.B.I.  I figured that if I didn't cooperate, that I would be going to jail.

10.   I was subpoenaed to testify, and did testify before the grand jury of the State of Georgia out of fear and previous intimidation by detectives and FBI agents during interviews.

11.   I never had sexual relations or sexual activity with Malachi York  I never witnessed Malachi York having sexual activity with anyone.  I do not know of anyone he has ever molested. I do not know of any minors he has ever had sex with.  This includes Krystal Harden, Amala Noel, Samaiyah Ellis, Safa'a LaRoche, Saiba Eddington, Husna, and Hasna Evans.

I HEREBY CERTIFY that on this 20 day of May , 2007, before me, the subscriber, a Notary Public in and for the State and County aforesaid, personally appeared Radwy Muhammad, known to me, or satisfactorily proven, to be the person whose name is subscribed to the within instrument and did acknowledge that executed the same for the purposes therein contained.

        IN WITNESS WHEREOF, I have hereunto set my hand and seal the day and year aforesaid.

_(signature)_

My Commission Expires.

Notary Public _____

_(signature)_

STEVEN GRIFFETH
NOTARY PUBLIC DEKALB COUNTY, GA
MY COMMISSION EXPIRES APRIL 18, 2008

2

# EXHIBITS
# 13-H

## AFFIDAVIT OF ABDUS SALAAM LAROCHE

Fulton County

I, ABDUS SALAAM LAROCHE, being first duly sworn and being competent to testify and having personal knowledge of the facts herein, states as following:

1. My name is Abdus Salaam LaRoche. I was born March 20, 1984. I make this affidavit of my own free will. No one has threatened or coerced me to make it. Nor have I been offered anything of value in return for making this affidavit. I am prepared to make this affidavit in order to tell the truth and let it be known.

2. I am hereby affirming that the majority of my testimony at the Federal criminal trial of Dwight York (Malachi York) was false, specifically in the area of my personal sexual activity. I am also stating that I did not engage in any type of sexual activity with Mr. York including oral sex or anal sex. Nor did I witness Mr. York engage in sexual activity or any inappropriate sexual behavior with any minors or adults.

3. I deny that Khadijah "Macullah" Merrit performed any oral sex on me in the presence of Mr. York when I was about 13, nor did I witness any sexual activity between Mr. York and Khadijah "Macullah" Merrit in Eatonton, Georgia.

4. I deny that Mr. York performed anal sex on me at any time. I also deny any sexual relations between myself and Khadijah Merrit in the presence of Mr. York at any time.

5. I deny having or witnessing any sexual relationships with Mr. York involving the people I named at trail including Issa Johnson, and Khadijah Merrit on 404 Shady Dale Rd in Eatonton, Georgia.

6. I deny having any sexual activity with Mr. York inclusive of all inappropriate acts including anal sex or oral sex in Athens nor with any of the people that I named in my testimony including Krystal Harden, Khadijah Merrit and Nicole Harden "Husna".

7. I affirm that the reason I testified falsely against Malachi York and others aforementioned is because I was told that I had to go along with the stories as everyone else did. FBI Jalaine Ward told me and I quote, "Other people already came forth and we already know what happened and it's best that you do the same!"

8. At this point I felt alone and scared and went along with the stories FBI Jalaine Ward gave me even though I repeatedly stated that I was never molested or sexually abused by Mr. York or anyone.

9. I was pressured by FBI agent Jalaine Ward who then told me that I would be okay if I just cooperate with stories of molestation that I had no knowledge of.

10. I also affirm that I had several interviews with FBI agent Richard Moultrie to make sure my stories matched with others.

11. I am coming forth now to put the truth on record. I am no longer afraid of hiding the truth behind the conspiracy of Malachi York. I felt that I was wrong in attesting to these false allegations and I go on record stating that I never saw any type of child molestation involving Malachi York.


Signed _____

Print _____

I HEREBY CERTIFY that on this 21st day of _November_, 2008, before me, the subscriber, a Notary Public in and for the State and County aforesaid, personally appeared

_Salaamlaroche, Abdus_, known to me, or satisfactorily proven, to be the person whose name is subscribe to the within instrument and did acknowledge that executed the same for the purposes therein contained.

     IN WITNESS WHEREOF, I have hereunto set my hand and seal the day and year aforesaid.


