FILED
U.S. DISTRICT COURT
MIDDLE GEORGIA

2009 AUG 26 PM 1:42

C. [signature]    DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA-MACON DIVISION

| | | |
|---|---|---|
| **MALACHI Z. YORK-EL:©™,** | } | **5:02-CR-00027-CAR** |
| misnomer **DWIGHT YORK:©™,** | } | **CASE NO.  09-14085 G** |
| | } | **Petition for Certificate of Appealability** |
| **Noble: Malachi York El:©™** | } | |
| | } | |
| **Petitioner-Appellant** | } | |
| **V.** | } | |
| | } | |
| | } | |
| UNITED STATES OF AMERICA | } | |
| | } | |
| **Respondent-Appellee** | } | |

---

### PETITION FOR CERTIFICATE OF APPEALABILITY

---

Comes now is I, **Malachi York El:**©™ , **A/K/A** H.E. Dr Malachi Z. York-EL©™,

A/K/A Issa Al haadi Al Mahdi, A/K/A Dr. Malachi Kobina York, misnomered DWIGHT D.

YORK et, al.; **All rights reserved**, in honor Secured Party, Liberian Diplomat D/P #003828-04,

Owner in fact, Holder in due course Propria Persona (Pro Per) Also my petition should be

construed liberally as a Pro Per litigant see *Haines* v. *Kerner*, 404 U.S. 519 (1972), " Frandsen v.

Westinghouse Corp., 46 F.3d 975, 977 (10th Cir.1995). "A Pro Se litigant's pleadings are to be

construed liberally and held to a less stringent standard than formal pleadings drafted by

lawyers."Hall V. Bellmon 935 F.2d 1106, 1110 (10th Cir.1991). " 'District courts must take care

to insure that pro se litigants are provided with proper notice regarding the complex procedural

issues involved in summary judgment proceedings.' " Jaxon v. Circle K Corp., 773 F.2d 1138,

1140 (10th Cir.1985) (quoting Garaux v. Pulley, 739 F.2d 437, 439 (9th Cir.1984)); see also

Hall, 935 F.2d at 1111. Thus, "pro se litigants are to be given reasonable opportunity to remedy

the defects in their pleadings,".  I due hereby petition your honorable court pursuant to **28 USC §**

**2253 (c) for a Certificate of Appealability and state the following in support of this petition:**

On the 18th of February, 2009 the Magistrate Judge for the United States Court for the

Middle District of Georgia Macon Division filed a Report and Recommendation (Docket#: 406)

to deny my 28 U.S.C. § 2255 Motion to Vacate, Set Aside, and Correct Sentence entered in by

Attorney Gregory Lattimer.   I then with the assistance of legal information provided by my

family in visits entered a Pro-Se Objection to the Report and Recommendation and on June 30th

2009 my Constitutional Habeas Corpus and Motions under 28 USC § 2255 to Vacate, Set Aside,

and Correct Sentence due to Ineffective Assitance of Counsel, Prosecutorial Misconduct, Judicial

Biasness, and Lack of Jurisdiction were denied by the Chief Judge Ashley Royal for the United

States District Court for the Middle District of Georgia Macon Division in a 43 page Order filed

Docket #: 447.  On August 11th, 2009 I entered in a Notice of Appeal to appeal the Court's

decision; in an order filed on the Record by the Court on August 19th, 2009 Chief Judge Charles

Ashley Royal denied issuance of a Certificate of Appealability, in which the Court erred due to

the substantial showing of the denial of my Constitutional Rights in which these questions

deserve further proceedings.

### ISSUES TO BE RAISED ON APPEAL

**1.  INEFFECTIVE ASSISTANCE OF COUNSEL**

On Appeal I will be bringing forth to the United States District Court my claim of

Ineffective Assistance of Counsel a violation of the 5th and 6th Amendment of the United States

Constitution.  I will admit facts beyond a shadow of a doubt that Former Attorney of Record

Adrian Patrick was ill-prepared only given 23 days to prepare for a complex case of this

magnitude.  If indeed Adrian Patrick would have had the time to properly prepare for this case

2

which he stated on the record that he was not prepared and being rendered ineffective due to the lack thereof.  I was also forced to keep discharged Attorney Manubyr Arora on as Attorney after I had fired him on the record inclusive of Attorney Ed Garland, but discharged attorney was forced to stay on the record which was also a violation of the 5th and 6th Amendment of the United States Constitution.

