IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 09-14085-G

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 3 2010
THOMAS K. KAHN
CLERK

DWIGHT D. YORK,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

Appeal from the United States District Court for the
Middle District of Georgia

ORDER:

Dwight D. York seeks a certificate of appealability to appeal the district court's denial of his 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence. In his § 2255 motion, York raised the following claims:

(1) appellate counsel was ineffective for arguing on direct appeal that the errors under *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), had been preserved at the lower level, and for failing to argue that the standard of review utilized by this Court was erroneous;

(2) trial counsel was ineffective at trial for failing to prepare adequately, failing to address the state's expert witnesses adequately, and ignoring York's "directives and desires," and post-trial counsel was ineffective for withdrawing the motion for new trial without advising York;

(3) the state trial court deprived York of effective legal representation, in violation of the Sixth Amendment, by forcing him to retain discharged counsel in a representative capacity;

(4) York was deprived of a fair trial as a result of the trial judge's bias;

(5) several witnesses, including one of the victims who testified about sexual abuse, have recanted their testimony and advised of serious prosecutorial misconduct, which calls York's conviction into question; and

(6) the state trial court lacked jurisdiction to convene or conduct a trial of York due to his status as a Liberian diplomat.

In order to obtain a certificate of appealability, an appellant must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The appellant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000). When the district court denies a habeas claim on procedural grounds, the appellant must show, in addition to the denial of a constitutional right, that reasonable jurists would find it debatable whether the district court was correct in its procedural ruling. *Id.*

A defendant claiming ineffective assistance of counsel must demonstrate both professional error and prejudice to the outcome of the proceedings, and the failure to demonstrate either is dispositive of the claim against the defendant. *Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984). This *Strickland* test applies to ineffective assistance claims against both trial and appellate counsel. *Matire v. Wainwright*, 811 F.2d 1430, 1435 (11th Cir. 1987). The defendant must satisfy both prongs of this test to show a Sixth Amendment violation. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069. Counsel's performance is deficient only if it falls below the wide range of competence demanded of attorneys in criminal cases. *Id.* at 688,

104 S.Ct. at 2065. Prejudice is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

### Claim 1: Ineffective Assistance of Counsel on Direct Appeal

York first alleged that, during oral argument on direct appeal, appellate counsel "argued that the *Booker* argument had been preserved in the district court, even though it clearly had not been preserved. In doing so, counsel failed to address the error of the appellate court's posture that the plain error standard did not serve to warrant remand in this case, despite the statutory error in applying the Guidelines in a mandatory fashion."

The record shows that York's appellate counsel claimed both constitutional and statutory *Booker* errors on direct appeal. This Court reviewed his claims for plain error, as York did not raise *Booker* objections to his sentence in district court. This Court held that, even if statutory and constitutional *Booker* errors occurred, York could not show that either error affected his substantial rights, as the record did not establish a reasonable probability that the district court would have imposed a lesser sentence under an advisory Guidelines scheme. York has failed to explain how the plain-error standard of review of an unpreserved claim was erroneous, or how appellate counsel's arguments prejudiced him. Accordingly, he did not show that counsel was ineffective.

### Claim 2: Ineffective Assistance of Counsel at Trial

York alleged generally that counsel was ineffective for failing to prepare for trial adequately, ignoring his directives or wishes, and failing to cross-examine government witnesses adequately. York specifically argued the following instances of ineffective assistance of trial counsel: (a) counsel failed to move to strike the testimony of expert witness Kenneth Lanning, who testified about particular characteristics associated with individuals who commit sexual offenses against minors,

3

as it was devoid of any scientific support, did not have sufficient foundation, and was not relevant, as required by *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); and (b) counsel should not have called, as an expert witness, Dr. Frederick O. Bright, who was impeached by the government, thus nullifying any chance the defense had of countering the medical findings of the government's medical expert. York also alleged that appellate counsel was ineffective for failing to raise this issue on appeal.

