**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CASE NO.: 5:02-CR-27** |
| **vs.** | : | |
| | : | |
| **DWIGHT D. YORK,** | : | |
| | : | |
| **Defendant.** | : | |

_____

**DEFENDANT'S RESPONSE IN OPPOSITION TO MOTION TO AUTHORIZE
PAYMENT FROM INMATE TRUST ACCOUNT, REQUEST TO UNSEAL
DOCUMENTS RELATED TO RESTITUTION PAYMENTS & REQUEST TO
RELEASE LIEN**

COMES NOW, Dwight D. York (hereinafter referred to as "York"), by and through undersigned Counsel, who hereby files this response in opposition to the Plaintiff, United States of America's Motion to Authorize Payment from Inmate Trust Account, and in support thereof states as follows:

1.

York is a federal inmate, currently incarcerated at the United States Administrative Maximum Penitentiary ("ADX") in Florence, Colorado.

2.

On April 22, 2004, York was sentenced to 1,620 months imprisonment and 3 years supervised release. Additionally, this Court ordered York to pay $566,066.00 in restitution and a $1,000.00 assessment.

3.

To date, York has paid the assessment and has made restitution totaling $418,672.25.  Thus, it is clear Defendant has and is prepared to meet his legal obligations.  York has made significant payments towards the Court-ordered restitution and has every intention of continuing to do so. York is currently paying $165.00 per month towards the stated restitution balance.

4.

Now, York is an elderly gentleman who suffers from a life-threatening illness.  Due to his age and deteriorating health, York is currently in active litigation with the Federal Bureau of Prisons in the United States Judicial District Court in Colorado.  York contends that the Federal Bureau of Prisons (BOP) has failed to provide him with constitutionally required medical care for his serious medical illnesses; thereby causing him extensive physical pain and suffering, as well as emotional suffrage.

In this litigation, York seeks a declaration from the Court that ADX is not an appropriate facility for him to complete his sentence. York's position is based on his serious, chronic and life-threatening condition, elderly status, high blood pressure, lack of violent history while imprisoned, insignificant past criminal history, and ailing needs associated with the aging process.  Most importantly, due to the nature of York's medical condition, remaining at ADX could result in a premature death. *See, Dwight D. York v. Bureau of Prisons,* In the Judicial District Court of Colorado, 1:16-cv-01754.

5.

York's inmate trust account currently has a balance of $12,894.12, of which the majority of the funds were previously earmarked to reimburse undersigned counsel for fees incurred and services rendered. Once it came to the BOP's attention that York intended to use the funds for legal fees, the BOP quickly responded to Plaintiff's extremely outdated January 9, 2015

correspondence requesting a lien be placed on his account, which at the time contained $10,732.32.

York proffers that if he had not requested a distribution of the funds from his account for legal fees and expenses, Plaintiff would not even be pursuing this course of action. It was the actions of Defendant's counsel that prompted the BOP's March 7, 2017 letter to the Assistant United States Attorney, Mr. Bernard Snell, requesting follow-up on the January 2015 letter.

York further maintains that from January 2015 through now, Plaintiff had ample time to seek an order of the court authorizing the BOP to turn over the funds. However, only when York seeks to use the funds for his pending litigation does Plaintiff seek to make good on their 2015 promise for "immediate action". Plaintiff's actions, as well as the BOP's timing of the March 2017 letter, is disingenuous at best.

6.

18 U.S.C. §3664(k) provides in relevant part: "A restitution order shall provide that the defendant shall notify the court and the Attorney General of any **material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution**." (emphasis added). Plaintiff's reliance on this portion of the statute is misguided, for the reason that the amounts received into York's inmate trust account do not constitute a "material change" sufficient enough that would significantly affect his current ability to pay restitution, as the same amounts have existed in his trust account in times prior and Plaintiff has long since known that large amounts of family and friends contribute small amounts to York's commissary.

Furthermore, as much as $1,500.00 has been deducted from York's commissary for restitution per month in 2005 and from 2006 – 2012, $420.00 was deducted each month. So, for Plaintiff to now say there is a material change is erroneous, as they have well known the amounts in the commissary and are very aware of how much has been deducted from York's trust account for restitution.

3

As stated by Plaintiff, the purpose of an inmate's trust account or commissary account is to allow the BOP to maintain inmates' monies while they are incarcerated, including monies received from prison employment and outside sources. 28 C.F.R. 506.1, 545.11. None of these funds were received from prison employment. As a matter of fact, all the resources were small amounts of money mailed in from family and friends.

7.

As previously argued, and as is uncontested by Plaintiff, York has met his obligations in paying restitution to date so much so that nearly 75% of the amount owed in restitution has already been paid by Defendant.

8.

Additionally, it would cause a significant hardship to York if Plaintiff's greatly delayed motion is granted. York is an elderly man in deteriorating health and the litigation for which York wishes to use his funds for could be the difference between life and death for him.  Defendant's litigation against the BOP is approaching critical stages and is of critical importance to his health and well-being, as well as to the protection of his constitutional rights.

