**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| Plaintiff | : | |
| v. | : | CASE NO. 5:02-CR-27 |
| DWIGHT D. YORK | : | |
| Defendant | : | |

**REPLY TO DEFENDANT'S RESPONSE TO UNITED STATES OF AMERICA'S
MOTION TO AUTHORIZE PAYMENT FROM INMATE TRUST ACCOUNT**

This matter is essentially a dispute between two creditors of Defendant. These creditors are the United States of America acting on behalf of the victims of Defendant's crimes, and Defendant's counsel in an unrelated litigation against the Bureau of Prisons (BOP). Each claimant seeks the encumbered sum of money residing in Defendant's commissary account with the BOP (the "Inmate Account"). While mischaracterizing the restitution judgment against Defendant as a "civil judgment," Defendant erroneously argues that the United States has no statutory authority to recover the encumbered funds in the Inmate Account. Defendant attempts to bolster this argument through the assertion of irrelevant and unsupported factual allegations concerning the timing of the instant motion, Defendant's financial conditions, and alleged hardship arising from Defendant's unrelated litigation against BOP. Finally, Defendant also seeks the publication of information relating to the Clerk of Court's administration of restitution funds collected and paid out to victims. This information is irrelevant to the instant motion and is little more than an impermissible collateral attack on the restitution calculation made by the Court some thirteen years ago. As shown below, Defendant's arguments are meritless and the Court should grant the instant motion to authorize payment of the encumbered funds toward the restitution judgment.

1

### I. Defendant's Restitution Judgment is a Criminal Judgment that is Due and Payable in Full

On May 7, 2004, Defendant was ordered to pay restitution in the amount of $566,066 together with a $1,000 assessment. Doc. 286. This sum was calculated based on the estimated costs for Defendant's victims to obtain the psychiatric and other health care needed as a result of Defendant's crimes. *Id.* The restitution judgment found that the Defendant had sufficient resources ($939,974) to immediately pay the restitution sum and ordered immediate payment thereof. *Id.*, p. 5. Contrary to the assertions of Defendant, Doc. 532, ¶ 10, the May 7, 2004, Order is not a civil judgment, but rather a criminal restitution judgment. The United States' claims the $10,732.32 in funds from the Inmate Account in an effort to collect the outstanding balance of the criminal judgment, which as of the time of filing the instant motion was $147,393.75. There is no dispute that the restitution judgment has not been paid in full as illustrated by Defendant's payment history, Doc. 528-1, and as admitted by Defendant. Doc. 532, ¶¶ 3, 7. Nonetheless, Defendant's position seems to be that because York has paid 75% of the restitution judgment, is currently paying $165 per month toward restitution, and "has every intention of" paying the entirety of the judgment, the United States is somehow foreclosed from collecting more than the $165 per month.

### II. The United States' Has the Authority to Enforce its Lien on the BOP Account

Indisputably, Defendant has an ongoing obligation to make payments toward his restitution judgment until it is paid off, regardless of the source or nature of those funds. *See* 18 U.S.C. 3664(n) ("If a person obligated to provide restitution . . . receives substantial resources **from any source**, including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed") (emphasis added). In light of Defendant's admission that he has not yet paid off the restitution judgment, there is little doubt that monies received by Defendant into his BOP account should

have reasonably been paid toward his restitution judgment. 18 U.S.C. § 3664(n). Upon discovery of the substantial balance in the Inmate Account, the Department of Justice requested the encumbrance that has frozen the funds now sought by the United States.

Defendant recognizes this encumbrance as a lien on the Inmate Account, Doc. 532, p. 6 & ¶ 5. This is in accordance with well-settled federal law that provides that a criminal restitution judgment against a defendant enjoy the same treatment as a tax lien against the defendant. *See* 18 U.S.C. § 3664(m)(1)(A) *citing* 18 U.S.C. § 3613(c) ("A fine… or an order of restitution… is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the [IRS] Code of 1986."). Thus, the instant motion is nothing more than the United States enforcing its lien on the Inmate Account. The creation of this lien, and the United States encumbrance of the Inmate Account, predates any attorney lien that may have arisen when defense counsel notified BOP in 2017 of the claim for funds from the Inmate Account. Moreover, the United States' control of the deposit account has perfected the United States' security interest rendering it superior to any unsecured claim that may arise from defense counsel's representation of Defendant in the other litigation, regardless of whether Georgia or Colorado law applies. *See* O.C.G.A. §§ 11-9-304, -314, -317, -322, -327, -333; Colo. Rev. State. Ann. §§ 4-9-304, -314, -317, -322, -327. The Federal Debt Collection Procedures Act (FDCPA) clearly authorizes the United States to utilize and enforce liens as part of the collections process. *See, e.g.,* 28 U.S.C. § 3201.

