IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 5:02-CR-00027-CAR-CHW-1 |
| | : | |
| DWIGHT D. YORK | : | |

---

Brief of the United States in Opposition to Defendant's
Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)(i)

---

## Summary

No stranger to the Court, Defendant Dwight D. York is a remorseless, unrepentant pedophile and child predator. That was true in the 1990s and early 2000s, and it remains true today, despite his age and health. York has never expressed an ounce of regret for the misery he inflicted on the minors who suffered under his care, direction, and control—innocent boys and girls whom his egregious conduct scarred for life. The Court hardly needs to be reminded of York and his crimes. Nevertheless, here's an overview.

In January 2004, after a 14-day trial, a jury convicted York of engaging in racketeering activities in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) and of participating in a RICO conspiracy perpetuated by a cult-like organization known as the United Nation of Nuwaubian Moors, which he claimed to lead. As part of that conspiracy, York had minors transported from New York to Georgia to have sex with him, and he traveled from Georgia to Florida to have sex with still more minors. The jury also convicted him of substantive sex-trafficking and financial crimes.

The evidence at trial established that York regularly committed heinous acts—including oral, vaginal, and anal sex—on minors, some as young as six and eight years old, all of whom suffered under the Nuwaubians' repressive and dictatorial regime.

As a result of his 10 convictions, this Court sentenced York to serve 1,620 months—135 years—in federal prison. (ECF 285 at 3.) That was the most severe punishment authorized by law (statutory maximums on each count, all to run consecutively), and the Court expressly found it to be appropriate under the totality of the circumstances. *See* 18 U.S.C. §§ 3551, 3553(a), 3582(a), and 3584. The Court, quite plainly, meant for York to spend the rest of his life in prison.

In 2005, the Eleventh Circuit affirmed York's convictions and sentences. *United States v. York*, 428 F.3d 1325, 1338 (11th Cir. 2005). Then in 2009 this Court denied his 28 U.S.C. § 2255 motion to vacate them (ECF 447), and the Eleventh Circuit declined to authorize an appeal of that order. (ECF 471.) Finally, in 2025, the Eleventh Circuit rebuffed York's attempt to pursue a second § 2255 motion. (ECF 549.)

Despite having served less than 20% of his sentence, York now moves the Court to release him from prison under 18 U.S.C. § 3582(c)(1)(A)(i), the compassionate-release statute, arguing that his age and poor health warrant relief. (ECF 574 at 1–26.) In support of his motion, York has submitted 21 exhibits totaling more than 830 pages. (ECF 574-1 to 574-21.) York's brief reads as if § 3582(c)(1)(A)(i) authorizes a medical malpractice cause of action

against the Bureau of Prisons.[1] It does not. Regardless, he's entitled to no relief.

Because the sentencing factors in 18 U.S.C. § 3553(a) weigh decisively against York's release from prison, the Court should exercise its broad discretion to deny his motion on that basis—even assuming he has shown the existence of an extraordinary and compelling reason.[2]

## FACTS

York was a self-professed leader in the Nuwaubian organization, which formed in New York in the 1960s and relocated to Georgia in the early 1990s. *York*, 428 F.3d at 1327–28. At various times, the Nuwaubians have subscribed to and espoused a mishmash of beliefs: Islamic, Hebrew, ancient Egyptian, Yamasee Indian, and other cultural and religious worldviews. *Id.*

In November 2003, a grand jury returned a 13-count superseding indictment against York, charging him with the following crimes:

---

[1]      *See, e.g.,* (ECF 574 at 6–12) (chronicling what he calls "Twenty-Four Years of Documented Inadequate Medical Care"); (ECF 574 at 12–14) (chronicling what he calls a "Pattern of Systemic Failure to Provide Adequate Care").

[2]      The government takes no position on whether York has shown an extraordinary and compelling reason under U.S.S.G. § 1B1.13(b)(1)–(6). That question, on this record, is immaterial.