                             Notary Public


My Commission Expires:

Certified signature only - dglee

Delette B. Lee
Notary Public
Fulton County, Georgia
My Commission Expires November 19, 2011



# U.S. Department of Justice

**United States Attorney**
**Middle District of Georgia**

_____

Post Office Box 1702                          478-752-3511
Macon, Georgia 31202                     FAX 478-752-8155

December 1, 2003

Mr. Taariq Noel
814 Crest Drive
Decatur GA 30035

RE:   <u>United States v. Dwight D. York, et. al.</u>
      <u>Criminal Case Number 5:02-CR-27(CAR)</u>

Dear Taariq:

    I hope all is well with you.   I very much appreciate you being willing to meet with my trial partner and me to review your testimony again.   To speed up this process, I have enclosed a copy of the questions I plan to ask you at the trial.   **Do not show these questions to anyone else**.   It may be necessary for you to recommend that some of the questions be changed to better fit with the facts as you recall them, and that is not a problem.   Before you review the questions, please carefully re-read the statement you gave to the FBI, and your testimony before the Federal Grand Jury—both of which are also included.   If you have any questions, contact Special Agent Joan Cronier at 404/679-1435.

                            Sincerely,

                            Richard S. Moultrie, Jr.
                            Assistant United States Attorney
                            Middle District of Georgia

# JUDICIAL NOTICE OF GOVERNMENT WITNESSES AFFIDAVITS SHOWING PROSECUTORIAL MISCONDUCT

# EXHIBITS
# 13-B

## AFFIDAVIT OF TAARIQ "DAVID" NOEL

Fulton County

I, TAARIQ NOEL, being first duly sworn and being competent to testify and having personal knowledge of the facts herein, states as following:

1. My name is Taariq Noel. I was born October 25, 1985. I make this affidavit of my own free will. No one has threatened or coerced me to make it. Nor have I been offered anything of value in return for making this affidavit. I am prepared to make this affidavit in order to tell the truth and let it be known.

2. I am hereby affirming that the majority of my testimony at the Federal criminal trial of Dwight York (Malachi York) was false, specifically in the area of my personal sexual activity. I am also stating that I did not engage in any type of sexual activity with Mr. York including oral sex or anal sex. Nor did I witness Mr. York engage in sexual activity or any inappropriate sexual behavior with any minors or adults.

3. I deny having any sexual involvement with Mr. York in upstate New York at age 7 or any age.

4. I deny having watched or seen any pornographic cartoons or inappropriate adult material with Mr. York nor any adult specifically Chandra Lampkin "Najlaa" at any time.

5. I deny being involved in any sexual activity or witnessing any inappropriate behavior with Mr. York or any adults as I testified in court specifically Kathy Johnson, Chandra Lampkin "Najlaa" or Khadijah Merrit "Mucullah" while living in Eatonton Georgia.

6. I deny having or witnessing any sexual intercourse including oral nor anal involving Khalid Eddington "Eddie", Issa Johnson, and Abdul Salaam "Shilemooh" with Mr. |York, Kathy Johnson, Chandra Lampkin "Najlaa" or Khadijah Merrit "Mucullah".

7. I testified falsely against Malachi York, Kathy Johnson, Chandra Lampkin "Najlaa" and Khadijah Merrit "Mucullah" for several reasons. The main reason was the threats made against me by FBI agent Joan Cronier and FBI agent Richard Moultrie. I was told by Joan Cronier that if I denied the allegations that my mother would be incarcerated for fraud.

8. I didn't know my legal rights and I was told that several individuals involved my name falsely in these allegations. At that age you don't know that you can disagree with the FBI.

9. The specifics of my testimony come from stories that were forced on me by FBI agents Joan Cronier and Richard Moultrine. I felt trapped to go along with the allegations in order to protect my family including my mother Barbara Noel, and my sisters Nicole Lopez and Amala Noel from the threats of being incarcerated.

Signed ___*Taariq Noel*___

Print ___*Taariq Noel*___

I HEREBY CERTIFY that on this 12ᵗʰ day of July , 2007, before me, the subscriber, a Notary Public in and for the State and County aforesaid, personally appeared

___TAARIQ NOEL___ , known to me, or satisfactorily proven, to be the person whose name is subscribe to the within instrument and did acknowledge that executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and seal the day and year aforesaid.