2. **Prosecutorial Misconduct**

The Constitutional Right of due process pursuant to the 5th Amendment were also violated due to Prosecutorial Misconduct in the coercion and threatening in affidavits of recantations of 4 alleged victims that testified against me calling my entire conviction into question as well as 2 other alleged victims that testified for the Grand Jury that are now testifying that they were forced to perjure themselves in front of the Grand Jury which is a violation of the 4th and 5th Amendments of the United States Constitution that would call the entire indictment into question.  Another point to be raised in appeal is due to the fact none of the interviews were recorded the alleged victims had to relay by word of mouth and be re-interviewed which traumatized the children and compromised the integrity and credibility of their statement.   FBI Agent Jalaine Ward and local and state law enforcement violated the protocols set forth in O.C.G.A. § 24-3-16, and O.C.G.A. § 24-9-5.  These interviews should have been recorded on audio or video the lack of audio or video evidence of the alleged victims interviews was to avoid the court from having knowledge of the coercive tactics, threats, and promised concessions for the witnesses cooperation in the investigation as outlined in the countless Affidavits and testimonies done by the Government witnesses.

3. **JUDICIAL MISCONDUCT**

I was deprived of a fair trial as a result of the Court's inquiry onto the United Nuwaubian Nation of Moors website known as www.unnm.com that internet websites views and perceptions of me and my culture, way of life, and traditions, could have potentially swayed the impartiality of the judge therefore rendering him partial and incapable of fairly presiding over my case. The Judge also had prior knowledge to who I am and therefore should have recused himself from this case.

### 4. Lack of Jurisdiction

The Court had no jurisdiction to convene or conduct a trial due to my status as a Liberian diplomat and citizen protected under foreign treaty.

### DENIAL OF CONSTITUTIONAL RIGHTS IN CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL

There is more than just a substantial showing of the denial of my constitutional right the issues raised are undeniably debatable among jurists of reason, and any court could resolve these issues differently, and see that these questions deserve further proceedings. 28 U.S.C. § 2253(c); *Lennox v. Evans*, 87 F.3d 431 (10th Cir. 1996) also see Slack v. McDaniel, 529 U.S. 473, 484 (2000). This petition for a Certificate of Appealability is not frivolous and more than just a good faith request.

In regards to ineffective assistance of counsel the court must make on-the-record findings sufficient to permit meaningful review on the issue of the ability and preparedness of counsel to render effective assistance under the prevailing circumstances. "The right to counsel is the right -to effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984). "When a Jurisdiction provides an appeal of right, due process also

guarantees the assistance of Counsel on appeal." Evitts v. Lucey, 469 U.S. 387, 83 L.Ed.2d 821, 105 S.Ct. 830 (1985) a few weeks does not support effective counsel readiness to perform. Frazer v. United States, 18 F.3d 778, 779 (9th Cir. 1994); U.S.C.A. Const. Amend 6. Counsel owes me duty of loyalty, unhindered by state or by counsel's constitutionally deficient .

    Trial counsel Adrian Patrick was ineffective at trial because he was unprepared to try this complex multi-count prosecution, ill-prepared to address the expert witnesses presented by the government, and ill-equipped to provide legal representation in a matter of this magnitude. Mr. Patrick informed the Court on the record that he needed additional time to prepare for trial given his appearance only 23 days prior to the trial date and because he only became aware that he was to be lead counsel upon the withdrawal of Mr. Garland as counsel of record only five (5) days prior to trial, the approaching holidays, and the fact that I was not arraigned on the third superseding indictment until December 16, 2003. There is no question that the Court's refusal to continue the trial caused me to proceed with ineffective legal representation. The following is documented on the record in which Attorney Adrian Patrick explains why he would need a continuance to prepare:

> "Mr. PATRICK: Well, Your Honor, a few things. One, as I picked up about 20 or so boxes of evidence, maybe about 25 of evidence from Mr. Garland's office, and I realized the need for - - one, a need for three other experts; one on DNA forensics to test some DNA that was found that was part of newly-discovered evidence; one was someone to counteract Kenneth Lanning's testimony; and one was for false accusations of child molestation. So that's three experts I identified after reading all of the evidence, and me being lead counsel, that I would need.
> In addition, there's a lot of new evidence, Your honor, that was turned over in the month of December that would need time to be processed, and actually, what I wanted to do is formalize my reasons in written fashion, as opposed to just saying them orally, that if we go forward with the case, that, Dr. York will have an inadequate defense because I'm not ready to proceed with the case, And I want to put that on the record that by going forward, that would create a prima facie case of ineffective assistance of counsel . . .

* * * * *

> Your Honor, primarily I just want to put in written form my oral motion and let the
> Court know that Mr. York will have an inadequate defense and that will create a
> prima facie of ineffective counsel. I wanted to put that on the record. I do need
> those other experts.

> Jan. 5, 2004, Transcript at 5, 9.

By denying me a continuance in order for new counsel to become prepared it is obvious that the

Court

> abused his discretion to control the trial and a manifest injustice resulted when he
> refused either to grant the motion for a reasonable continuance in order that the
> Petitioner have the assistance at trial of counsel who he had chosen and retained or
> in some other manner assure the continued attendance of Petitioner's retained
> counsel, who announced an intention to abandon the Petitioner, and later did so.

*Grandy v. State of Alabama*, 569 F.2d 1319, 1326 (5th Cir. 1978).