(a) <u>Testimony of Kenneth Lanning</u>

The record reveals that a pretrial hearing was held as to the admission of Lanning's testimony for educational purposes. At that hearing, defense counsel cross-examined Lanning about his training, education, and experience in identifying certain patterns of behavior concerning both sex offenders and the children victimized by them. Lanning stated at that time that he would testify about patterns of behavior by sexual offenders based on his training, education, and experience, but he would not offer any opinion about York's case. The court ruled Lanning's testimony admissible. At trial, defense counsel reminded the court of the earlier objections to Lanning's testimony. Lanning did not testify as a scientific expert, nor did the government proffer him as one. Rather, Lanning testified about behavior patterns of sex offenders and their child victims, as researched and observed by him during the course of his career. Defense counsel cross-examined Lanning and established for the jury that Lanning knew almost nothing about the case at hand and was not rendering any opinion about the case. Therefore, York has not shown that defense counsel's performance was deficient, or that he was prejudiced by any deficient performance.

(b) <u>Testimony of Dr. Bright</u>

The record shows that defense counsel offered Dr. Bright as an expert in the field of

4

obstetrics and gynecology. Dr. Bright testified that, after reviewing the medical records of several of the alleged child victims in the case, he noted numerous "irregularities" concerning their "medical diagnosis." Merely because the government impeached Dr. Bright about his prior active involvements with York and York's organizations did not make counsel ineffective. Furthermore, in light of the overwhelming evidence of guilt, York cannot show that any deficient performance in regard to calling Dr. Bright as a witness affected the outcome of his trial.

York also alleged generally that defense counsel inadequately cross-examined government witnesses, including one of the victims. York's general and conclusory allegation is not sufficient to support a claim of ineffective assistance of counsel, especially as there were numerous victims and witnesses. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *see also Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977) (holding that a movant's conclusory statements, unsupported by specific facts or by the record, are insufficient to state a constitutional claim in a collateral proceeding).

### Claim 3: Sixth Amendment Right to Choice of Counsel

York alleged that the district court forced discharged counsel on him at trial, which resulted in a violation of his right to counsel of choice, and he should be granted a new trial. York also argued that the court's refusal to grant a continuance to York's counsel of choice, and the court's permission to discharged counsel to withdraw his appearance, caused York to proceed with ineffective legal representation. York asserted that he specifically discharged his retained attorneys Edward Garland and Manubier Arora prior to trial, and informed the court that he wished to be presented by newly retained attorney Adrian Patrick, but the court determined that Arora would be required to remain as his counsel.

5

The record shows that York was represented by Garland and Arora since May 20, 2002. In December 2003, less than a month before trial was set to commence, attorneys Patrick and Benjamin Davis entered their appearances for York. At a pretrial hearing in the middle of December 2003, four attorneys—Garland, Arora, Patrick, and Davis—appeared on York's behalf, and Garland acted as lead counsel for that hearing. At that time, the trial judge warned counsel that he would not continue the case due to the addition of new counsel, and further stated that he would not allow withdrawal of counsel if it might cause a problem for the trial of the case.

Two weeks later, and only five days before the trial was due to start, a pretrial hearing was held to discuss York's request to discharge counsel. At that time it was announced that York wanted to fire Garland and Arora, and have only Patrick and Davis represent him at trial, and he wanted a continuance. Arora and Patrick said that they had learned of York's decision just the night before. Patrick explained that he could not effectively represent York because he had only been retained for a few weeks, and he was under the impression that Garland's firm, which had been retained for 19 months, would still be involved with the case. The trial judge made clear his belief that York was seeking to manipulate and delay the trial process, and the judge further stated that he would not postpone the trial because of the vast amount of time and resources that had gone into preparation for the trial. Arora stated his willingness to be available for the assistance of the defense, and both York and Patrick agreed that Arora would assist them. The trial judge stated that York and Patrick could determine what role and how much assistance Arora would provide.