9.

Plaintiff submits "the government is not required to rely upon other formal collection remedies such as garnishment of or execution upon property to obtain these funds." (Motion to Authorize Payment from Inmate Trust Account, ¶7). However, this argument is contrary to established law in this district. "The United States may enforce the FDCPA through the sentencing court to collect restitution." *See, United States v. Ernst*, No. 2:06-cr-10-FtM-29DNF, 2010 WL 3746950, at *2 (M.D. Fla. Sept. 21, 2010) (citing *United States v. Kollintzas,* 501 F.3d 796, 800-01 (7th Cir. 2007); *United States v. Mays,* 430 F.3d 963, 965 (9th Cir. 2005)).

10.

In this case, Plaintiff has elected to not proceed under the FDCPA or comply with its requirements. Plaintiff points to no statute in its motion which allows the sentencing court to simply order the BOP to disburse (or not disburse) funds from an inmate's trust account. Additionally, Plaintiff points to no statute or rule of procedure which allows such a collection practice for a civil judgment. 18 U.S.C. §3613(a). Courts have previously found that it lacked the authority to do so. *See, United States v. Lorie Ann Williams*, Case No. 2:15-cr-14-FtM-29.

11.

The Mandatory Restitution Act of 1996 established procedures for determining the amount of restitution to which a victim may be entitled, and if there was loses, it requires a sentencing court to impose restitution in the full amount of the victim's losses. *See,* 18 U.S.C. §3636A. Here, the government presented Dr. Richard Elliott to testify as to his estimates of the cost of psychiatric, psychological, and vocational treatment for each victim over a five-year period, which turned out to be $23,596.00, but was unrelated to the victim's concrete losses, but rather largely conjecture.

Dr. Elliott's evaluation hinged on presumption of what he believed each victim's damages could be and was projected to be necessary only 5 years post-conviction. That being case, the five-year period has lapsed, as the Restitution Order hearing occurred on April 23, 2004. That being the case, it would stand to reason that whatever various and timely treatments sought by the victims would have been sought many years ago and the funds in the York's commissary, to which Plaintiff seeks untimely access to, can and should be used for York's pending litigation against the BOP without any undue or forced harm to any victims.

Considering the factors Dr. Elliot weighed, such as frequency and duration of the abuse, use of force or threats, presence or lack of family support, etc., it stands to reason that each victim deserved to be able to access the restitution. However, here, no victim ever has direct access to,

but rather the stated restitution can only be allocated once strict procedures are followed for disbursal of treatment upon presentation of an invoice to the court. Additionally, a "service monitor" was designated to review the progress of the victim's treatment at an estimated cost of $27,500.00. It is currently unknown who the service monitor is and exactly how much of the restitution paid by York went to their services.

12.

In order to more accurately respond to the United States' request to obtain said funds, Defendant, through its undersigned attorney, respectfully requests the Court to enter an order directing the Clerk of the Court to unseal documents related to the above cause number relative to the restitution paid and removed from the registry in the amount of $433,330.76. Counsel for York is to understand that the registry allocated payments for medical and/or mental health treatment, as well as vocational and educational training for the victims, as stated by the Clerk of the Court, David Bunt in an email to Counsel on June 9, 2017. Counsel would like to evaluate those payments as is only fitting.

13.

Based on these factors, York submits Plaintiff's requested relief is unreasonable and inappropriate in light of York's compliance with the restitution order, his current critical medical needs and accompanying pending litigation, Plaintiff's lack of compliance with the FDCPA, and Plaintiff's lack of authority.

**WHEREFORE**, based on the foregoing, York respectfully requests that this Honorable Court enter an order:

(1) Denying Plaintiff's Motion to Authorize Payment from Inmate Trust Account;

(2) Grant Defendant's request to release the lien placed on Defendant's trust account in the amount of $10,732.32;

(3) Grant Defendant's request to direct the Clerk of the Court to unseal documents

related to payments made from the registry fund of account number 5:02-cr-27; and

(4)  Awarding York any other relief deemed just and proper.

Dated: June 12, 2017.

Respectfully submitted,

*Victoria Broussard*

_____

VICTORIA BROUSSARD
Attorney for Defendant
SBN: 24053882
**LAW OFFICE OF VICTORIA BROUSSARD**
P.O. Box 393
Spring, Texas 77373-0393
Phone: 1.512.963.7094
Fax: 1.512.672.6072
E-mail: victoria@broussardlegal.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 12, 2017, I electronically filed the within and foregoing Response in Opposition to Motion to Authorize Payment from Inmate Trust Account, Request to Unseal Documents Related to Restitution Payments, & Request to Release Lien with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Assistant United States Attorney Todd P. Swanson
P.O. Box 1702
Macon, GA 31202-1702

I also certify that I have mailed by the United States Postal Service the document to the following non-CM/ECF participants in a properly addressed and stamped envelope as follows:

N/A

*Victoria Broussard*

_____

VICTORIA BROUSSARD
Attorney for Defendant
SBN: 24053882