Thus, contrary to Defendant's argument, there is statutory authority whereby the Court can direct the disbursement of funds from an inmate's trust account. Moreover, as noted in the case relied on by Defendant in his brief, *United States v. Ernst,* No. 2:06-CR-10-FtM-29DNF, 2010 WL 3746950, the United States' options for collecting restitution judgments are even more

expansive than the FDCPA. *Id.* at *3 ("The United States may enforce a judgment imposing a fine [or restitution] in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law."). Accordingly, multiple courts have granted motions nearly identical to the instant motion, allowing the United States to enforce its lien and obtain a Court Order directing the funds from BOP inmate accounts be applied to criminal judgments against the defendant. *See, e.g., United States v. Robert Frederic Alvarez,* Case No. EP-14-CR-731-KC(10), Doc. 463 (W.D. TX. 2016); *United States v. Elrader Browning, Jr.,* 2:16-CV-01410-SVW-AJW, Doc. 8 (C.D. CA. 2016). Accordingly, Defendant is simply wrong when he asserts that there is no authority by which this Court can direct funds be disbursed from the Inmate Account and applied toward restitution.[1]

### III. Defendant's Factual Assertions do not Foreclose the United States' Ability to Enforce its Lien against the Inmate Account

In addition to claiming there exists no legal authority by which the Court may order the requested disbursement of funds, Defendant also appears to contend certain facts merit denial of the instant motion. Defendant argues against the issuance of a Court Order by asserting that there is no "material change." Doc. 532, ¶ 6. Defendant does so without offering any supporting case law or other authority for his position, but instead notes that the Government has knowledge of deposits into the Inmate Account. First, it should be noted that the primary basis for the United States' right to the encumbered funds remains its enforcement of its lien; 18 U.S.C. § 3664(k) simply provides a second basis for the Court to order the encumbered funds be disbursed and applied to the restitution judgment. 18 U.S.C. § 3664(k) permits Courts to issue orders relating to

---

[1] BOP policy requires a court order for funds to be withdrawn from BOP inmate accounts, which is what prompted the instant motion. *See* P.S. 4500.11, CN-1, Trust Fund Deposit Fund Manual, Chapters 10.1, 10.5(o). Thus, there is both statutory and regulatory authority for the requested order.

the payment of restitution based upon the economic circumstances of a defendant. Here, Defendant's economic circumstances are that he is only paying $165 per month despite having over $12,000 in the Inmate Account and despite owing his victims $147,393.75 in restitution. Since 2015 Defendant has had the ability to pay at least $10,732.32 toward restitution and the instant motion requests that the Court direct such a payment be made toward restitution.

Defendant also appears to argue, without citing any authority, that the encumbered funds should be excepted from collection due to his ongoing medical issues. Doc. 532, ¶ 8. There is no exception enumerated under 18 U.S.C. § 3613(a)(1) that would except the Inmate Account from collection efforts or otherwise prioritize attorney's fees incurred in litigation related to an alleged medical hardship over satisfaction of the restitution judgment. Unsurprisingly, Defendant is unable to cite any cases that support the existence of an exception for monies earmarked as attorney's fees. Accordingly, this factual circumstance is not a basis upon which to deny the instant motion.

Finally, Defendant appears to argue that the timing of the enforcement of the lien somehow renders it null and void. Defendant cites no authority for this position, nor does he attach any of the letters referenced in his argument, but rather states his opinion that but for Defendant's attorney's fee claim, the instant motion would not have been filed by the United States. Defendant cites no authority setting forth a timeline in which a lien must be enforced and a two year delay is not prohibited by federal statute; in fact, 28 U.S.C. § 3201 allows a lien to be valid for 20 years. Thus, the fact that the United States was delayed in enforcing its lien is irrelevant to the merits of its claim. Notably, it is common for a lien holder (particularly government enforcing tax liens) to not enforce its lien until such time as the owner of the property seeks to transfer the property to another. Ultimately, the timing of the instant enforcement action does not change the fact that the United States' lien is in a superior position to the claim for attorneys' fees raised by Defendant.

5

When determining which creditor's claims have priority, it is the timing of the recording of one's security interest in the subject property, and not the efforts to enforce ones security interests, that carries the day. *See* O.C.G.A. §§ 11-9-304, -314, -317, -322, -327, -333; Colo. Rev. State. Ann. §§ 4-9-304, -314, -317, -322, -327.Thus, Defendant's observations about the timing of this motion are insufficient to merit denial of the instant motion.