| Count | Offense | Statute |
|:---:|---|---|
| 1 | conspiring to violate RICO through a pattern of racketeering activities | 18 U.S.C. § 1962(d) |
| 2 | violating RICO by transporting minors across state lines to engage in unlawful sexual activity and by structuring cash transactions to avoid lawful reporting requirements | 18 U.S.C. § 1962(c) |
| 3 | conspiring to transport minors across state lines to engage in unlawful sexual activity; conspiring to travel across state lines intending to engage in unlawful sexual activity with minors; conspiring to structure cash transactions to avoid lawful reporting requirements | 18 U.S.C. § 371 |
| 4 | transporting a minor across state lines intending to engage in unlawful sexual activity | 18 U.S.C. § 2423(a) |
| 5 | transporting three minors across state lines intending to engage in unlawful sexual activity | 18 U.S.C. § 2423(a) |
| 6 | transporting a minor across state lines intending to engage in unlawful sexual activity | 18 U.S.C. § 2423(a) |
| 7 | traveling across state lines intending to engage in unlawful sexual activity with minors | 18 U.S.C. § 2423(b) |
| 8 | transporting three minors across state lines intending to engage in unlawful sexual activity | 18 U.S.C. § 2423(a) |
| 9 | unlawfully structuring cash transactions to avoid federal reporting requirements | 31 U.S.C. §§ 5313(a), 5324(a)(3) |
| 10 | unlawfully structuring cash transactions to avoid federal reporting requirements | 31 U.S.C. §§ 5313(a), 5324(a)(3) |

| 11 | unlawfully structuring cash transactions to avoid federal reporting requirements | 31 U.S.C. §§ 5313(a), 5324(a)(3) |
|----|---|---|
| 12 | forfeiture of property related to RICO violations | 18 U.S.C. § 1963 |
| 13 | forfeiture of property related to trafficking minors for unlawful sexual activities | 18 U.S.C. § 2428 |

*Id.*

Concerned about pretrial publicity within the Middle District of Georgia, the Court held York's trial on these charges in the Brunswick Division of the Southern District of Georgia over 14 days in January 2004. *Id.* at 1328, 1330–31. The Eleventh Circuit described the evidence at trial this way:

> [T]here was substantial evidence that under York's leadership, the Nuwaubians' lifestyle was highly restricted. York had many "wives" who served his business and personal needs. York's followers were expected to abide by his rules or risk punishment or expulsion from the Nuwaubian organization. Men and women did not live together; children beyond toddler age were generally separated from their parents; and children were separated by sex and age and lived in different buildings and rooms accordingly. Children were home-schooled and usually interacted with their biological parents for only specific, short periods of time.

> Several witnesses testified that York, both in Sullivan County, New York and in Eatonton, Georgia, as well as in Athens, Georgia, engaged in a regular course of sexual contact with underage children within the Nuwaubian organization, including oral, vaginal, and anal sex. Some of the children were as young as six years old when the initial sexual contact with York occurred. Certain of York's "wives" and older sexual partners (some still underage themselves) helped recruit or encourage younger children to participate in sex acts with York.

> Additionally, there was substantial evidence that York owned and operated a number of stores and outlets throughout the country that sold religious and non-religious Nuwaubian items. A "finance office" in Eatonton, Georgia, staffed by various

Nuwaubians, was responsible for collecting and handling the profits from York's businesses. In addition to the sex crime evidence at trial, witnesses testified that York instructed the workers in the "finance office" never to deposit $10,000 or more in cash into any of his bank accounts at any given time, in order to evade federal cash transaction reporting requirements.

*Id.* at 1329.

The jury convicted York on all Counts except Counts 8 and 12. *Id.* The United States Probation Office then prepared a presentence investigation report that recommended a guideline sentence of life imprisonment, based on a total offense level of 43 and a criminal-history category of I. *Id.* at 1334. At sentencing, the Court adopted the findings and recommendations in the presentence investigation report, *id.*, and imposed the following sentences on each count of conviction, each to run consecutively:

| Count | Sentence |
|:-----:|:--------:|
| 1 | 240 months |
| 2 | 240 months |
| 3 | 60 months |
| 4 | 180 months |
| 5 | 180 months |
| 6 | 180 months |
| 7 | 180 months |
| 9 | 120 months |
| 10 | 120 months |
| 11 | 120 months |
| **Total** | **1,620 months** |

- 6 -

*Id.* at 1335; (ECF 285 at 1–3.)

The Court explained that York's sentence was appropriate in light of the nature of the crimes, the victims involved, the length of the offense, and the totality of the circumstances. *Id.* at 1335; *see* 18 U.S.C. § 3553(a).