Notary Public

*[signature]*

ELANZA A. ROLSTON
NOTARY PUBLIC, CLAYTON COUNTY, GEORGIA
MY COMMISSION EXPIRES SEPT. 30, 2007

My Commission Expires:

# EXHIBITS
# 13-C

AFFIDAVIT OF HANAAN MERRIT

CLARKE COUNTY

I, HANAAN MERRIT, being first duly sworn and being competent to testify and having personal knowledge of the facts herein, states as following:

1. My name is Hanaan Merrit. I was born October 26, 1988. I make this affidavit of my own free will. No one has threatened or coerced me to make it. Nor have I been offered anything of value in return for making this affidavit. I am prepared to make this affidavit in order to tell the truth and let it be known.

2. I, Hanaan Merrit am stating for the record that Dr. Malachi Z. York never molested, raped, or sexually abused me in any way nor did I witness Dr. Malachi Z. York molest, rape or perform any sexual activity with anyone.

3. I, Hanaan Merrit am also stating that I have known Dr. Malachi Z. York most of my life.

4. I am affirming that on May 8, 2002, I was interviewed by Federal Agents Mary Mangrum and Lisa Speaker who questioned me about Malachi Z. York, of which I told them that I never met because I was out of mind and guns were pointing at me. I thought that I was going to die and I told them anything.

5. I am also affirming that on May 8, 2002, after being interviewed I was striped away from my family. Selha Eddington, Husna Evans, Hesna Evans, Issa Johnson and myself (all minors) were taken by strangers to a small house in Milledgeville, GA without our parents consent.

6. I being intimidated, scared and threatened was interrogated by Federal Agents being told by them that they know I was molested although I denied the allegations, they continued to badger me. They repeatedly told me that I was molested and covering up for Mr. York alleging that he claimed that he was going to kill me.

7. I writing this to state that I was badgered, threatened and coerced by the Federal Agents in attempts to make statements against Malachi Z. York that were not true.

Signed _____

Print _____

I HEREBY CERTIFY that on this _13_ day of _June_, 2007, before me, the subscriber, a Notary Public in and for the State and County aforesaid, personally appeared

_Hanaan Merritt_, known to me, or satisfactorily proven, to be the person whose name is subscribe to the within instrument and did acknowledge that executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and seal the day and year aforesaid.

Notary Public

My Commission Expires:

LAURIE WELCH
Notary Public, Paulding County, Georgia
My Commission Expires April 11, 2009

# EXHIBITS
# 13-D

## AFFIDAVIT OF SAKINAH WOOD

STATE OF ALABAMA

I, SAKINAH WOOD, being first duly sworn and being competent to testify and having personal knowledge of the facts herein, states as following:

1. My name is Sakinah Wood. I was born February 3, 1982. I make this affidavit of my own free will. No one has threatened or coerced me to make it. Nor have I been offered anything of value in return for making this affidavit. I am prepared to make this affidavit in order to tell the truth and let it be known.

2. I, Sakinah Wood did reside on the property at 404 Shady Dale Rd from 1994 til 2004. I have known Dr. Malachi Z. York for most of my life and I am stating for the record that Dr. Malachi Z. York never molested, raped, inappropriately touched me, or abused me sexually in any way nor did I see nor witness Dr. Malachi Z. York molest, rape or perform any sexual activity with any minors or persons.

3. I am hereby affirming that I was interviewed by FBI agent Jalaine Ward, on May 8, 2002 and also two other agents were present FBI agent Sally Heintzysh and FBI agent Tracey Bradford.

4. Jalaine Ward asked me several questions pertaining to my knowledge of Mr. York and acts of sexual molestation of which I told them I had no knowledge. Jalaine Ward asked me the same questions repeatedly. My answers were consistent and truthful. I had no knowledge of any sexual molestation, rape, inappropriate touching or sexual abuse.

5. Jaline Ward then told me and I quote, "Well, Sakinah, you know, you're not saying this now, but sooner or later, it will come out, because Mr. York is never coming out!" Meanwhile, the other agents Sally Heintzysh and Tracey Bradford had their guns in my face.

6. They told me that if I did not comply with their allegations I would go to jail. At which point I felt pressured.

7. I also, want to state for the record that FBI agent Jalaine Ward subpoenaed me outside of the courthouse in Brunswick Georgia. She stated and I quote, "Get on the right side!"

Signed _____

Print _____

I HEREBY CERTIFY that on this ___ day of ___ June, 2007, before me, the subscriber, a Notary Public in and for the State and County aforesaid, personally appeared

_____, known to me, or satisfactorily proven, to be the person whose name is subscribe to the within instrument and did acknowledge that executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and seal the day and year aforesaid.

Notary Public _____

My Commission Expires: 1/7/2009

# EXHIBITS
# 13-E