Significantly, the Supreme Court has held that

> if counsel entirely fails to subject the prosecution's case to meaningful adversarial
> testimony, then there has been a denial of Sixth Amendment rights that makes the
> adversary process itself presumptively unreliable.

*United States v. Cronic*, 466 U.S. 648, 668 (1984).

As a consequence of the Courts action Mr. Patrick became lead counsel a mere five (5) days

before my trial was scheduled to begin.  The 11th Circuit has held that six (6) times that much

time in cases where the government has had years to investigate is insufficient.

> We find that the 34 days failed to provide defense counsel with sufficient time to
> defend against a case which the government spent years investigating.

*United States v. Verderme*, 51 F.3d 249, 252 (11th Cir., 1995). In explaining why the

administrative burden of the district court should not be viewed to outweigh the constitutional

rights of a criminal defendant, the 11th Circuit stated as follows:

> While we appreciate the heavy case loads which the district courts are presently
> operating and understand their interest in expediting trials, we feel compelled to
> caution against the potential dangers of haste, and to reiterate that an insistence upon
> expeditiousness in some cases renders the right to defend with counsel an empty
> formality. In our system of justice, the Sixth Amendment's guarantee to assistance
> of counsel is paramount, insuring the fundamental human rights of life and liberty.
> "The Sixth Amendment stands as a constant admonition that if the constitutional
> safeguards it provides be lost, justice will not still be done." *Gideon v. Wainwright*,
> 372 U.S. 335, 343, 83 S.Ct. 792, 796, 9 L.Ed. 799 (1963) (citation and quotations
> omitted).

*Id.*

In addition to Attorney Adrian Patrick's inability to prepare his self for this trial the Court then

disregarded my wishes and determined that Mr. Arora would be required to remain as my

counsel, even though I had specifically discharged Mr. Garland and Mr. Arora and had informed

the Court of my desire to be represented at trial by Mr. Patrick.  As I stated on the Record on

December 30th of 2003 my reasons for discharging these attorneys are as follows:

> "The attorneys that self-appointed themselves – and I've made
> that clear – in June of 30 (sic) were not representing me. They did not
> visit me. I had no access to a law library, which I know is my
> constitutional right. I was cut off from telephone communication with
> my family. I was transferred from venue to venue. So, in all light, I
> had no way of actually being prepared. And then my evaluation was
> established in order to say that I was not prepared to cooperate with
> my attorneys, or wasn't willing to, in actuality. I had no knowledge
> of what was going on around me at all. I had, like I said, no
> visitations, no briefings. Just boxes of information and boxes of
> information called disclosures. The attorneys did not work on my
> behalf. They were not trying to put forth my motions. ... Everything
> about this case has been one-sided. My side of the story has not been
> heard. My attorneys, as they were being called at the time, did not do
> anything in my defense"

My Claims merit relief based on the transcripts and supporting document (letter sent to the Court

on December 29th, 2003) in which attorneys failed to address, which supports my position of

being denied my constitution rights to the law Library and most of all access to an attorney.

7

"Prisoner claiming inadequate law library or legal assistance need not show actual injury

resulting from denial of access to courts EX PARTE HALL, 312 us 546, 85 led 1034,61 S ct.

540. "Prison officials may not retaliate against or harass inmate because of inmate's exercise of

his right of access to the courts" GOFF V. BURTON, 73d 734 (8th Cir. 1993).  These attorney

had not spoken to me during trial nor communicated the same while I was being detained.

Therefore a Claim was entered for ineffective counsel under section 2255 motion for new trial.

In the Report and Recommendation entered in on February 18th, 2009 the Magistrate judge states

the following:

> "In *Gonzalez-Lopez,* the defendant's counsel of choice was not allowed to participate in
> the defense of the case in *pro hac vice* status.  York's claim is that discharged counsel
> was allowed to participate in assistance to his counsel of choice, but the above record also
> shows that York agreed to that arrangement."

Factually Judge Royal forced a terminated law firm to represent me despite my letter of

termination to Garland's Firm and in Court statements of my firing them for and for the record.

Mr. Arora specifically states the following:

**<u>"Judge, Mr. Patrick has spoken with Dr. York, and he wants us not to be affiliated</u>**

**<u>in the case."</u>**

Mr. Arora himself acknowledges the blatant, straight forward, clear, and concise wishes of my

letter to fire them.  I had no choice and I even stated that despite what the Judge was saying and

doing, the letter of termination still stands as we see in the following...

> "On behalf of the letter, the letter clearly states that I intend to file charges against Mr.
> Garland and Mr. Arora's firm for ineffective assistance of counsel, and I want that – – I
> don't  want it to be passed off as a ploy when it's a fact based on situations that led to
> me putting it in at this late date, being as I was deprived under duress of access to any

8

> public media, library, computer, or whatever. So I just want to make that clear, that if
> Mr. Arora would like to      assist unofficially in the case with Mr. Patrick, that's fine,
> but as long as  – – **for the record, it's clear that the letter still stands**, that that's
> my position in the letter, that it goes forward.