Prior to jury selection, after Patrick again expressed concerns about his ability to be effective at trial, the trial judge instructed that Arora must remain in the case and be available to Patrick, even if Patrick was going to be lead counsel. Patrick also stated on the record that he was requesting Arora

6

to assist him. After four days of trial, the trial judge said that he no longer would require that Arora be present, but would leave that up to Arora and his client. Arora told the trial judge, on the record, that York had asked Arora to remain on the case, and the record shows that Arora remained on the defense team. Therefore, York's assertion that he was forced to have counsel that he did not want is not supported by the record, and the record reflects that the trial judge's action was to protect York's right to effective representation. Furthermore, to the extent that York argued that the trial court erred in denying his continuance, he raised this claim on direct appeal, and this Court rejected his argument for lack of merit. *See United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) (holding that "[o]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255").

### Claim 4: Judicial Bias

York alleged that he was deprived of a fair trial as a result of the trial judge's bias, where the judge: (1) visited websites for the purpose of conducting independent research regarding York and his affiliations; (2) had acted as an attorney, prior to his appointment, for the Oconee Regional Medical Center during the trial of a medical malpractice case brought by one of York's alleged common law wives; and (3) held trial proceedings on the federal holiday honoring the birthday of Martin Luther King, Jr. York argued that the judge should have recused himself pursuant to 28 U.S.C. § 455.

The Supreme Court held that the Due Process Clause requires a "fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904-05, 117 S.Ct. 1793, 1797, 138 L.Ed.2d 97 (1997) (quotation and citation omitted). Under the federal recusal statute, a judge must disqualify himself

in "any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Disqualification is also warranted under the following situations:

(1) "Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding";
(2) "Where in private practice he served as lawyer in the matter in controversy...";
(3) Where he has served in governmental employment and in such capacity participated as counsel concerning the proceeding;
(4) Where he has a "financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding";
(5) Where he or a relative is a party, lawyer, or witness in the proceeding.

See 28 U.S.C. § 455(b). In discussing due process, the Supreme Court has cautioned that "[a]ll questions of judicial qualification may not involve constitutional validity," and "[t]hus matters of kinship, personal bias, state policy, remoteness of interest would seem generally to be matters merely of legislative discretion." *Tumey v. Ohio*, 273 U.S. 510, 523, 47 S.Ct. 437, 441, 71 L.Ed. 749 (1927); *see also Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 820, 106 S.Ct. 1580, 1584, 89 L.Ed.2d 823 (1986) (stating that "[m]ost matters relating to judicial disqualification [do] not rise to a constitutional level" (quotations omitted)).

In denying this claim, the district court determined that the facts alleged by York did not establish an inference of bias sufficient to raise a due process claim, even under the more stringent standards of § 455. First, as to the judge's monitoring of websites operated by York's followers, the district court concluded that the judge's research was associated with the unusual security preparations required for York's trial. The judge specifically stated on the record that it had been monitoring the website on a regular basis to keep informed of potential threats to court security and to the integrity of the trial, and the court had to take additional security procedures in light of the numerous and extensive protests, demonstrations, and threats by York's followers. Although the

8

court expressed concerns about York's followers and their activities, these concerns did not constitute a personal bias against York. *See Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994) ("[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge."). Furthermore, the court did not make such comments in the presence of the jury.

Second, as to the judge's prior representation of a party adverse to York's alleged wife in a civil suit, the district court properly found that this did not constitute a disqualifying factor under § 455(b), much less a violation of his due process rights. The prior civil suit was not "the matter in controversy" and had no relationship to the criminal charges brought against York, nor did the judge represent any party in this case. *See* 28 U.S.C. § 455(b)(1), (2). Third, as to York's assertion that the judge's decision to conduct trial proceedings on the federal holiday celebrating the birthday of Martin Luther King, Jr., was evidence of racial bias, the record does not support this assertion. Throughout the trial, the court expressed its interest in minimizing delays in the process, and the court elected to work through the holiday to minimize inconvenience and expense. York's assertion of racial bias was merely speculative.