### IV. Defendant's Request to Unseal Documents is Irrelevant to the Matter Before this Court and is an Inappropriate Attempt to Re-Litigate the Restitution Order

In addition to addressing the United States motion to apply the encumbered funds to the restitution agreement, Defendant also attempts to re-litigate the restitution judgment itself. First Defendant describes the restitution calculation as "largely conjecture." Then Defendant states that

> [i]n order to more accurately respond to the United States' request to obtain [the encumbered] funds, Defendant… respectfully requests the Court enter an order directing the Clerk of Court to unseal documents related to the above cause number relative to the restitution paid and removed from the registry in the amount of $433,330.76. … Counsel would like to evaluate those payments as is only fitting.

Doc. 532, ¶ 12. Defendant fails to explain how information describing or related to payments made from the restitution fund on behalf of victims will allow a more accurate response to the pending motion. This is unsurprising since payments related to psychiatric and other medical treatments provided to victims of Defendant's crimes are irrelevant to the authority of the United States to enforce its lien and collect the encumbered funds.

The only thing to which the information sought by Defendant would be relevant is to the validity of the restitution judgment itself, particularly, the Clerk of Court's administration of, and compliance with, the restitution judgment. Thus, Defendants request seems to be nothing more than a prelude to attacking the restitution judgment itself, which Defendant already asserts to be "largely conjecture." The Eleventh Circuit has observed that direct appeal is the appropriate forum in which a Defendant should challenge a restitution calculation and that collateral attempts to

6

challenge the validity of a restitution calculation are prohibited. *Cani v. United States*, 331 F.3d 1210, 1214 (11th Cir. 2003) (holding that the defendant's failure to appeal his restitution judgment was waiver of his right to object to the restitution calculation). York never appealed the Restitution Order entered in this case and so he does not have standing before this Court to now challenge the restitution judgment. *See United States v. York*, 428 F.3d 1325 (11th Cir. 2005). Since the information sought by Defendant is only relevant to a challenge to the restitution judgment itself, a challenge that *Cani* prohibits, Defendant should be similarly prohibited from utilizing this Court's proceedings to gather evidence for that challenge.

Defendant's request to unseal records is particularly inappropriate as the information sought relates to the efforts of Defendant's victims of sexual abuse to obtain psychiatric and psychological treatment. The disclosure of this information is prohibited by a number of federal statutes and case law. First, the Crime Victims Rights Act (CRVA), gives crime victims a right of privacy and dignity. 18 U.S.C. § 3771(a)(8). This statute, along with the psychotherapist-patient privilege acknowledged by the United States Supreme Court in *Jaffe v. Redmond,* 518 U.S. 1, 116 S. Ct. 1923 (1996), has been interpreted by Courts as prohibiting disclosure of victim psychiatry records to defendants. *See United States v. Shrader*, No. CRIM 1:09-0270, 2010 WL 2836752, at *2 (S.D.W. Va. July 20, 2010), aff'd, 716 F. Supp. 2d 464 (S.D.W. Va. 2010). Second, 18 U.S.C. § 3509 provides privacy protections to children who are victims of psychological or sexual abuse, prohibiting the disclosure of their name and any other information, which would include information concerning their medical treatments. Finally, the information sought by Defendant constitutes "protected health information," 45 C.F.R. § 160.103, under the Health Information Portability and Accountability Act (HIPAA). Pub. L. No.104-191, 110 Stat. 1936 (1996), the general disclosure of which is generally prohibited. 45 C.F.R. § 164.502.

The protections of the statutes, and the policy upon which they are based, mitigate against the disclosure of the information sought by Defendant. This is particularly true where, as here, Defendant offers no explanation as to how the information relates to his challenge of United States' lien enforcement action. There is no reason that the Court should permit disclosure of information relating to the medical treatments received by Defendant's victims in light of the lack of relevance that this information has to the United States' ability to enforce its lien. Accordingly, the Court should deny Defendant's request to unseal documents related to payments made from the restitution fund.

### V.     Conclusion

For the foregoing reasons, the United States requests that its motion to authorize payment from Defendant's inmate trust account be granted.

Respectfully submitted this 26th day of June, 2017.

G.F. PETERMAN, III
UNITED STATES ATTORNEY

By:     *s/ Todd P. Swanson*
Todd P. Swanson
Assistant U.S. Attorney
State Bar No. 496989
Post Office Box 1702
Macon, GA 31202-1702
(478) 621-2700