## ARGUMENT

**The sentencing factors in 18 U.S.C. § 3553(a) weigh decisively against releasing York from prison, so his compassionate-release motion should be denied for that reason.**

District courts generally cannot modify a sentence once it has been imposed, 18 U.S.C. § 3582(c), but Congress enacted an exception to that rule in § 3582(c)(1)(A)(i), the compassionate-release statute. *See Rutherford v. United States*, 146 S. Ct. 1320, 1326 (2026). Relief under that statute is available, though, only if a defendant can establish: (1) that one or more extraordinary and compelling reasons in U.S.S.G. § 1B1.13(b)(1)–(6) warrant relief; (2) that the sentencing factors set forth in 18 U.S.C. § 3553(a) weigh in favor of relief; and (3) that his release would not endanger the safety of any person or the community. *See United States v. Tinker*, 14 F.4th 1234, 1237 (11th Cir. 2021); *United States v. Giron*, 15 F.4th 1343, 1347 (11th Cir. 2021).[3]

---

[3]    Additionally, a defendant must exhaust his administrative remedies by filing a request for compassionate release with the warden of his prison at least 30 days before filing his own motion in court. *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Harris*, 989 F.3d 908, 910 (11th Cir. 2021). York has furnished no evidence showing compliance with this requirement. He says he exhausted, citing Exhibit 12 to his motion (ECF 574 at 2), but that exhibit reflects two requests for prison transfers in 2015 and 2014, neither of which seeks relief under § 3582(c)(1)(A). The present request has thus not been exhausted with

Each condition is indispensable: "The plain language of the statute means that compassionate release is permissible only if all three findings are made." *Giron*, 15 F.4th at 1348. So the absence of even one is fatal: "Because all three conditions—*i.e.*, support in the § 3553(a) factors, extraordinary and compelling reasons, and adherence to § 1B1.13's policy statement—are necessary, the absence of even one would foreclose a sentence reduction." *Tinker*, 14 F.4th at 1237–38; *Giron*, 15 F.4th at 1348 ("If any one of the necessary findings cannot be made, then compassionate release is not permissible."). The Court need not evaluate the conditions in any prescribed sequence; and if any is lacking, the Court can bypass considering the others. *Giron*, 15 F.4th at 1347–48.

Here, the Court should exercise its substantial discretion by denying York's motion because the § 3553(a) factors weigh decisively against his release. The Court need not review York's alleged medical conditions or engage in any analysis of the extraordinary and compelling reasons he asserts. Instead, it can simply *assume* he has established one or more qualifying reasons. Even with that assumption, he's not entitled to relief.

As noted, the Court may reduce a previously imposed sentence for extraordinary and compelling reasons only after "considering the factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(1)(A)(i). Among other things, those factors include: (1) the nature and circumstances of the offense and the

---

the Bureau of Prisons. Regardless, the statute's exhaustion requirement is a claims-processing rule that is forfeitable and waivable, *Harris*, 989 F.3d at 911, and the government expressly waives reliance on York's failure to exhaust here.

history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, adequately deter others from committing similar offenses, protect the public, and rehabilitate the defendant; and (3) the kinds of available sentences. *See* 18 U.S.C. § 3553(a)(1)–(3).

Several principles are pertinent to the Court's consideration of the § 3553(a) factors in the compassionate-release context.

*First,* "[t]he weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court." *Tinker,* 14 F.4th at 1241. And "[a] district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *Id. Second,* "district courts needn't address each of the § 3553(a) factors or all of the mitigating evidence. Instead, an acknowledgement by the district court that it considered the § 3553(a) factors and the parties' arguments is sufficient." *Id.* (citation modified). *Finally,* a finding that the § 3553(a) factors weigh against relief under § 3582(c)(1)(A)(i) "may be affirmed so long as the record indicates that the district court considered 'a number of' the factors[.]" *Id.*

York urges the Court "to consider the person now before it." (ECF 574 at 15.) So does the government. In the ways that matter most, the person York is today is the same person he was when he committed his crimes and when he was convicted of and sentenced for them. He has shown no change at all

and cannot evade full responsibility and punishment for victimizing innocent children merely by invoking his age and health. He may now be "elderly" and "medically fragile" on the outside (ECF 574 at 15)—but those realities of life neither obscure the kind of person he is on the inside nor erase what he did to shatter the lives of his victims.

Although one wouldn't know it from reading his motion—which contains not a single hint of the crimes for which he is imprisoned (ECF 574 at 1–29)—York, of course, was convicted of heinous, despicable crimes against vulnerable children, some as young as six and eight years old. Not only did he regularly have oral, vaginal, and anal sex with young girls and boys, but he also used (and abused) his position as a leader in the Nuwaubian organization to get his numerous sexual partners (adults and minors alike) to lure even younger children to have sex with him. *York*, 428 F.3d at 1329. The depravity of York's criminal conduct is staggering. As the Eleventh Circuit has recognized, "[c]hild sex crimes are among the most egregious and despicable of societal and criminal offenses." *United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010) (en banc). And "[b]ecause the punishment should fit the crime, the more serious the criminal conduct is the greater the need for retribution and the longer the sentence should be." *Id.* The "just deserts" principle embodied in § 3553(a)(2)(A) explains why the Eleventh Circuit has "affirm[ed] as reasonable a 100–year sentence for a first offender who sexually abused *a single* 13-year-old girl and took photos of it." *Id.* (emphasis added) (citing *United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009)).