The Court in light of my firm stands coerced and blatantly forced the discharged attorney on me

as he made very clear in denying my continuance he would not take no for an answer. In regards

to any prior delays that took place prior to my decision to discharge these attorneys would be on

the fault of the attorneys and should not hinder me from having effective assistance of my

choice, the Courts stating that I would turn around and fire my attorneys is pure speculation, and

if my attorney refuses to state claims that I want stated on my behalf or refuses to follow my

wishes in providing a solid defense I am then being violated of my 6th Amendment Rights.

> The Sixth Amendment provides that "in all criminal prosecutions, the accused shall
> enjoy the right . . . to have the Assistance of counsel for his defense." We have previously
> held that an element of this right of a defendant who does not require appointed counsel
> to choose who will represent him.

*United States v. Gonzalez-Lopez*, 126 S.Ct. 2557, 2561 (2006), quoting *Wheat v. United States*,

486 U.S. 153, 159 (1988).

Any reasonable jurist would recognize the magnitude of this case and that any counsel that was

to represent me would need to be duly and truly prepared. The Court erred in the denial of my

Certificate of Appealibility when the Courts decision was based off of the opinions of the

abilities of Attorney Ed Garland, Attorney Adrian Patrick, or any other Attorney for that matter.

Chief Judge C. Ashley Royal United States Court for the Middle District stated in his 43 page

order denying my § 2255 Motion To Vacate the following:

> "Throughout the long history of this case, York has continuously had access to the best
> attorneys money can buy."

But in contradiction the Supreme Court has made clear that:

> Where the right to be assisted by counsel of one's choice is wrongly denied . . . it is
> unnecessary to conduct an ineffective or prejudice inquiry to establish a Sixth
> Amendment violation. Deprivation of the right is "complete" when the defendant
> is erroneously prevented from being represented by the lawyer he wants, regardless
> of the quality of the representation he received.

*Gonzalez-Lopez,* supra at 2563. Indeed, it has been held that "A choice-of-counsel violation

occurs whenever the defendant's choice is wrongly denied." *Id.* Not unlike the situation here

> However broad a court's discretion may be . . . the District Court here erred when
> it denied respondent his choice of counsel. Accepting that premise, we hold that the
> error violated respondent's Sixth Amendment right to counsel of choice and that this
> violation is not subject to harmless-error analysis. *Id.* at 2566.

These attorneys only came to visit me one time in regards to payment, as I put on the record

during the trial, they did not allow me to have input into my own trial, nor did I have access to a

law library. Furthermore Attorney Manubir Arora never formally entered an appearance on

behalf of myself that is documented on the docket sheet. It is the rights applicable in this matter

pursuant to the 5th and 6th Amendment of the United States Constitution that I be able to choose

attorney that I wish to represent me, those attorneys should allow me to play an active part in my

defense which did not take place, and should be allotted the time necessary for that preparation.

In addition the post-trial counsel's actions were totally inconsistent with my wishes when

he withdrew my motion for new trial despite the merits of the issues raised therein and without

advising me that such an action was being taken. Furthermore counsels handling of cross

examinations of expert witnesses and government witnesses were subpar to say the least and the

government's expert witness should have been struck.

> Under the second prong of Daubert, the relevance requirement, the court must
> "ensure that the proposed expert testimony is 'relevant to the task at hand,' . . .i.e.,
> that it logically advances a material aspect of the proposed party's case." Thus, the
> evidence must have a scientific connection to the disputed facts in the case. [citations
> omitted]

*Allison v. McGlan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999).

These were critical errors that occurred with experts that any effective attorney would have addressed. First, the testimony of Kenneth Lanning should have been struck by the Court for several reasons and mainly because it was devoid of any scientific support. Notwithstanding the blatant shortcomings and unreliability of the Governments expert witness, Mr. Lanning's testimony, my counsel failed to object to his opinion being offered without sufficient foundation and more egregiously, failed to move to strike his testimony once the shortcomings became apparent. This error was further compounded when appellate counsel failed to raise this issue on appeal. Kenneth Lanning states the following on the record in regards to his findings

> so its validity, in my opinion comes from the fact that it's been utilized and it seems
> to work for a lot of people . . . Well, the follow-up issue in the sense is not
> necessarily - - I don't know how you can scientifically prove it.

Transcript of January 7, 2004 at 772. Clearly, Mr. Lanning's testimony fails to meet the reliability prong of *Daubert v. Merrell Dow Pharm., Inc.,*, 509 U.S. 579, 593-94 (1993). Equally if not more shockingly, defense counsel called Dr. Frederick O. Bright as an expert witness. Dr. Bright, who is a known member was thoroughly impeached, as should have been expected, and thus, nullified any chance I had of countering the medical findings of the government's medical expert due to his inability to facilitate an unbiased expert witness because of the time constraints set by the court. "Defendant has showed that counsel's performance was deficient...Second, the defendant Showed that the deficient performance prejudiced the defense. This requires showing that Counsel's errors were as serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, at 687. As for the prejudice requirement" [t]he benchmark for judging any claim of Ineffectiveness must be whether counsel's conduct so

undermined the proper functioning of the adversarial process that the trial cannot be relied on as

having produced a just result." Strickland, at 686.