### Claim 5: Recantation of Testimony by Witnesses

York alleged that his sentence should be vacated because several witnesses either have recanted their testimony or have given affidavits alleging misconduct by the government in the investigation and trial of the case. York submitted ten affidavits from alleged victims in his case.

This Court has held that § 2255 motions based on new evidence are subject to the standards generally applicable to motions for a new trial based on new evidence. *See Lynn v. United States*,

365 F.3d 1225, 1237 (11th Cir. 2004). The requirements that a prisoner must satisfy to obtain a new trial based on new evidence are:

> (1) the evidence was discovered after trial;
> (2) the failure of the defendant to discover the evidence was not due to a lack of diligence;
> (3) the evidence is not merely cumulative or impeaching;
> (4) the evidence is material to issues before the court; and
> (5) the evidence is such that a new trial would probably produce a different result.

*Id.* at 1237.

Here, the district court properly determined that York did not meet the above requirements because the affidavits were merely "cumulative or impeaching." During the trial, the government presented 53 witnesses, including 15 victim witnesses who testified that York engaged in sexual activity with them as minors and they witnessed York engaging in sexual activity with other children and adults. The defense called 44 witnesses, including 8 of the alleged victims in the case who denied any sexual abuse by York. Numerous victims and other witnesses gave changing stories throughout the case. Each of these victims, on both sides of the case, was cross-examined thoroughly as to motives for lying, as to any intimidation or coercion by agents of the government or members of the York organization, as to prior inconsistent statements, and as to medical evidence that was consistent or inconsistent with their trial testimony. The defense presented evidence regarding allegations of the government intimidating witnesses to testify, and the defense cross-examined government witnesses about such tactics. The defense also called numerous witnesses to describe a terrifying raid of the Nuwaubian compound by dozens of heavily-armed law enforcement officers. The jury had the opportunity to weigh the credibility of the witnesses on the stand and evaluate their testimony in light of the allegations of government misconduct.

The testimony in the affidavits, at most, is cumulative of the evidence presented at trial, or merely provides further impeaching evidence of witness testimony. One victim's affidavit, in which the victim recants her testimony, was submitted previously to the district court during York's motion for new trial. At the hearing on the motion, that victim testified that her affidavit was false and her trial testimony was true. Three of the affidavits submitted by York contain recantations of the victims' trial testimony. Two of those do not allege any misconduct by the government, while only one victim alleges that he gave false testimony because of threats made by an FBI agent and prosecutor. As to all three of those affidavits, the court properly concluded that they were impeaching documents of highly limited credibility, considering that they were made more than three years after the trial and they provided brief statements, in contrast with the victims' trial testimony, which contained detailed descriptions of their experiences.

Furthermore, four of the affidavits are from victims who testified at trial that they were unaware of sexual abuse, and who merely provide restatements of their trial testimony in their affidavits, and the other two affidavits are from witnesses who did not testify at trial and do not allege any misconduct by the government. Accordingly, the court did not err in concluding that these affidavits did not change significantly the balance of evidence presented at trial.

**Claim 6: Lack of Jurisdiction**

York alleged that the court "had no jurisdiction to convene or conduct a trial of [York] due to his status as a Liberian diplomat." Because York committed federal crimes, the district court had jurisdiction over his case. *See* 18 U.S.C. § 3231. Furthermore, prior to trial, York, through counsel, filed a 24-page motion to dismiss for lack of jurisdiction, arguing that he was exempt from prosecution by the U.S. government because he was the chief of a Native American tribe, and he

11

never asserted that he was a Liberian diplomat.

Because York has not made the requisite showing, his motion for a certificate of appealability is DENIED.

All other pending motions are DENIED as moot.

*Frank M. Hull*
UNITED STATES CIRCUIT JUDGE

A True Copy - Attested
Clerk, U.S. Court of Appeals
Eleventh Circuit

Deputy Clerk
Atlanta, Georgia