The scale of York's multi-victim crimes dwarfs a single-victim sex abuse case.

Equally abhorrent is York's utter lack of remorse, regret, or contrition. Not once in a filing in this Court has he ever expressed sorrow for the crimes he committed or the lives he wrecked. Nor has he ever taken responsibility for his conduct. York's callous, dismissive attitude cannot be ignored. *See United States v. Macli*, 842 F. App'x 549, 553 (11th Cir. 2021) ("The district court also noted that Macli's lack of remorse or admission of wrongdoing made him a high risk for recidivism. We cannot say that either conclusion—that the § 3553 factors did not warrant Macli's release and that he remained a danger to others—was an abuse of discretion."); *United States v. Saldana*, No. 23–12858, 2025 WL 1836345, at *2, *4 (11th Cir. July 3, 2025) (noting that "[t]he district court [] found that Saldana did not show genuine remorse for his past actions" and explaining that in finding "that the section 3553(a) factors weighed against granting his compassionate release motion . . . [the district court] rightly considered Saldana's . . . lack of remorse"); *United States v. Wert*, No. 24–10127, 2026 WL 797327, at *2 (11th Cir. Mar. 23, 2026) (affirming denial of § 3582(c)(1)(A)(i) motion based on § 3553(a) factors where the district court "considered Mr. Wert's history and characteristics [and] doubt[ed] that [he] was remorseful").

Finally, York has served just a small fraction (less than 18%) of his total sentence (24 of 135 years). This fact, too, counsels strongly against relief for York. "The amount of time served is a valid § 3553(a) consideration for § 3582(c)(1)(A) motions 'because a defendant's sentence reflects the sentencing

- 11 -

judge's view of the § 3553(a) factors at the time of sentencing,' so 'the time remaining in that sentence may . . . inform whether' relief 'would be consistent with those factors.'" *United States v. Barnes*, 852 F. App'x 514, 515 (11th Cir. 2021) (citation modified) (quoting *United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020)); *United States v. Lepe-Cholico*, No. 21–11071, 2022 WL 1132366, at *2 (11th Cir. Apr. 18, 2022) ("[T]he amount of time a defendant has served on his sentence is a relevant factor when considering a sentence-reduction motion under § 3582(c)(1)(A)(i)."). That York won't serve 100% of his sentence because he will not survive it is no reason for cutting it short. York knew he would never leave prison when he was sentenced. So did the Court. Indeed, that was the Court's clear intention.

In 2004, considering the totality of the circumstances, the Court found it was "appropriate" for York to spend the rest of his life in prison. *York*, 428 F.3d at 1335. As the Eleventh Circuit noted, "[a]t no point during sentencing did [this Court] indicate that it desired to impose a lesser sentence than that called for by the Guidelines"—life imprisonment—"or that it felt that the Guidelines range was overly harsh." *Id.* The total sentence selected by the Court was based on the seriousness of York's crimes, the number and ages of the victims involved, and the length of time over which York committed his crimes. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A). Nothing about that calculus has changed during the intervening years.

Releasing York from prison—now or ever—would significantly undermine, not further, the § 3553(a) sentencing factors because doing so

would (1) fail to fully account for the nature and circumstances of his crimes and his history and characteristics; (2) fail to adequately reflect the seriousness of his crimes; (3) fail to adequately promote respect for the law; (4) fail to adequately provide just punishment for his crimes; and (5) fail to adequately protect the public from York.[4] 18 U.S.C. § 3553(a)(1), (a)(2)(A), (a)(2)(C).

Because the relevant § 3553(a) factors weigh decisively against York's release, his motion should be denied on this ground alone. *See Tinker,* 14 F.4th at 1237–38.

District courts routinely exercise their broad discretion to deny compassionate-release motions based on a finding that the § 3553(a) factors do not warrant relief, and the Eleventh Circuit routinely affirms those discretionary denials—particularly in cases involving sex crimes. *See, e.g., United States v. Barnes,* 852 F. App'x 514, 515 (11th Cir. 2021) (affirming denial of § 3582(c)(1)(A)(i) motion based on § 3553(a) factors where defendant was convicted of "conspiracy to engage in sex trafficking of a minor"— "even assuming [his] medical condition qualified as extraordinary and compelling under U.S.S.G. § 1B1.13"); *United States v. Pemberton,* 855 F. App'x 614, 616–17 (11th Cir. 2021) (affirming denial of § 3582(c)(1)(A)(i)