The "defendant need not show that counsel's deficient conduct more likely than not

altered the outcome of the case," Strickland, at 693, but rather "must show that there is a

reasonable probability that, but for the counsel's unprofessional errors and omissions, the

result of the proceedings would have been different." Strickland, at 695-96.

**Examples of relative grounds for claim of ineffective assistance of counsel are in this**

**Cases are as follows:**

- Counsel was ineffective in investigation, preparation or for another substantial reason
- Counsel's performance was deficient and prejudiced defendant
- Counsel's serious errors deprived defendant of fair trial
- Counsel and defendant had irreconcilable differences
- Counsel was not prepared within requisite range of competence
- Counsel's performance fell below an objective standard of reasonableness
- Counsel's failure to investigate mitigating circumstances for sentencing
- Counsel's failure to subject prosecution's case to meaningful adversarial testing
- Counsel's failure to file timely motions regarding constitutional rights
- Counsel's failure to advocate the defendant's Diplomatic status
- Counsel's failure to be competent, prompt and diligent
- **Counsel's failure to maintain adequate communications with defendant**
- Court's failure to hold inquiry into claim of ineffective assistance of counsel
- **Representation so inadequate and deficient that it denies Sixth Amendment right**
- **Representation fails to move to suppress evidence, conduct an adequate investigation, raise legal issues at trial, and negotiate a plea agreement.**

In Summary outside the lack of preparation, discharged attorney being forced  on me,

Counsel failed to address jurisdiction in reference to my status as a Ghanain born Liberian

Citizen, with certified documents that recognize these facts inclusive of a voluntary request for

Repatriation by the Liberian Government on June 14th, 2004, as well as the fact that OCGA

protocol in child molestation cases was blatantly ignored which would have further substantiated

the prosecution misconduct claims that were made during trial.   If these issues of law would

have been addressed by an effective counsel any reasonable jurist could see the outcome would

have been different. Therefore the denial of an evidentiary hearing in the least was unwarranted.

Lastly sentencing, counsel failed to properly preserve an argument based upon the decision

issued in *Blakely v. Washington.1* and on appeal, counsel was ineffective in that, during oral

arguments, counsel made false claims that the *Blakey-Booker* issue had been preserved at the

lower level. In doing so, appellate counsel failed to argue that the standard of review utilized by

the Court of Appeals was erroneous.   Once jeopardy attaches, any claim of ineffective assistance

is governed by the *Strickland standard* and should be addressed in post-trial motion.   On post-

trial claims of ineffectiveness, any question as to whether a hearing is needed should be resolved

in favor of conducting a hearing. A hearing must be held unless the Claims are vague, wholly

incredible, or even if true, would merit no relief.


### DENIAL OF CONSTITUTIONAL RIGHTS IN MY CLAIM OF EVIDENCE OF PROSECUTORIAL MISCONDUCT IN WITNESS AND ALLEGED VICTIM AFFIDAVITS


In regards to prosecutorial misconduct I admitted into the Court the Recantations from

Ebony Hill, Taariq Noel, and Shilimoh Eddington who all testified against me at trial, as well as

an affidavit by Samaiyah Jamiylah Ellis who was named as a victim in the indictment, as well as

an affidavit from Hanaan Merritt who was also named on the indictment as an alleged victim,

and a 4th recantation by Radeya Muhammad who did not testify against me at trial but whose

testimony in front of the Grand Jury lead to the unlawful indictment that was used to arraign and

detain me.

These affidavits admitted into the court show a pattern of prosecutorial misconduct as was brought to the court during my trial as several of the prosecution's witnesses testified on the stand that they had been forced, coerced, threatened, and promised concessions to make the false statements that were made against me at trial. These affidavits admitted show unison in the continuous statements of misconduct by the prosecution to have statements manufactured to induce a conviction. These affidavits are more than just mere impeachable statements to their testimony at trial they also substantiate the fact that FBI Agent Jalaine Ward acted negligently without regard to required State Model Child Abuse Protocol pursuant to Georgia Code Section 19-15-2. Her testimony in the Arraignment and Detention hearing that took place on the 9th of May 2002, Agent Jalaine Ward acted in her own best interest and not that of alleged victims. Agent Ward failed to utilize video/audio devices while interviewing multiple alleged sex crime victims and witnesses. Agent Jalaine Ward neglected to preserve the integrity and credibility of the alleged victim's statements by means of proper video/audio recordings, Agent Jalaine Ward was made to recall information from over what was claimed to be 30-35 alleged victims and witnesses' statements that she allegedly personally interviewed none of which were recorded so this means that the alleged victim's statements would have to be relayed by word of mouth or the children would have to be re-interviewed, which traumatized the children and compromised the integrity of their statements in violation of O.C.G.A. § 24-3-16, O.C.G.A. § 24-9-5. My due process was not ensured, there is no evidence that these interviews were conducted in accordance with State and Federal Guidelines. Attorney Ed Garland even questioned Jalaine Ward at the Arraignment and Detention hearing in reference to Jalaine Wards interviews of the alleged victims where he asks on page 64 of the Arraignment and Detention hearing that took place May 9th, 13th & 14th of 2002:

> **Ed Garland:** Now what steps did you take to ensure that the interview process with he people you interviewed had not been **influenced by suggestive processes**?
>
> **Jalaine Ward:** Just conducted a good interview and let them tell their story.

The reason there is no audio/video evidence of the alleged victims is to avoid the Court from having knowledge of the coercive tactics, threats, and promised concessions for the witnesses cooperation in the investigation as outlined in the countless affidavits and testimonies done by the Government witnesses entered into the Court. Attorney Ed Garland continues on by asking the following:

> **Ed Garland:** Now, at the time you conducted the interview, did you tape the interview?
>
> **Jalaine Ward:** No, Sir.

Agent Jalaine Ward admits on the record that she did not utilize the protocols as outlined in her training. Agent Jalaine Ward's blatant disregard for proper procedures further substantiates my claim of misconduct by the investigators and prosecution and also confirms the Affidavits done by the Government Witnesses. Any reasonable jurist would see the denial of the rights of the United States Constitution under the 4th, 5th, and 6th Amendments. With this array of evidence and witness testimonies that the prosecution did participate in misconduct should not be taken lightly and a Certificate of Appealibility should be issued as I am in essence serving a death sentence of 135 years in USP Florence ADX in which I was placed after errors in my Custody Classification. Though generally the 11th Circuit doesn't hear new issues raised on appeal the 11th Circuit should take into consideration the United States Supreme Court's decision to intervene in the Troy Davis case based on recantations very similar to my case in which witnesses felt pressured to fingering Troy Davis as the killer. The lack of Jalaine Wards ability to follow protocol and the statements of countless witnesses both for the Prosecution and myself

embody enough evidence to show it is more than debatable pursuant to 28 USC § 2253 (c) that due process was violated in this case.

## DENIAL OF CONSTITUTIONAL RIGHTS IN MY CLAIM OF JUDICIAL BIASNESS

The Court t erred when presiding Judge C. Ashley Royal did independent research into the United Nuwaubian Nation of Moors website known as www.unnm.org by visiting Nuwaubian websites on the internet during trial which rendered the Court partial and bias due to the content on the website. As far as research for the protection of the Jurors as the Court claims is untrue whereas the court had already done extensive research through documents filed both through the prosecution and the defendant as stated by Judge Royal in his Order filed on June 30th, 2009:

> "In this case, there were extensive pretrial motions that provided a great deal of background information to the Court long before trial. Much of the information on the Nuwaubian website was also presented formally to the Court in briefs on various pre-trial motions, particularly in the motions submitted by Mr. Rubino at York's request."

The Court needed not to look on Nuwaubian websites to see the same information the Court had already seen in the past. Judge Royal acted outside of his Judicial Canons for the State of Georgia in which Canon 3 states:

> "A judge shall perform the duties of judicial office impartially and diligently"

The commentary to that canon states,

> "A judge must not independently investigate facts in a case and must consider only the evidence presented."

Due to the unorthodox culture of the United Nuwaubian Nation of Moors pictures and text entered into that website put a strain on the ability of the Court to preside over my case justly

without prejudices or biasness.  There were also direct statements made about Judge Royal in reference to his family, way of life, and genetic lineage which was offensive in Nature.  As judges have been forced to recuse themselves based off of similar research into a defendant on google, or websites related to the defendant as what took place in a case in North Carolina Before the Judical Standards Commision **INQUIRY NO. 08-234** the following is an exerpt from that inquiry:.

"8. Sometime on or about September 9, 2008, Judge Terry used the internet site "Google" to find information about Mrs. Whitley's photography business. Judge Terry stated he wanted to see examples of Mrs. Whitley's photography work. Upon visiting Mrs. Whitley's web site, Judge Terry stated he viewed samples of photographs taken by Mrs. Whitley and also found numerous poems that he enjoyed."

11. Judge Terry acknowledge he accessed Mrs. Whitley's photography web site on the first two days of trial and stated he may have accessed the site on the last day of trial to copy the poem. Judge Terry could not recall exactly how many times he visited the site but stated that four times was very possible.

13. Following the conclusion of the hearing and after having orally entered his order, Judge Terry requested a bailiff to summon Conley and Schieck to return to the courtroom, whereupon Judge Terry disclosed his actions of having viewed Mrs. Whitley's web site and quoting a poem he found thereon.