---

[4]    Regarding the protection of the public, the Eleventh Circuit recently reiterated that "'pedophiles who have sexually abused children are a threat to continue doing so.'" *United States v. Handlon,* 97 F.4th 829, 832 (11th Cir. 2024) (quoting *Irey,* 612 F.3d at 1214); *id.* (noting that "[t]he risk of recidivism posed by sex offenders is frightening and high" (quoting *Smith v. Doe,* 538 U.S. 84, 103 (2003)).

motion based on § 3553(a) factors where defendant was convicted of "a serious [offense] involving sex trafficking of a minor" and had "serv[ed] only a small fraction of his 262-month sentence"); *United States v. Castro*, No. 24–11297, 2025 WL 884025, at *1–2 (11th Cir. Mar. 21, 2025) (affirming denial of § 3582(c)(1)(A)(i) motion based on § 3553(a) factors where defendant was convicted of "sex trafficking a minor" and explaining that "[w]hether Castro established extraordinary and compelling reasons for release is *immaterial* because the district court did not abuse its discretion in finding that the statutory sentencing factors did not warrant early release" (emphasis added)); *United States v. Williams*, No. 23–12154, 2024 WL 49825, at *1–2 (11th Cir. Jan. 4, 2024) (affirming denial of § 3582(c)(1)(A)(i) motion based on § 3553(a) factors where defendant was convicted of "distribution, reception, and possession of child pornography").

That York is effectively serving a term of life imprisonment is of no consequence. *See, e.g., United States v. Vaughn*, No. 21–13748, 2022 WL 1236879, at *1 (11th Cir. Apr. 27, 2022) (affirming denial of § 3582(c)(1)(A)(i) motion based on § 3553(a) factors because "[t]he district court reasonably determined that requiring Vaughn . . . to serve the remainder of his sentence of life imprisonment was necessary to satisfy the statutory purposes of sentencing"). The Sixth Circuit has explained that a defendant's release from prison under § 3582(c)(1)(A)(i) "may not be granted based on [the] argument that [a] life sentence should not be a death sentence." *United States v. Logan*, No. 22–5188, 2022 WL 4075907, at *2 (6th Cir. Aug. 26, 2022). If that is

- 14 -

York's argument, it should be rejected.

There's no need to address the alleged extraordinary and compelling reasons that Yorks discusses at length in his brief. (ECF 574 at 1–26); *Vaughn*, 2022 WL 1236879, at *1 (explaining that "the district court was not required to resolve whether Vaughn had identified extraordinary and compelling reasons for early release . . . because the § 3553(a) factors militate against a sentence reduction"). That's because even if one or more of them is established, relief may still be denied. *See Tinker*, 14 F.4th at 1238 ("Because at least one of the compassionate-release conditions was not satisfied, it cannot—as either a syntactical or logical matter—have been error for the district court to skip assessment of another condition."); *Rutherford*, 146 S. Ct. at 1333 (explaining that even a defendant "eligible" to be considered for compassionate release based on an extraordinary and compelling reason may be denied relief based on the § 3553(a) factors).

*    *    *

York says that, at present, "he poses no danger to the community." (ECF 574 at 26.) The government agrees. But the reason he's not a current danger to the community is *not* (as York says) that he's 81 years old, toothless, and in poor health. (*Id.*) No, the reason is that he's safely and securely confined in prison, far away from the public, where he cannot harm society's most vulnerable members. Where he is now is where he belongs. And where he should remain.

- 15 -

**CONCLUSION**

Because the § 3553(a) factors weigh decisively against his release from prison, the Court should exercise its broad discretion to deny York's motion.

July 2, 2026

WILLIAM R. KEYES
UNITED STATES ATTORNEY

/s/ Stuart E. Walker
Stuart E. Walker
Assistant United States Attorney
Georgia Bar No. 141620

United States Attorney's Office
Middle District of Georgia
300 Mulberry Street, Suite 400
P.O. Box 1702
Macon, Georgia 31202
478-621-2611
stuart.walker@usdoj.gov

- 16 -

**CERTIFICATE OF SERVICE**

I certify that I electronically filed the Brief of the United States in Opposition to Defendant's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)(i) with the Clerk of the Court using the CM/ECF system, which will serve all counsel of record.

July 2, 2026

WILLIAM R. KEYES
UNITED STATES ATTORNEY

/s/ Stuart E. Walker
Stuart E. Walker
Assistant United States Attorney
Georgia Bar No. 141620

United States Attorney's Office
Middle District of Georgia
300 Mulberry Street, Suite 400
P.O. Box 1702
Macon, Georgia 31202
478-621-2611
stuart.walker@usdoj.gov