14. Conley filed a Motion in the Cause on October 2, 2008, whereby she requested a) Judge Terry's order be vacated, b) a new trial, and c) Judge Terry's disqualification.
15. Judge Terry disqualified himself by Order filed October 14, 2008.

These are the following codes the Judge was reprimanded under

Carolina Code of Judicial Conduct, including failure to personally observe appropriate standards of conduct to ensure that the integrity and independence of the judiciary shall be preserved (Canon 1), failure to respect and comply with the law (Canon 2A), failure to act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary (Canon 2A), engaging in *ex parte* communication with counsel and conducting independent *ex parte* online research about a party presently before the Court (Canon 3A(4)). Judge Terry's actions constitute conduct prejudicial to the administration of justice that brings the judicial office into disrepute (N.C. Const. art IV, § 17 and N.C.G.S. § 7A-376(a)).

These Canons are stipulated within the Georgia Code of Conduct as follows:

Canon 1
Judges Shall Uphold the Integrity and Independence of the Judiciary.
An independent and honorable judiciary is indispensable to justice in our society. Judges shall participate in establishing, maintaining, and enforcing high standards          of conduct, and shall personally observe such standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.

Canon 2
Judges Shall Avoid Impropriety and the Appearance of Impropriety in All Their Activities. A. Judges shall respect and comply with the law* and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

In another case  *N.Y.C. Med. & Neurodiagnostic, P.C. v. Republic W. Ins. Co.*,  the following statements were made by a judge who attempted to justify his gleaning of a litigants website

"regarding the court's use of company Web sites, the court reasoned that information placed on those Web sites constituted party admissions and thus were fair game for consideration."

Despite the court's comprehensive defense of its use of the Internet, its decision was reversed on appeal.  The appellate court complained that the lower court made findings of fact :

"based not upon the submissions of counsel but rather upon its own Internet research."[30]
The appellate court chided the lower court for "initiating its own investigation into the facts when, based upon the insufficient submissions of plaintiff, the court should have dismissed the complaint."

*Source: http://www.abanet.org/judicialethics/resources/TPL_jethics_internet.pdf*

These cases are based on American Bar Association findings as well as violations against Judicial Canons as you see are standard from State to State, due to the fact these actions took place prior to Judge Royal being assigned the position of Chief Judge the 11th Circuit must take into consideration the defective judgment in gleaning information from Nuwaubian sites as he

should have known with a controversial case such as this those actions would render him bias

bring his impartiality into question.

     As far as Judge Royal knowing of me prior to my trial there had been several instances in

which we've directly had dealings for instance my doctor prior to and during my unlawful arrest

of May 8th, 2002 was Dr. William Thompson of Milledgeville, Georgia who worked for the

Oconee Regional Medical Center from November 1995 A.D. until May 1997 A.D. in which he

provided full-time emergency department care at Oconee Regional Medical Center as the only

physician on staff certified by the American Board of Emergency Medicine.  In May of 1997 Dr.

Thompsons attorney at the time was Senator Leroy Johnson, while reviewing his application for

privileges sent by Attorney Leroy Johnson, at the time Attorney Charles Ashley Royal notated

on the physical application that one of his references was myself, Malachi York:©™, this

application with the notations from Judge Royal can be submitted into evidence during an

Evidentiary hearing or Oral Arguments, it was advised to the Oconee Regional Medical Center

not to consider his applications due to his affiliations with me.  As you have already been

informed he also served as an attorney for Oconee Regional Medical Center during a lawsuit my

wife Shalimar Richardson and mother of my three children brought against the hospital due to

malpractice on the part of hospital in which my father-in-law died due to a sponge being left in

him during surgery.  The address for both Eli Richardson, and Shalimar Richardson was the 404

Shady Dale Rd, Eatonton, Georgia which was the well known primary church location for the

Nuwaubian community.

## DENIAL OF CONSTITUTIONAL RIGHTS IN MY CLAIM OF THE COURTS LACK OF JURISDICTION

I, Malachi York El:©™ am a citizen and **Diplomat of the Republic of Liberia, West Africa D/P# 003828-04,** born in Takoradi, Ghana appointed as a diplomat by former President Charles Ghankay Taylor on December 15th, 1999 in which a voluntary repatriation was requested on my behalf of the Liberian Government on June 14th, 2004 wherein my Certificate of Citizenship also issued December 15th, 1999, and my Declaration of Intention made July 12th, 1997 are on record at US State Department and in the Montserrado County Court in Monrovia Liberia, and I also admitted copies of all the aforementioned documents on the Record within the United States District Court. Also admitted into the Record was the Joint Motion entered into the Record in the United States District Court for the District of Colorado in which Department of Justice United States Assistant Attorney acknowledges my status as a Liberian Citizen and Diplomat and actually files the Motion ,also signed by my former counsel of record Leta Holden, which United States Assistant Attorney then signed and entered into the United States District Court Electronic filing system. This was actually done twice, but the Court again erred by not reviewing over the documents and granting me an evidentiary hearing to state my facts. Also Due to ineffective assistance of counsel none of my attorneys entered into the record these documents and the Courts presumed and assumed they had jurisdiction over me, of my genetic lineage in which I mentioned on and for the record as quoted in the Report and Recommendation as follows:

"None of the motions was re-addressed, many motions for instance, **my jurisdiction, my sovereignty, was mentioned. It was never re-addressed**."

My bail was denied prior to the superseding indictment coming down during the State trial in a Motion For Bond dated January 17th, 2003 (**entered into the record as an exhibit**) one of the reasons Prosecuting Attorney for the State of Georgia Don Baskin motioned to deny my bond was  based on a letter written by Deborah Smith who was then incarcerated in Jones County Jail and wrote a letter to me in reference to my return to the Republic of Liberia, her letter was used as evidence in the Bond Hearing when Sheriff Sills, who I was being unlawfully and unconstitutionally detained violating Treaty law according to Article VI of the Constitution which states..

> " treaties made, or which shall be made, under the authority of the United States, shall be
> the supreme law of the land"

this is in direct violation of the Jay Treaty, Treaty of Ghent, the Treaty of Peace and Friendship signed in Morocco in 1786, the **Liberian Extradition Treaty** of Monrovia signed Novermber 1st, 1937, and Article 22, 23, 29 of the Vienna Convention on Diplomatic Relations,  22 USC § 254(b), and your 18 USC § 112 Protection of foreign officials, official guests, and internationally protected persons.  During the State Bond Hearing Sheriff Sills and Attorney Garland said the following:

> **Mr. Garland:**  A Deputy Sheriff, you think --do you have any—you don't have any
> reason to believe anything about this woman's reliability other than that she's an inmate
> in jail?
> **Mr. Sills:** No more than what she has written in two letters about Mr. York, saying that
> they were all going to Liberia, that---
> **Mr. Garland:** All going to Liberia?
> **Mr. Sills:** Yes, sir.

There was also a letter written from the Garland Firm addressed to Lt. Guy Mustello of the Jones County Jail on March 28th, 2003 (**which was also entered as an exhibit**)  requesting that I be

considered for International Prisoner Transfer under the provisions of 81 USC § 4100 et seq. My Liberian attorney Counsellor Francis Y.S. Garlawolu petitioned for my Repatriation within the Montserrado County Court in Monrovia Liberia in June of 2004 (**Also entered as an exhibit**). My Liberian attorney has also petitioned to appear Pro Hac Vice on my behalf within the United States District Court for the District of Colorado in a Civil cases against the Federal Bureau of Prisons 1:07-cv-01297-EWN-KLM (**Also admitted as an exhibit**). As a Statement of Fact not Contraversy I am a Liberian by Citizenship and Diplomatic Agent, not Nigerian as was stated by the Magistrate Court I also provided as evidence for the Record my Birth Records showing I was born in Takoradi, Ghana as well as a letter from the Births and Deaths Registry signed by Stephen Kwaku Amoah the Registrar of Births and Deaths, none of these documents were even considered by the court and passed off as frivolous. According to the Federal Rules of Evidence 902 (3):

> (3) Foreign public documents. A document purporting to be executed or attested in an official capacity by a person authorized by the laws of a foreign country to make the execution or attestation, and accompanied by a final certification as to the genuineness of the signature and official position (A) of the executing or attesting person

Whereas these documents were attested by the Registrar in his official capacity, the laws, treaties, articles, and amendments of the United States Constitution have been violated in this denial of issuance of a Certificate of Appealability. Counsel never brought these facts to the attention of the court further rendering him ineffective, having that information known by the United States District Court, I would have been discharged immediately.

## CONCLUSION

In summary due to the close relation the Judge Ashley Royal has to this case it has put him in a situation where the Courts impartiality is questionable and would be looked at as questionable by any reasonable jurist, the facts are surely debatable to say the least and any other courts decision is highly likely to have differed from Judge Royals decision in the matters of the Courts Lack of Jurisdiction, Judicial Biasness, Prosecutorial Misconduct, and Ineffective assistance of counsel.

## COURSE OF ACTION SOUGHT FROM THE 11TH CIRCUIT OF APPEALS

I am seeking to be issued a Certificate of Appealability, to be scheduled for a briefing in this matter, and to be transferred while review is pending pursuant to Rule 23 (a) of the Federal Rules of Appellate Procedure in order that I may be present at Oral Arguments in this matter. I have yet had an opportunity to have input into my own defense, and my transfer as the pending review of the 11th Circuit will give me the opportunity to prepare myself for the Brief.

Respectfully Submitted,

Malachi York misnomered Dwight York

Nonresident  /  Non-Domestic

First Class, Delivery

1541 Marion St in the City of Denver, Colorado 80218